**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**GREAT FALLS DIVISION**

| | |
|---|---|
| CITIZENS FOR CLEAN ENERGY, et al.,<br>and<br>THE NORTHERN CHEYENNE TRIBE,<br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF THE INTERIOR, et al.,<br>Federal Defendants,<br>and<br>STATE OF WYOMING, et al.,<br>Defendant-Intervenors. | **CV-17-30-GF-BMM**<br><br><br>**ORDER** |
| STATE OF CALIFORNIA, et al.,<br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF THE INTERIOR, et al.,<br>Federal Defendants,<br>and<br>STATE OF WYOMING, et al.,<br>Defendant-Intervenors. | **CV-17-42-GF-BMM**<br>(Consolidated case) |

## INTRODUCTION

Plaintiffs Citizens for Clean Energy, ecoCheyenne, Montana Environmental Information Center, Center for Biological Diversity, Defenders of Wildlife, Sierra Club, WildEarth Guardians, and the Northern Cheyenne Tribe (collectively "Tribe and Conservation Organizations") commenced this action on March 29, 2017. (Doc. 1.) Plaintiffs State of California, State of New Mexico, State of New York, State of Washington (collectively "State Plaintiffs") filed a related complaint on May 9, 2017. *California, et. al., v. U.S. Dep't of Interior, et. al.*, Case No. 4:17-cv-00042-BMM (D. Mont. May 9, 2017). The Court consolidated the two actions upon joint motion of the parties (collectively "Plaintiffs" and "Defendants") on June 2, 2017. (Doc. 34.)

Plaintiffs in these consolidated actions challenge the Secretary of the Interior's issuance of Secretarial Order 3348 ("S.O. 3348") on March 29, 2017. (Doc. 1 at 2, 5.) S.O. 3348 lifted a previous moratorium on new federal coal leasing. (Doc. 1 at 2.) S.O. 3348 also terminated the preparation of a programmatic Environmental Impact Statement ("PEIS") analyzing leasing and management reforms for the federal coal program. (Doc. 1 at 2.) Plaintiffs contend that S.O. 3348 violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4370h, by allowing new coal leasing without performing a programmatic environmental review. (Doc. 1 at 3.)

Federal Defendants lodged a draft Administrative Record for this action on August 11, 2017. (Doc. 68.) Upon Plaintiffs' request, Federal Defendants revised and supplemented the record on September 29, 2017. (Doc. 74.) Plaintiffs now move the court to further supplement the record with four categories of documents (hereafter "Category 1," etc.). (Doc. 75 at 3-4.) Plaintiffs assert that the Court should consider these documents to determine whether the agency has considered all relevant factors and has explained its decision. (Doc. 75 at 4.)

Federal Defendants do not oppose the inclusion of the Category 1 material. (Docs. 75 at 4; 78 at 8 n. 2.) Federal Defendants will supplement the record with this information following the Court's ruling on the remainder of the order. (Doc. 75 at 4.) The Court will not discuss Category 1 material in this order. Federal Defendants oppose supplementing the record with the information identified in Categories 2, 3, and 4. (Docs. 75 at 4; 78 at 8.)

## BACKGROUND

Former Secretary of the Interior Sally Jewell issued Secretarial Order 3338 ("S.O. 3338") on January 15, 2016. (Doc. 1 at 4; Draft Administrative Record 3-12.) S.O. 3338 ordered the United States Bureau of Land Management ("BLM") to prepare a PEIS that analyzed leasing and management issues, as well as the climate change impacts of the federal coal program. (Doc. 76 at 12; DAR 3.) BLM last conducted a full programmatic environmental review of the coal program in 1979.

(Doc. 1 at 3; DAR 3.) S.O. 3338 also ordered a moratorium on new coal leasing until completion of the PEIS. (Doc. 76 at 12.)

BLM commenced the scoping phase of the PEIS in March 2016. (Doc. 76 at 13; DAR 1494.) BLM solicited public comment, held public meetings, and engaged in tribal consultation throughout the scoping phase. (Doc. 76 at 14; DAR 1494.) BLM published a final scoping report on January 11, 2017. (Doc. 76 at 14; DAR 1465-1654.) The scoping report identified three areas that "warranted" modernization of the federal coal program: (1) the return on the sale of public coal resources; (2) the impact of the program on climate change and the environment; and (3) administrative efficiency considering market conditions and community impacts. (Doc. 76 at 15; DAR 1480.)

BLM Acting Director Michael Nedd issued a memorandum ("Nedd Memorandum") on March 28, 2017, recommending that Secretary of the Interior Ryan Zinke revoke S.O. 3338, terminate the PEIS review, and lift the coal moratorium. (Doc. 76 at 16; DAR 13-26.) The Nedd Memorandum reasoned that the PEIS was "not needed" because other BLM processes addressed the topics identified in the scoping report. (DAR 15.) With regard to climate change, the Nedd Memorandum indicated the PEIS would be "largely duplicative and

unnecessary," because project-level NEPA analyses "look at climate impacts." (DAR 18.)

President Trump issued an executive order, also on March 28, 2017, directing Secretary Zinke to "amend or withdraw" S.O. 3338, and "lift any and all moratoria" on federal coal leasing. (Doc. 76 at 16; DAR 15904.) Secretary Zinke issued Secretarial Order 3348 ("S.O. 3348") on March 29, 2017. (Doc. 76 at 16; DAR 1-2.) S.O. 3348 revoked S.O. 3338, lifted the leasing moratorium, and ordered the BLM to cease preparation of the PEIS. (Doc. 76 at 16-17; DAR 1.)

**LEGAL STANDARD**

Plaintiffs challenge S.O. 3348 pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 et seq. The APA instructs a reviewing court to "hold unlawful and set aside" agency action that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). APA review requires the Court to consider whether a particular decision was based on an agency's "consideration of the relevant factors." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971) (citations omitted). Courts generally limit such review to the administrative record. *Lands Council v. Powell*, 395 F.3d 1019, 1029 (9th Cir. 2005).

A complete administrative record consists of materials considered by the agency "directly or indirectly" in making a decision. *Thompson v. U.S. Dep't of*

*Labor*, 885 F.2d 551, 555 (9th Cir. 1989). Such materials must exist at the time of the decision. *Lands Council*, 395 F.3d at 1029 (quoting *Southwest Ctr. For Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996).

The Ninth Circuit has recognized four "narrow exceptions" allowing for the admission of evidence outside the administrative record. *Lands Council*, 395 F.3d at 1025. A court may admit such evidence where: (1) the material is necessary to determine "whether the agency has considered all relevant factors and has explained its decision"; (2) the agency has relied on materials not in the record; (3) such material is necessary "to explain technical terms or complex subject matter"; or (4) plaintiffs have demonstrated agency bad faith. *Lands Council*, 395 F. 3d at 1030 (internal citations omitted).

Plaintiffs argue that the Court should admit the materials under the first exception to determine whether the agency "has considered all relevant factors and has explained its decision." (Doc. 76 at 20); *Lands Council*, 395 F.3d at 1030. The Court may consider such information to determine "what matters the agency should have considered but did not." *Asarco, Inc. v. U.S. Envtl. Protec. Agency*, 616 F.2d 1153, 1160 (9th Cir. 1980). The "relevant factors" exception allows the Court to "evaluate the integrity of the agency's analysis." *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 993 (9th Cir. 2014).

## DISCUSSION

Plaintiffs have identified four categories of materials with which they seek to supplement the record. (Doc. 75 at 3-4.) Categories 2, 3, and 4 remain at issue. (Doc. 75 at 4.) Categories 2 and 4 concern information provided to the agency, or referenced and relied upon by the agency, in the development of the January 2017 Federal Coal Program PEIS Scoping Report. (Doc. 76 at 21-22.) Category 3 includes lease-level environmental analyses of the sort referenced in the Nedd Memorandum's recommendation to abandon the PEIS. (Doc. 76 at 22.)

### I. Categories 2 & 4

Category 2 consists of the attachments to the January 2017 PEIS scoping report. (Doc. 76 at 27.) The report itself is a part of the record. (DAR 1465-1654.) Category 4 comprises the attachments to the public comments submitted during the PEIS scoping period. (Doc. 76 at 33.) The comments themselves already appear in the record, as do any attachments that were submitted with the corresponding comment in a single file. (Doc. 78-1 at 3.)

Plaintiffs assert that the Court may consider the information that Federal Defendants relied upon in making previous policy to discern whether the subsequent decision to reverse course was "rational and adequately explained." (Doc. 76 at 27, 34.) Plaintiffs also assert that the Court should allow them supplement the record with Category 4 materials because Defendants considered

attachments to comments submitted by the coal mining industry. (Doc. 76 at 34.) Plaintiffs thus characterize the remaining attachments as worthy of inclusion because they are both highly relevant and potentially adverse to Federal Defendants' decision to end the PEIS. (Doc. 76 at 35.)

Federal Defendants argue that inclusion of these materials is inappropriate because the attachments to the scoping report were not considered by the agency in drafting the Nedd Memorandum or S.O. 3348. (Doc. 78-1 at 3, 4.) Federal Defendants further allege Plaintiffs have misapplied the "relevant factors" exception. Federal Defendants claim, without supporting authority, that Plaintiffs must identify "some reason, legal or otherwise" that required the agency to consider particular information for the Court to consider the same as part of the record. (Doc. 78 at 9.)

Federal Defendants further caution that supplementing the record could lead the Court to "substitute its judgment for that of the agency." (Doc. 78 at 11) (citing *Asarco, Inc.*, 616 F.2d at 1161). Defendants characterize Plaintiffs' requests to supplement as a "comparable expansion" to a "four-day trial which 'filled seven volumes of transcript.'" (Doc. 78 at 11) (citing *Asarco, Inc.*, 616 F.2d at 1160).

The APA standard prevents a court from "substituting its judgment for that of the agency." *Overton Park*, 401 U.S. at 416. As this District previously has discussed, however, this standard differs from the admissibility standard. *Rock*

*Creek All. v. U.S. Fish & Wildlife Serv.*, 390 F. Supp. 2d 993, 999 (D. Mont. 2005). The admissibility standard allows the Court to admit information under the "relevant factors" exception. *Id*. Such information proves relevant at the summary judgment stage to "evaluate the integrity" of the agency's process, rather than to substitute a different result. *San Luis*, 776 F.3d at 993.

The Court will consider the information identified in Categories 2 and 3 to determine whether the agency has considered all relevant factors in making the decision to revoke S.O. 3338. This information existed, in Federal Defendants' possession, at the time Federal Defendants drafted the Nedd Memorandum and issued S.O. 3348. *Lands Council*, 395 F.3d at 1029. Federal Defendants knew that this information existed and had considered the information relevant in making previous policy decisions. *Rock Creek*, 390 F.Supp. 2d at 999. Category 2 and 3 materials relate directly to the policy that Federal Defendants reversed. These materials relate to the Court's evaluation of the integrity of the agency's decision-making process. *San Luis*, 776 F.3d at 993.

## II. Category 3

Plaintiffs further seek to supplement the record with all environmental analyses relied upon by BLM in formulating its recommendation to terminate the PEIS. (Doc. 76 at 22.) In the Nedd Memorandum, Federal Defendants noted that

the project-specific environmental analyses required by NEPA would render the PEIS "largely duplicative." (Doc. 76 at 31; DAR 15.)

Plaintiffs previously requested that Federal Defendants identify the lease-specific environmental analyses that the agency considered in making this determination. (Doc. 76 at 32 n. 3.) Federal Defendants asserted in response that the Nedd Memorandum cited the environmental analyses "solely for context and background." (Doc. 75-1 at 23.) Federal Defendants suggest that these environmental analyses "were not considered" in making the recommendation. (Doc. 75-1 at 23.)

Plaintiffs have identified, in the alternative, thirty-six environmental assessments concerning coal leases and lease modifications completed by BLM since January 1, 2007. (Doc. 75-1 at 70.) Plaintiffs argue that the Court should supplement the record with these documents because Federal Defendants have used them to "justify" their decision to end the moratorium and terminate the PEIS. (Doc. 76 at 31.)

Federal Defendants counter that they considered no specific analyses in drafting the Nedd Memorandum or S.O. 3348, thus rendering inadmissible this information. (Doc. 78 at 8.) Federal Defendants further argue that the Nedd Memorandum's reference to lease-level environmental analyses should be read to suggest that "current practice" and "*future* coal leasing EAs" will sufficiently

consider climate change. (Doc. 78 at 12) (emphasis in original). Federal Defendants reason that the Court need not consider "past decisions." (Doc. 78 at 12.)

The Nedd Memorandum asserts that "[c]urrently, the environmental analysis conducted . . . appropriately analyzes climate change." (DAR 18.) The Memorandum further asserts that the BLM "will continue" to consider climate impacts in lease-specific environmental analyses. (DAR 18.) In addition, the Nedd Memorandum refers to "recent" analyses that have been challenged and upheld in federal court. (DAR 18 n.10.) The Nedd Memorandum makes no reference to any changes to "current practice" that will impact "*future* analyses" so as to render them more sufficient in this regard than those "current" and "recent" examples referred to in the memorandum.

Federal Defendants' reference to past environmental analyses, citation of specific analyses, and their stated intent to "continue" to evaluate climate impacts in the same manner all underscore the relevance of Category 3 materials. Federal Defendants have conceded that the agency did not consider the analyses in their decision-making process. (Doc. 75-1 at 23.) The Court will allow Plaintiffs to supplement the record with Category 3 materials to consider whether the agency considered all relevant factors in determining that the PEIS would be duplicative of lease-specific environmental assessments. *Lands Council*, 395 F.3d at 1030.

**ORDER**

Accordingly, **IT IS ORDERED** that the Plaintiffs' Motion to Supplement the Administrative Record (Doc. 75) is **GRANTED**.

DATED this 21st day of November, 2017.

Brian Morris
United States District Court Judge