Mark L. Stermitz
CROWLEY FLECK PLLP
305 S. 4th Street E., Suite 100
P.O. Box 7099
Missoula, MT 59807-7099
Telephone:  (406) 523-3600
mstermitz@crowleyfleck.com

Peter J. Schaumberg, *pro hac vice*
James M. Auslander, *pro hac vice*
BEVERIDGE & DIAMOND, P.C.
1350 I St., N.W., Suite 700
Washington, DC 20005
Phone: (202) 789-6043
pschaumberg@bdlaw.com
jauslander@bdlaw.com

*Attorneys for Intervenor-Defendant National Mining Association*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| CITIZENS FOR CLEAN ENERGY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF THE INTERIOR, *et al.*, <br><br> Defendants. <br>_____<br> STATE OF CALIFORNIA, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF THE INTERIOR, *et al.*, <br><br> Defendants. | Case No. 4:17-cv-00030-BMM (lead) <br> Case No. 4:17-cv-00042-BMM [Consolidated] <br><br> **INTERVENOR-DEFENDANT NATIONAL MINING ASSOCIATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT** |

# **TABLE OF CONTENTS**

Introduction .................................................................................................1

Background...................................................................................................5

Standard of Review .....................................................................................5

Argument......................................................................................................7

I.     Plaintiffs Fail to Establish Subject Matter Jurisdiction. .........................7

   A.    Plaintiffs Have Demonstrated No Clear and Imminent Injury. .........7

   B.    Plaintiffs Fail to Demonstrate Administrative Finality for Judicial Review....9

II.    The Zinke Order Did Not Trigger NEPA, Let Alone Violate It. .......................13

   A.   NEPA Imposes No Duty to Re-Review or Update Federal Coal Leasing Regulations. ...................................................................13

   B.    The Zinke Order Is Not a Major Federal Action Subject to NEPA. ...............18

III.   The Zinke Order Did Not Violate FLPMA or the MLA.......................................20

Conclusion .................................................................................................22

# TABLE OF AUTHORITIES

**Cases**                                                                        **Page(s)**

*Am. Airlines, Inc. v. Herman*,
   176 F.3d 283 (5th Cir. 1999) ..............................................................................10

*Bennett v. Spear*,
   520 U.S. 154 (1997) ..........................................................................................9

*Ctr. for Biological Diversity v. Zinke*, 260 F. Supp. 3d 11, 29 (D.D.C. 2017)..........9

*Found. on Econ. Trends v. Lyng*,
   817 F.2d 882 (D.C. Cir. 1987)............................................................................6

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*,
   460 F.3d 13 (D.C. Cir. 2006)..............................................................................9

*Kane County v. Jewell,* ,
   *No. 16-1211 (D. Utah filed Nov. 30, 2016)*........................................................9

*Lujan v. National Wildlife Federation*,
   497 U.S. 871 (1990) ......................................................................................... 6

*Marsh v. Or. Nat'l Res. Council*,
   490 U.S. 360 (1989) ..........................................................................................15

*Metropolitan Edison Co. v. People Against Nuclear Energy*,
   460 U.S. 766 (1983) ..........................................................................................6

*N. Cheyenne Tribe v. Hodel*,
   Case No. CV 82-116-BLG, 12 Indian Law Rep. 3065 (D. Mont. May 28,
   1985)....................................................................................................................5

*Northcoast Envtl. Center v. Glickman*,
   136 F.3d 660 (9th Cir. 1998) ............................................................................11

*Norton v. Southern Utah Wilderness Alliance ("SUWA"), 542 U.S. 55, 67
   (2004)*..................................................................................................................21

*ONRC Action v. Bureau of Land Mgmt.*,
  150 F.3d 1132 (9th Cir. 1998) ...................................................... 12, 21

*Rochester Tel. Corp. v. United States*,
  307 U.S. 125 (1939) ........................................................................10

*Schlesinger v. Reservists Comm. to Stop the War*,
  418 U.S. 208 (1974) ..........................................................................7

*Texas v. United States*,
  523 U.S. 296 (1998) ...........................................................................7

*TOMAC v. Norton*,
  433 F.3d 852 (D.C. Cir. 2006)...........................................................15

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
  136 S. Ct. 1807 (2016) .......................................................................9

*W. Org. of Res. Councils v. Zinke*, 892 F.3d 1234 (D.C. Cir. 2018) ............. *passim*

*W. Org. of Res. Councils v. Jewell*,
  124 F. Supp. 3d 7 (D.D.C. 2015)................................................. 10, 14

## Statutory Authorities

5 U.S.C. § 704 .......................................................................................9

5 U.S.C. § 706(2)(A).......................................................................... 18, 19

30 U.S.C. § 201(a)(1)............................................................................20

43 U.S.C. § 1701(a)(8)..........................................................................22

43 U.S.C. § 1701(a)(9)..........................................................................20

43 U.S.C. § 1701(a)(12).........................................................................20

**Rules and Regulations**

81 Fed. Reg. 17,720 (Mar. 30, 2016).........................................................................2

Fed. R. Civ. P. 12(h)(3)........................................................................................5

Local Rule 7.1(d)(2)(E) ........................................................................................24

**Additional Authorities**

BLM Coal Evaluation Handbook, *BLM Manual H-3073-1*  (2014) .......................17

BLM NEPA Handbook, *BLM Manual H-1790-1* (2008).........................................17

CEQ, *Effective Use of Programmatic NEPA Reviews* (2014).................................16

## INTRODUCTION

Plaintiffs' and amicus' combined nearly 200 pages of summary judgment filings obfuscate the straightforward nature of this case and improperly seek to transform it into a vehicle for judicial policymaking on federal coal leasing and development.  In essence, Plaintiffs argue that a *voluntary* programmatic environmental impact statement ("PEIS") to review existing federal coal leasing regulations became *mandatory* once begun.  Put simply, Plaintiffs allege that the government had to prepare a PEIS to justify not preparing a PEIS.  Their claims are legally meritless, and seek to re-litigate recent adverse rulings by four judges. In fact, their complaints are not even justiciable.  Thus, Intervenor-Defendant National Mining Association ("NMA") respectfully requests that the Court grant summary judgment for all Defendants.

Plaintiffs' exaggerated portrayal of both relevant Secretarial Orders is easily refuted.  Indeed, the salient facts in this case are few and incontrovertible. Secretarial Order 3338 ("Jewell Order"), issued on January 15, 2016, was entitled "Discretionary [PEIS]."  AR 3-12.[1]  It "pause[d]" the "process[ing]" of some coal leasing applications not for its own sake, but only "until the completion of the PEIS."  AR 10-11.  Many federal coal applications and operations were unaffected.

---

[1] Administrative record ("AR") citations herein correspond to the final Bates-numbered AR Respondents lodged with the Court on July 11, 2018, ECF No. 112.

AR 11-12.  The Jewell Order did "not propos[e] any regulatory action at this time," and did not prejudge any existing terms "that the PEIS may ultimately determine to be less than optimal."  AR 7, 10.  The Jewell Order underwent no prior National Environmental Policy Act ("NEPA") review or other statutory findings that Plaintiffs now demand in this case.  It was effective only until "amended, superseded, or revoked, whichever occurs first," not necessarily until a final PEIS.  AR 12.  It afforded no enforcement right or benefit.  *Id.*  As Plaintiffs concede, the inchoate PEIS process produced nothing more than a "scoping report" collating public input received, with no legal import and still containing no regulatory proposal.  *See also* 81 Fed. Reg. 17,720 (Mar. 30, 2016) (Notice of Intent and Scoping, that "begins the process of defining the scope of the [PEIS]…and identifying the issues that may be addressed").

Secretarial Order 3348 ("Zinke Order"), issued on March 29, 2017, is the only "action" complained of here, but is not final agency action subject to judicial review.  AR 1-2.  Rather, it merely ceased the Jewell Order's purely discretionary PEIS process.  Ending the PEIS also ended the "pause," whose *sole* function per the Jewell Order had been for preparing a PEIS.  Contrary to Plaintiffs' misrepresentations, the Zinke Order did *not* lease or authorize development of a single acre or ton of federal coal.  The Bureau of Land Management ("BLM") could continue to consider and decide certain federal coal lease applications, each

subject to required NEPA review.  The Zinke Order was "intended to improve the internal management of the Department," and created no legally enforceable right or benefit.  AR 2.

Plaintiffs obviously dislike the status quo, as they (particularly the environmental non-governmental organizations ("NGOs") Plaintiffs) have made clear here and in myriad other litigation that they oppose federal coal leasing and development.  *E.g.*, Nichols Decl., ECF No. 117-3, ¶ 11 ("Our ultimate aim has been to advocate for a gradual end to the federal coal program.").[2]  Unable to compel or persuade BLM to complete a PEIS, indefinitely pause the processing of certain lease applications, and revise its regulations, Plaintiffs now ask this Court to do so.  In support of their desired policy outcome, Plaintiffs and the aligned amicus go to great lengths to disparage the leasing, mining, transportation, and utilization of federal coal.

But all of this is a distraction to deciding the legal issues in *this case*. Plaintiffs' attempt to shoehorn all federal coal-related actions into a single "program," and assign responsibility to the Zinke Order, defies reality.  The Order itself had no impacts—it did not change any regulation, alter any Plaintiff's rights, or obviate NEPA compliance for actual coal-related actions.  Consequently, the

---

[2] All cited ECF filings in this case are to the docket of the lead case, No. 4:17-cv-00030-BMM, unless stated otherwise.

Zinke Order does not constitute reviewable final agency action.  Moreover, because Plaintiffs' alleged injuries are wholly contingent on final agency action that has not yet occurred, they have not suffered the requisite injury-in-fact for standing or ripeness.

Even if Plaintiffs could overcome these jurisdictional defects (which they cannot), the D.C. Circuit's reasoning in *W. Org. of Res. Councils v. Zinke ("WORC")*, 892 F.3d 1234 (D.C. Cir. 2018) is fatal to the merits of their claims. Tellingly, Plaintiffs do not question *WORC*, and each of their briefs mentions it only in a passing footnote.  In that case, like here, the appellants attacked the government's existing federal coal regulations and prior PEIS as "outdated." Affirming the district court, *WORC* unambiguously held that the government had no NEPA obligation to prepare a new or supplemental PEIS absent a proposed regulatory amendment.  It makes no difference that Plaintiffs here style their suit as a challenge to the Zinke Order, because (1) Plaintiffs still premise their claims on a nonexistent duty to supplement a prior PEIS; (2) the *WORC* court expressly considered the Zinke Order in finding no major federal action under NEPA; and (3) the Zinke Order merely ended a PEIS process that the *WORC* court (and the Jewell Order) determined was not required in the first place.

Therefore, only two questions are properly before the Court—whether Plaintiffs' claims are even justiciable and, if so, whether the Zinke Order triggered

NEPA.  Both questions must be answered in the negative.  Accordingly, Plaintiffs'
claims necessarily fail.

## BACKGROUND

To avoid duplication, the Associations incorporate by reference Federal
Defendants' discussion of relevant legal and factual background.

## STANDARD OF REVIEW

To avoid duplication, the Associations incorporate by reference Federal
Defendants' discussion of the applicable judicial standard of review for agency
actions under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706.
As a threshold matter, however, that APA standard is irrelevant if the Court lacks
subject matter jurisdiction over Plaintiffs' claims.  Relevant here, Plaintiffs must
clearly show the requisite elements for Article III standing, ripeness, and final
agency action reviewable under the APA.  *See* Fed. Defs. Opening Brief ("FOB")
3 (citing seminal cases for each).  "If the court determines at any time that it lacks
subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P.
12(h)(3).

Relatedly, as this Court cautioned in a case cited by Plaintiffs, "[t]his court is
cognizant of the need to take caution that NEPA and other statutory schemes are
not manipulated beyond Congress' intent in attempts by litigants to raise policy
objections to proposed federal actions."  NGOs' Opening Br. ("NOB") Ex. 1 (*N.*

*Cheyenne Tribe v. Hodel*, Case No. CV 82-116-BLG, 12 Indian Law Rep. 3065, 3074 (D. Mont. May 28, 1985) (citing *Metropolitan Edison Co. v. People Against Nuclear Energy,* 460 U.S. 766, 777-78 (1983)); *see also Lujan v. National Wildlife Federation,* 497 U.S. 871, 891 (1990) (barring plaintiff from seeking "wholesale improvement of the program by court decree" in lieu of challenging some "particular action that causes it harm"); *Found. on Econ. Trends v. Lyng*, 817 F.2d 882, 886 (D.C. Cir. 1987) ("NEPA was not intended to resolve fundamental policy disputes.").  In contrast to the "final decision to sell coal leases" on federal lands in *Hodel*—and the challenged actions in all of Plaintiffs' other cited cases—the Zinke Order made no decisions on federal coal planning, leasing, or development. Instead, Plaintiffs here urge the Court to decide "matters of policy" that it long desired to avoid:  "whether coal leasing is desirable or whether leasing is necessary from a national energy standpoint."  *Hodel*, 12 Indian Law Rep. at 3074.  The Court should refuse Plaintiffs' invitation to use NEPA litigation as a judicial policymaking vehicle, specifically as a cudgel to revisit and modify substantive law in the absence of a regulatory proposal triggering environmental review.

## ARGUMENT

## I. PLAINTIFFS FAIL TO ESTABLISH SUBJECT MATTER JURISDICTION.

As Federal Defendants' opening brief cogently explains, the Court need not, and should not, even reach the merits of Plaintiffs' claims and should dismiss them on jurisdictional grounds. Despite the volume of Plaintiffs' and amicus' summary judgment submissions, they suffer from the same defects. For example, the NGOs point to their "standing declarations" purportedly "demonstrating that Secretarial Order 3348 authorizes new coal leasing that will cause environmental, social, and cultural harm in areas where Plaintiffs live, work, and recreate." *E.g.*, NOB 13. But they do no such thing. Rather, they fail to show that the Zinke Order authorizes anything or injures any Plaintiff.

### A. Plaintiffs Have Demonstrated No Clear and Imminent Injury.

Article III standing ensures that "there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 221 (1974). Moreover, "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998).

As Federal Defendants explain in detail, Plaintiffs cannot clearly show imminent injury, a *sine qua non* of both constitutional standing and ripeness

requirements for jurisdiction.  *See* FOB 16-24 (citations omitted).  Each of the

"actions" or "decisions" of which Plaintiffs complain, and addressed in the cases

they cite, involve actual disposition or development of federal coal.  And except

for New Mexico, none of the Plaintiffs produces any federal coal.[3]  By contrast,

the Zinke Order directs BLM only to "process" certain lease applications and

modifications "expeditiously" and "in accordance with" existing regulations and

guidance.  AR 2.  It mandates no particular outcome or approval, especially

without its own corresponding NEPA review.[4]

     Plaintiffs' only discernible allegation of present "harm" is, incredibly, their

self-generated cost of commenting on and litigating BLM's federal coal decisions.

Nichols Decl. ¶ 25 (claiming expenditure of "significant resources in commenting

on and litigating new coal leases that could not have been issued under the

moratorium" that the NGOs "would otherwise spend on other activities").  It is, of

course, entirely Plaintiffs' decision as to which leases or projects they challenge.

Their unfulfilled desire for expediency and convenience does not create the

requisite injury or hardship for standing or ripeness.  *Lujan*, 497 U.S. at 894 ("The

case-by-case approach … is assuredly not as swift or as immediately far-reaching a

---

[3] NMA is unaware of any federal coal production in New York, California, or Washington.

[4] Plaintiffs also factually mischaracterize the nature and extent of impacts they attribute to federal coal leasing and development.  But this purely legal case is not about such issues, and thus it is unnecessary for the Court to reach them on the parties' motions for summary judgment.

corrective process as those interested in systemic improvement would desire.  Until confided to us, however, more sweeping actions are for the other branches.").[5]

**B.    Plaintiffs Fail to Demonstrate Administrative Finality for Judicial Review.**

Only "final agency action" is reviewable under the APA.  5 U.S.C. § 704. Absence of "final agency action" is a "threshold question[]," and means that "the action is not reviewable."  *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 18 (D.C. Cir. 2006).  A reviewable final agency action must: (i) "mark the consummation of the agency's decisionmaking process," and (ii) "be one by which rights or obligations have been determined, or from which legal consequences will flow."  *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807, 1813 (2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)).  "But courts do not, and cannot, police agency deliberations as a general matter; indeed, it is only when the agency actually takes some final action that review under the APA is appropriate."  *Ctr. for Biological Diversity ("CBD") v. Zinke*, 260 F. Supp. 3d 11, 29 (D.D.C. 2017) (citing *Hawkes*).

---

[5] In prior litigation brought by Utah counties challenging the Jewell Order, many of the current Plaintiff parties moved (unsuccessfully) to intervene as Defendants, and questioned the counties' standing.  Exhibit 1, *Kane County v. Jewell*, No. 16-1211 (D. Utah filed Nov. 30, 2016), ECF No. 4 ("Conservation Groups also deny that the Counties have stated a claim for which relief can be granted, and this court lacks jurisdiction over the Counties' claims because, *inter alia*, the Counties lack Article III standing to bring their case.").  That concern applies with more force to Plaintiffs here.  The Utah case was voluntarily dismissed after the Zinke Order.  *Id.*, ECF No. 27.

Here, the Zinke Order is a "nonfinal agency order" that "does not itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action." *Am. Airlines, Inc. v. Herman*, 176 F.3d 283, 288 (5th Cir. 1999) (citing *Rochester Tel. Corp. v. United States*, 307 U.S. 125, 130 (1939)).  Again, all the Zinke Order did was terminate a voluntarily undertaken PEIS unaccompanied by any proposed regulatory action.  It did not culminate agency decisionmaking because it made no decisions; rather, BLM is to process and render decisions on lease applications and modifications.  Similarly, the Zinke Order created no legal consequences, rights, or benefits; all parties' rights are unchanged.  As Federal Defendants point out, it could not be otherwise absent substantive rulemaking.  FOB 24-26.  Indeed, both the Jewell and Zinke Orders expressly disclaim creation of "any right or benefit, substantive or procedural, enforceable at law or equity" by anyone.  AR 12; AR 2.

Plaintiffs cite no authority where, absent a proposed action, cessation of an ongoing NEPA process is itself reviewable final agency action.  That is unsurprising, particularly in the present circumstances where the programmatic-level review was undertaken voluntarily from the start, and the Jewell Order contained no mandate to complete the PEIS.  To be sure, NEPA reviews, like the proposed agency actions they normally accompany, frequently are withdrawn or never completed.

10

Plaintiffs' claims here are akin to those rejected in *CBD*, *supra*.  In that case, CBD (also a Plaintiff here) argued that "by publicly commencing a review of its NEPA procedures, Interior effectively imposed upon itself a mandate to complete its review."  260 F. Supp. 3d at 23.  The court rejected this argument, explaining "absent a preexisting legislative (or otherwise legally binding) duty to complete a task, an agency does not spawn such a duty simply by commencing the task."  *Id.* The court stated that case law did not support CBD's assertion "that an agency can convert a voluntary task into a mandatory one simply by embarking on it."  *Id.* at 24; *id.* ("The bottom line is this:  CBD identified no authority suggesting that agencies have either a general, freestanding obligation to finish any and all tasks that they undertake, or a specific obligation to complete a review of their NEPA procedures and decide if revisions are warranted, and this Court is not aware of any.").  The court further clarified that its reasoning applied equally to a claim styled under APA § 706(1) or 706(2).  *Id.* at 27-28 ("[N]either the agency's ongoing deliberations about whether or not to revise agency procedures nor its decision to leave current procedures intact for the time being qualifies as a discrete agency action that would give rise to a legal challenge under § 706(1) or § 706(2) of the APA.").  Similarly here, CBD and its co-Plaintiffs point to nothing transforming the Jewell Order's discretionary, exploratory PEIS into a mandate or ground for judicial review.  *See also Northcoast Envtl. Center v. Glickman*, 136

11

F.3d 660, 669 (9th Cir. 1998) (preliminary research and development efforts are not an agency action under the APA, or a trigger for NEPA review).

Nor is the Zinke Order's simultaneous cessation of deferred processing for some federal coal leases reviewable final agency action.  Plaintiffs, like the Jewell Order, cite previous instances of similarly deferred actions accompanying proposed regulatory amendments for federal coal.  But nowhere is this required, except when by Congress.  More specifically, as cited above, the express terms of the Jewell Order's "pause" tied it exclusively to the PEIS process; without the PEIS, there is no pause.  Thus, the end of the pause does not provide Plaintiffs a foothold for jurisdiction apart from the end of the PEIS (which also is unreviewable).

The Ninth Circuit's decision in *ONRC Action v. Bureau of Land Mgmt.* is instructive on this point.  150 F.3d 1132 (9th Cir. 1998).  BLM there refused to institute a moratorium on logging and other activities pending completion of an EIS for developing an ecosystem management strategy.  The court rejected the plaintiffs' NEPA and APA claims, holding that "BLM's failure to implement a moratorium was not a final agency action."  *Id.* at 1135-37.  That was true even while BLM was (unlike here) pursuing the proposal and preparing an EIS.  *Id.*  The court also rejected the argument that a "decision not to change the status quo is a final agency action challengeable under the APA."  *Id.*  Because the Zinke Order

12

does not meet the criteria for final agency action, Plaintiffs' claims against it are not justiciable.

## II.    THE ZINKE ORDER DID NOT TRIGGER NEPA, LET ALONE VIOLATE IT.

Even if the jurisdictional bar to Plaintiffs' claims did not exist, they still fail on the merits.  Plaintiffs aver that Secretarial Order 3348 at once had two opposite effects:  ending an optional NEPA review while somehow also creating a need for one.  That is both nonsensical and legally baseless.  Recently, four judges in the *WORC* litigation—which also took into account the Jewell and Zinke Orders— unanimously rejected the claims Plaintiffs assert here seeking to judicially compel the government to adopt a different federal coal policy that Plaintiffs prefer.  This Court should adopt the same reasoning and decline Plaintiffs' invitation to create novel programmatic NEPA obligations that do not exist.

### A.    NEPA Imposes No Duty to Re-Review or Update Federal Coal Leasing Regulations.

The crux of Plaintiffs' arguments is that BLM's existing federal coal leasing regulations are "outdated," and that this Court should compel BLM to re-study and update them.  Similar groups in *WORC* brought such claims to no avail.  That is principally because there is no independent obligation to revisit BLM's longstanding federal coal regulations, and no extant proposal to do so; without

ongoing federal action, there correspondingly cannot be a legal trigger to supplement a prior PEIS.

In *WORC*, the plaintiffs alleged the Department of the Interior ("DOI") violated NEPA by not updating its PEIS that had been completed for its most recent federal coal regulatory amendments, to account for more recently presented environmental information.  Specifically, they contended that DOI's continuation of federal coal-related activities under the existing regulations constituted an "ongoing" federal coal "program," and created a continuing duty to supplement the prior PEIS.  The district court squarely rejected plaintiffs' claims, holding that "[n]o existing authority, however, permits the Court to impose the purported obligation on the federal defendants."  *W. Org. of Res. Councils v. Jewell*, 124 F. Supp. 3d 7, 11 (D.D.C. 2015).  A three-judge panel of the D.C. Circuit unanimously affirmed, finding that "Appellants have failed to identify any specific pending action, apart from the Program's continued existence, that qualifies as a "major Federal action" under NEPA."  892 F.3d at 1243.  The court concluded:

> The federal action establishing the Federal Coal
> Management Program was completed in 1979.  And the
> Secretary has not proposed to take any new action
> respecting the Program.  In these circumstances, neither
> NEPA nor the APA requires the Secretary to update the
> PEIS for the Federal Coal Management Program.  We
> therefore lack authority to compel the Secretary to do so.

*Id.* at 1237.  DOI's "prior statements" or "own documents" suggesting potential

supplementation also did not "create a legal duty" to update its prior PEIS.  *Id.* at

1245-46.  The D.C. Circuit observed that "[e]ach lease issued under the Program

represents a new 'federal action'" subject to NEPA review, and the plaintiffs still

could challenge specific coal leasing decisions' compliance with NEPA when

those decisions occur.  *Id.* at 1240, 1246.  Plaintiffs' declarations regarding

involvement in individual leases or projects concede as much.

Plaintiffs identify not a single case requiring supplementation of a

programmatic NEPA review, particularly absent a proposed regulation.  In this

circumstance, their cited authority on NEPA supplementation and arguments about

new or changed circumstances are irrelevant. Consistently, the Jewell Order

recognized from the start that its PEIS was not compelled, but merely

"discretionary."  The absence of a standalone legal requirement to supplement a

PEIS is not surprising, because under Plaintiffs' theory BLM would be relegated to

an incessant, amorphous obligation to conduct programmatic NEPA reviews and

reassess its governing regulations on a constant basis due to new information that

is always being generated.  To be sure, the analysis "must end at some point, or

NEPA simply becomes a tool to stall new projects indefinitely."  *TOMAC,*

*Taxpayers of Mich. Against Casinos v. Norton*, 433 F.3d 852, 863 (D.C. Cir.

2006); *see also Marsh v. Or. Nat'l Res. Council*, 490 U.S. 360, 373 (1989) ("[A]n

agency need not supplement an EIS every time new information comes to light after the EIS is finalized.  To require otherwise would render agency decision-making intractable, always awaiting updated information only to find the new information outdated by the time a decision is made.").

In addition to the dispositive authorities cited by *WORC* and Federal Defendants, longstanding agency guidance and procedures implementing NEPA support the logical outcome that no PEIS is required here.  Recent Council on Environmental Quality ("CEQ") government-wide guidance, promulgated under the previous Administration, on programmatic NEPA reviews makes clear that "[t]he NEPA process begins when an agency has a proposal" and "an analysis prepared by an agency is not a NEPA programmatic review unless that agency is making decisions on a proposed Federal action."  CEQ, "Effective Use of Programmatic NEPA Reviews" (December 18, 2014), at 6, 9.[6]  CEQ commits programmatic NEPA review to individual agency "judgment and discretion," and recommends consideration in specific circumstances inapplicable here, including when the agency is "initiating or revising a national or regional rulemaking, policy, plan, or program."  *Id.* at 15.  Moreover, CEQ expressly disclaims supplementation of a programmatic NEPA document where, like here, only individual

---

[6] Available at https://energy.gov/nepa/downloads/effective-use-programmatic-nepa-reviews-ceq-2014 (excerpts attached in Exhibit 2).

implementation decisions remain.[7]  BLM's own NEPA guidance likewise obviates further NEPA review absent identifiable proposed agency action.[8]

Federal Defendants have no ongoing duty to study or amend federal coal regulations.  And as Plaintiffs admit, no proposal presently exists to amend those regulations.  Thus, Federal Defendants have taken no major federal action potentially warranting a supplemental or new NEPA review, let alone specifically a *programmatic* EIS as Plaintiffs demand here.

///

---

[7] *Id.* at 44 ("If there are no further decisions to be made, revising the original programmatic NEPA review serves no purpose and is not required."); *id.* at 43-44 n.62 ("However, once a decision has been made on certain proposed actions, such as a decision to establish a plan rather than a decision to implement an action that advances or meets the plan, there is no more 'proposed action' for which there is a duty to supplement the NEPA analysis."); *id.* at 45 ("When the new information's effects are limited to potential impacts or alternatives associated with the next stage, or project- or site-specific decision, then the tiered analysis can address the new information without having to supplement the … PEIS.").

[8] BLM NEPA Handbook, *BLM Manual H-1790-1* (2008) (excerpts attached in Exhibit 3) at 13 ("The NEPA process is initiated when a proposal for Federal action exists."); *id*. at 5 (diagram of BLM "NEPA Screening Process," beginning with "action is proposed"); BLM Coal Evaluation Handbook, *BLM Manual H-3073-1* (2014) (excerpts attached in Exhibit 4) at 1-2, 1-3 (outlining the federal coal lease-by-application process, which includes "completion of an environmental analysis under [NEPA]").

**B.      The Zinke Order Is Not a Major Federal Action Subject to NEPA.**

NMA concurs with Federal Defendants' arguments establishing that the Zinke Order is not a "proposal" or "major federal action" requiring NEPA review. FOB 27-30.  Nor do Plaintiffs dispute *WORC*'s findings or analysis.  Instead, each of their briefs buries *WORC* in a sole footnote.  SOB 16 n.6; NOB 20 n.2.  Try as they may, Plaintiffs cannot summarily brush aside *WORC* or its reasoning, which likewise should dispose of this case.

Plaintiffs incorrectly assert that *WORC* "did not involve Secretarial Order 3348."  In fact, the D.C. Circuit discussed both the Jewell and Zinke Orders.  892 F.3d at 1241.  What is more, the D.C. Circuit placed the entire *WORC* litigation on hold during the pendency of the Jewell Order, because according to the plaintiffs there, "[t]his Secretarial Order essentially provided Appellants with all the relief sought in their Complaint."  *WORC*, No. 15-5294 (May 26, 2017), at 2.  Based on the Zinke Order, the *WORC* plaintiffs then moved to restart their case.  *Id.* at 3.  Thus, the court necessarily was aware of and included the Secretarial Orders in its finding that "the Secretary has not proposed to take any new action respecting the Program."  892 F.3d at 1237; *id* at 1245 (ruling "[o]n the record before us," which included the Secretarial Orders).

Plaintiffs also try to distinguish *WORC* on the ground that Plaintiffs here challenge the Zinke Order as an "action" under APA § 706(2), rather than a failure

to act under APA § 706(1).  But as discussed above, the Zinke Order is not a justiciable final agency action.  And even if it were, Plaintiffs' distinction is without a difference in this case.[9]  Once again, the Zinke Order concluded a voluntary PEIS process and a limited pause wholly dependent on that PEIS— nothing more.  That PEIS was the very same PEIS that *WORC* held was unnecessary to begin with.  Thus, Plaintiffs' claims here and those in *WORC* are effectively the same—DOI declined to complete a new or supplemental federal coal PEIS—and fail for the same reasons.  The Zinke Order was no more a major federal action subject to NEPA than the Jewell Order, which likewise received no separate NEPA review before it was issued.  Under Plaintiffs' illogic, the Jewell Order was deficient and void even before the Zinke Order rescinded it.

Plaintiffs' related argument that the Zinke Order was an impermissible "reversal in policy" fares no better.  *E.g.*, States' Opening Br. ("SOB") 18; NOB 25.  This relies on a false premise because neither the Jewell Order nor the Zinke Order affirmatively made any policy, findings, or decisions.  They simply began,

---

[9] Plaintiffs' claims in this case based on DOI's alleged failure to prepare a PEIS in the absence of any agency action appear to be improperly pled under § 706(2), rather than under § 706(1) to compel agency action—perhaps in an attempt to hedge their bets with the *WORC* litigation alleging § 706(1) claims.  For example, the two claims in the NGOs' complaint are styled as 5 U.S.C. § 706(2)(A), even though they are pled as "Failure to Prepare PEIS" and "Failure to Prepare Supplemental PEIS."  ECF No. 1.  The State Plaintiffs' complaint simply pleads "5 U.S.C. § 706."  No. 4:17-cv-00042-BMM, ECF No. 1.  The Court's prior order on supplementation of the administrative record declined to categorize Plaintiffs' claims under either APA provision prior to summary judgment.  ECF No. 102.

then ended, a voluntary PEIS process and a coterminous "pause" on processing of

some applications during the pendency of the PEIS.  Despite Plaintiffs' repeated

allegations, nowhere did the Jewell Order deem the PEIS or pause "necessary."

*E.g.*, SOB 22; NOB 16.  Nor did it issue any "findings" to "walk back."  NOB 22.

Rather, by definition, the PEIS itself was intended to make any such findings.

Plaintiffs construe the NEPA process exactly backwards by advocating for a PEIS

that justifies their already formed opinions on the future of federal coal leasing.

And as explained above, no overarching legal requirement demands a PEIS or an

interim moratorium.  In sum, the relevant Secretarial Orders effectuated no change

to the continuously applicable federal coal regulations, and produced no proposal

to actually amend those regulations.  Therefore, Plaintiffs' crafted construct and

cited cases regarding actual changes in substantive agency rulemakings or policy

are inapposite.

## III.   THE ZINKE ORDER DID NOT VIOLATE FLPMA OR THE MLA.

The State Plaintiffs' attempts to manufacture and enforce new obligations

under general policy provisions of the Mineral Leasing Act ("MLA") and Federal

Land Policy and Management Act ("FLPMA"), and only select parts of them, are

also unavailing.  *See* 30 U.S.C. § 201(a)(1); 43 U.S.C. § 1701(a)(8)-(9); *cf.* 43

U.S.C. § 1701(a)(12) (policy that "public lands be managed in a manner which

recognizes the Nation's need for domestic sources of minerals…").  Even the

NGOs do not allege such claims.  Federal Defendants correctly explain that these provisions are inapplicable and mandate no particular action enforceable in this Court.  FOB 36-40; *see also ONRC*, 150 F.3d at 1139 ("[FLPMA] Section 1701 provides several policy statements which require due consideration, but do not provide a clear duty to update land management plans or cease actions during the updating process.").  Notably, Plaintiffs do not challenge the existing BLM regulations' legality under FLPMA or the MLA.  Moreover, because Plaintiffs' FLPMA and MLA claims can only be brought under the APA, they fail for the same jurisdictional reasons as Plaintiffs' NEPA claims also under the APA.  *ONRC*, 150 F.3d at 1135.  The State Plaintiffs cite no contrary authority.

At base, these claims improperly request the Court to enact substantive policy around federal coal management.  As the Supreme Court held in rejecting similar FLPMA and APA claims, the "prospect of pervasive oversight by the federal courts over the manner and pace of agency compliance with such congressional directives is not contemplated by the APA."  *Norton v. Southern Utah Wilderness Alliance* ("*SUWA*"), 542 U.S. 55, 67 (2004); *see also ONRC*, 150 F.3d at 1139-40 (plaintiff "has not identified a clear duty under NEPA or FLPMA

with which BLM must comply," including 43 U.S.C. § 1701(a)(8)).  Accordingly,

these claims should be dismissed as well.[10]

**CONCLUSION**

Plaintiffs may disagree with BLM's longstanding federal coal regulations, or

the decision to prioritize DOI's resources for other activities rather than completing

a voluntary programmatic EIS at this time.  Yet, their policy preferences do not

constitute cognizable legal claims.  "NEPA was not intended to resolve

fundamental policy disputes."  *Lyng*, 817 F.2d at 886.  Because "[a] policy

disagreement, at bottom, is the gravamen of appellants' complaint," this Court

should decline to "extend NEPA as far as [appellant would take] it."  *Id.*  The

Court should grant summary judgment for all Defendants and dismiss Plaintiffs'

complaints.

Dated:          September 19, 2018          Respectfully submitted,

> */s/ Mark L. Stermitz*
>
> Mark L. Stermitz
> CROWLEY FLECK PLLP
> 305 S. 4th Street E., Suite 100
> P.O. Box 7099
> Missoula, MT 59807-7099
> Telephone:  (406) 523-3600
> Fax: (406) 523-3636
> mstermitz@crowleyfleck.com
>
> Peter J. Schaumberg, *pro hac vice*

---

[10] The NGOs' trust obligation claim also fails for the reasons explained by Federal Defendants.
FOB 40-43.  NMA has nothing further to add on this issue.

James M. Auslander, *pro hac vice*
BEVERIDGE & DIAMOND, P.C.
1350 I St., N.W., Suite 700
Washington, DC 20005
Phone: (202) 789-6043
pschaumberg@bdlaw.com
jauslander@bdlaw.com

*Attorneys for Intervenor-Defendant*
*National Mining Association*

23

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitations pursuant to Local Rule 7.1(d)(2)(E) and the Orders of this Court (ECF Nos. 34 and 114) because this brief contains 5,092 words, excluding the parts of the brief exempted under the Local Rule.

*/s/ Mark L. Stermitz*
Mark L. Stermitz

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of September, 2018, I electronically filed the foregoing Intervenor-Defendant National Mining Association's Memorandum in Support of Cross-Motion for Summary Judgment and Opposition to Plaintiffs' Motions for Summary Judgment with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Mark L. Stermitz*
Mark L. Stermitz