Dave C. Dalthorp, MT Bar No. 3720
Scott Svee, MT Bar No. 8440
JACKSON, MURDO & GRANT, P.C.
203 North Ewing Street
Helena, MT 59601
Phone: (406) 513-1120
Fax: (406) 447-7033
dalthorp@jmgm.com
ssvee@jmgm.com

Erik E. Petersen, WSB No. 7-5608
Michael M. Robinson WSB No. 6-2658
Senior Assistant Attorneys General
Wyoming Attorney General's Office
2320 Capitol Avenue
Cheyenne, WY  82002
Phone: (307) 777-6946
Fax: (307) 777-3542
erik.petersen@wyo.gov
mike.robinson@wyo.gov

*Attorneys for the State of Wyoming*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### GREAT FALLS DIVISION

| | |
|---|---|
| CITIZENS FOR CLEAN ENERGY, *et al.*<br><br>and<br><br>THE NORTHERN CHEYENNE TRIBE,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF THE INTERIOR, *et al.*, | Case No. 4:17-cv-00030-BMM (Lead)<br><br>**INTERVENOR-DEFENDANTS STATE OF WYOMING AND STATE OF MONTANA'S JOINT REPLY IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT** |

Defendants,

and

STATE OF WYOMING, *et al.*,

Intervenor – Defendants.

STATE OF CALIFORNIA, *et al.*,

Plaintiffs,

v.

RYAN ZINKE, in his official capacity as Secretary of the Interior, *et al.*,

Defendants,

and

STATE OF WYOMING, *et al.*,

Intervenor – Defendants.

Case No. 4:17-cv-00042-BMM (Consolidated Case)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iv

INTRODUCTION ............................................................................ 1

ARGUMENT.................................................................................. 2

    I.    The Zinke Order is not a final agency action under the APA. .................... 2

    II.   The Zinke Order was not a major federal action under NEPA. ................. 7

CONCLUSION ..............................................................................14

CERTIFICATE OF SERVICE...........................................................16

# TABLE OF AUTHORITIES

## Cases

*Bennett v. Spear*,
520 U.S. 154 (1997)........................................................2, 3, 4, 6

*Cal. ex rel. Lockyer v. United States Dep't of Agric.*,
575 F.3d 999 (9th Cir. 2009)..........................................11, 12

*Cal. Wilderness Coal. v. United States Dep't of Energy*,
631 F.3d 1072 (9th Cir. 2011)............................................. 9

*Cold Mountain v Garber*, 375 F.3d 884 (9th Cir. 2004).......................................10

*Ctr. for Biological Diversity v. Salazar*,
706 F.3d 1085 (9th Cir. 2013)..........................................9, 10

*Havasupai Tribe v. Provencio*,
876 F.3d 1242 (9th Cir. 2017)...........................................4, 5, 6

*Havasupai Tribe v. Provencio*,
906 F.3d 1155 (9th Cir. 2018)............................................5, 10

*Krueger v. Morton*,
539 F.2d 235 (D.C. Cir. 1976) ..........................................2, 3

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990)....................................................... 6

*Nat'l Wildlife Fed'n v. Espy*,
45 F.3d 1337 (9th Cir. 1995)............................................. 7

*Northcoast Envtl. Ctr. v. Glickman*,
136 F.3d 660 (9th Cir. 1998)..........................................7, 11, 12, 13

*Pit River Tribe v. United States Forest Serv.*,
469 F.3d 768 (9th Cir. 2006)............................................9, 10

*Virginia Beach Policeman's Benevolent Ass'n v. Reich*,
881 F. Supp. 1059 (E.D. Va. 1995)...................................... 3

*W. Org. of Res. Councils v. Zinke*,
892 F.3d 1234 (D.C. Cir. 2018) ........................................9, 11, 13

*Wildearth Guardians v. BLM,*
  8 F. Supp. 3d 17 (D.D.C. 2014) ....................................................5, 6

*Wildearth Guardians v. Jewell,*
  738 F.3d 298 (D.C. Cir. 2013) ....................................................5, 6

**Statutes**

42 U.S.C. § 4332............................................................................... 7

5 U.S.C. § 704 ................................................................................. 7

**Other Authorities**

Coal Management; Federally Owned Coal,
  44 Fed. Reg. 42615 (July 19, 1979) ................................................ 4

Interior Order No. 3338, *Discretionary Programmatic*
  *Environmental Impact Statement to Modernize the*
  *Federal Coal Program* (2016) .................................................. 1-3, 8-10, 12, 14

Interior Order No. 3348, *Concerning the Federal*
  *Coal Moratorium* (2017)....................................................1-10, 12, 13

# INTRODUCTION

The States of Wyoming and Montana already have established that the agency action at issue in this case was not: (1) a final agency action under the Administrative Procedure Act (APA); or (2) a major federal action under the National Environmental Policy Act (NEPA). Secretarial Order 3348 (Zinke Order), which ended a pause on some, but not all, coal leasing on federal lands, was a policy decision that additional information gathering in the form of a programmatic environmental impact statement (programmatic EIS) was unnecessary to the continued operation of the federal coal program. The Interest Groups' arguments mischaracterize the pause as a step taken independent of, and unrelated to, the discretionary programmatic EIS review initiated by Secretarial Order 3338 (Jewell Order). The Zinke Order merely allowed the federal coal program to continue processing applications for mining leases as it has for almost forty years. The order itself did not make any final decision or impose rights or obligations on anyone because there are still further steps in the agency decision making process before any action occurs. Accordingly, the Zinke Order is not a final agency action and, thus, not justiciable.

Even if one assumes the Zinke Order is a final agency action subject to judicial review, it is not a "major federal action" under NEPA requiring preparation of an EIS. An EIS is not necessary when a proposed federal action does not change the

status quo. Since the Jewell Order only provided for a review of the federal coal program and did not propose any regulatory action, lifting the pause instituted by the Jewell Order did not constitute a major federal action under NEPA. The Interest Groups' have not shown that the Zinke Order proposes or implements any agency action. The Zinke Order is not a major federal action and no EIS is required for the continued operation of the federal coal program. As a result, this Court should deny the Interest Groups' motions for summary judgment and grant the Intervenor-Defendants' cross motion for summary judgment.

## ARGUMENT

**I.    The Zinke Order is not a final agency action under the APA.**

Two conditions must be satisfied for an agency action to be final under the APA: "First, the action must mark the consummation of the agency's decision making process … it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal citations and quotation marks omitted).

The Interest Groups contend that the first prong of *Bennett* is satisfied because ending the pause[1] was the "consummation of agency deliberations regarding the

---

[1] The Jewell Order uses the word "pause" to describe the decision not to consider new or modified applications during the pendency of the discretionary review of the federal coal program. (AR 10). A pause is not a "permanent termination" of a

coal-leasing moratorium" and the programmatic EIS. (Dkt. No. 129 at 10; Dkt. No. 130 at 13). The Interest Groups' argument is without merit.

The federal coal program was, and is, an ongoing program and, hence, not the "consummation of the agency's decisionmaking process." (Dkt. No. 129 at 9). The Jewell Order temporarily paused the United States Bureau of Land Management's processing of new applications for coal leases or modifications for existing ones. (AR 10-11). The federal coal program itself never stopped operating: lease applications for thermal coal and emergencies continued to be processed and coal mining on federal land under existing leases continued operation. (AR 11-12). *See Virginia Beach Policeman's Benevolent Ass'n v. Reich,* 881 F. Supp. 1059, 1066 (E.D. Va. 1995) (Secretary of Labor's order that did not alter the status quo was not a final agency action because it imposed no new obligations on the Plaintiff.). Thus, the Zinke Order was not a "restart" of the federal coal program. Ending the pause simply allows for the consideration of and decision on particular lease applications, which, the Interest Groups will be able to challenge as they so choose. Therefore, the Zinke Order was not "the consummation of the agency's decisionmaking process" and the first prong of the *Bennett* test is not satisfied.

---

program. *Krueger v. Morton*, 539 F.2d 235, 240 (D.C. Cir. 1976). A pause is a temporary respite pending resolution of some concern or issue; here, it is a "pause on leasing[,]" (AR 10) (quoting Jewell Order) (Dkt. No. 126 at 21). In a transparent attempt to make the pause appear to be something more formal than it actually was, the Interest Groups use the word "moratorium" instead of "pause."

The Interest Groups argue that the second prong of *Bennett* is satisfied even though the Zinke Order does not approve any particular lease. Specifically, they claim it still determined that "rights and obligations" and "legal obligations" flow from its issuance because it authorized coal leasing that was previously prohibited and "'was a practical requirement to the continued operation' of mining activities affected by the moratorium, even if it is not the last step in the leasing process." (Dkt. No. 129 at 11; Dkt. No. 130 at 13-14) (c*iting and quoting Havasupai Tribe v. Provencio*, 876 F.3d 1242, 1249-50 (9th Cir. 2017)).

As noted above, the Zinke Order did not authorize previously prohibited coal leasing or open up "thousands of acres of public lands to coal leasing and development." (Dkt. No. 130 at 1). It simply removed the temporary pause imposed on part of the federal coal program because it determined that a discretionary programmatic EIS was unnecessary. (AR 13). The lands "opened up" to potential coal leasing are lands that have been available for leasing since establishment of the federal coal program in 1979. *See* Coal Management; Federally Owned Coal, 44 Fed. Reg. 42615 (July 19, 1979) (establishing the current federal coal leasing program). The Interest Groups' argument that the Zinke Order *itself* opened any land for coal leasing is simply meritless.

The argument that lifting the pause "'was a practical requirement to the continued operation' of mining activities affected by the moratorium, even if it is

not the last step in the leasing process" is also meritless. (Dkt. No. 129 at 11). By ending the pause, the Zinke Order did not grant any new leases or modify any existing ones. It also did not affect any one's right to object to the issuance of any new leases or modifications on any grounds that they deem appropriate. In short, the Zinke Order did not create or determine any legal rights or obligations and no legal consequences flow from that Order that have any effect on the Interest Groups.

The main case the Interest Groups' argument relies on highlights their position's lack of merit. In *Havasupai Tribe*[2] the issue was whether a "Mineral Report" that concluded an energy company had a valid existing right to operate a uranium mine in an area that had been withdrawn from new mining claims was a final agency action. *Havasupai Tribe*, 876 F.3d at 1248-50. The validity of a particular lease is not at issue here. The Zinke Order simply permits the processing of applications for new and modified leases, which, if granted, the Interest Groups may challenge as a discrete agency action. *See*, *e.g.*, *Wildearth Guardians v. Jewell*, 738 F.3d 298, 308-11 (D.C. Cir. 2013); *Wildearth Guardians v. BLM*, 8 F. Supp. 3d 17, 36-37 (D.D.C. 2014) (BLM sufficiently considered a full range of alternatives to address GHG emissions and climate change in action brought against agency decision to approve lease). The *Havasupai Tribe* case is similar to the *Wildearth*

---

[2] The Ninth Circuit has withdrawn this case and declared that "it may not be cited as precedent by or to this court or any district court of the Ninth Circuit." *Havasupai Tribe v. Provencio*, 906 F.3d 1155 (9th 2018).

*Guardians* cases in that it is a challenge to a decision at the end of the process. Accordingly, *Havasupai Tribe* has no relevance here where the Zinke Order is not the end of the process. Further agency action may occur if a third party applies under the federal coal program for a new lease or to modify an existing lease.

In reality, the Interest Groups are advancing an impermissible broad programmatic attack against the federal coal program. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990). "Under the terms of the APA, [a plaintiff] must direct its attack against some particular 'agency action' that causes it harm." *Id*. Whether the Zinke Order was a prerequisite to the resumption of the processing of applications for new or modified leases is irrelevant because it merely resumed operation of that part of the federal coal program subject to the pause. The Zinke Order does not cause harm to the Interest Groups; they are not required to do anything or refrain from doing anything. Again, if they wish to challenge the agency action under the program – leasing decisions – then the Interest Groups may do so as they see fit. As described above the Zinke Order does not create or determine any legal rights or obligations and no legal consequences attach when further agency decisions remain. Therefore, the Interest Groups have failed to establish the second prong of the *Bennett* test.

The Zinke Order is not a final agency action and, as a result, the Court should grant Intervenor-Defendants Wyoming and Montana's cross motion for summary judgment.

## II.   The Zinke Order was not a major federal action under NEPA.

Even if the Zinke Order was a final agency action, it is not a "major federal action" under NEPA. A federal agency must prepare a detailed EIS for all major federal actions significantly affecting the quality of the human environment. 42 U.S.C. § 4332(C). However, an "EIS is not necessary where a proposed federal action would not change the status quo." *Northcoast Envtl. Ctr. v. Glickman*, 136 F.3d 660, 668 (9th Cir. 1998); *see Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1343 (9th Cir. 1995) ("Discretionary agency action that does not alter the status quo does not require an EIS.").

The Interest Groups repeat their argument from their opening briefs that the Zinke Order constitutes a "major federal action" requiring an EIS under NEPA because it "open[s] thousands of acres of public land to coal leasing" and establishes "an agency's policies which will result in or substantially alter [an] agency program … which has significant environmental consequences." (Dkt. No. 129 at 15-16; Dkt. No. 130 at 17). They insist that the Zinke Order "restarted a federal coal program that had been mostly halted" and therefore the Order is "the cause of significant environmental effects from coal-leasing and mining that would not have been

7

possible absent its issuance." (Dkt. No. 130 at 19). Their arguments mischaracterize the nature of the Jewell Order's pause, which fatally undermines their claim that the Zinke Order is a major federal action under NEPA.

The Interest Groups predicate their argument on disconnecting the pause from the Jewell Order's discretionary review so that they can represent the pause as a material change to the federal coal program. The purpose of the Jewell Order was to "determine whether and how the current system for developing Federal coal should be modernized[.]" (AR 3). Secretary Jewell ordered the preparation of a discretionary programmatic EIS to analyze potential leasing and management reforms to the federal coal program but her order did not propose "any regulatory action at this time[.]" (*Id*. at 3, 9). The Jewell Order imposed a pause on processing applications for new lease sales and lease modifications because those can result in lengthy terms and the secretary wanted to avoid "locking in" leases when the review may result in the adoption of new lease terms. (*Id.* at 10-11). The pause was a mechanism to facilitate the discretionary review of the federal coal program. (*Id.*).

The Interest Groups turn that premise on its head when they argue that the pause is a major federal action necessitating an EIS before it may be lifted. This mischaracterization of the pause underlies their argument that the Zinke Order "open[ed] thousands of acres of public land to coal leasing." As previously noted, the Zinke Order did no such thing. The establishment of the federal coal program in

8

1979 when the Secretary of the Interior issued the ROD and promulgated the final rule is the major federal action that opened public lands for coal leasing. *W. Org. of Res. Councils v. Zinke*, 892 F.3d 1234, 1243-44 (D.C. Cir. 2018) (*WORC*).

The Interest Groups cite *Pit River Tribe v. United States Forest Service*, to support their contention that ending the pause through revocation of the Jewell Order constitutes a major federal action necessitating an EIS. (Dkt. No. 130 at 19) (*citing Pit River Tribe*, 469 F.3d 768 (9th Cir. 2006)). In that case, the court held that the extension of a lease to develop and use geothermal steam for a power plant on federal lands was a major federal action because it altered the status quo since, without the extension, the lessee could not continue to operate the power plant. 469 F.3d at 784. *Pit River* is not relevant because the Zinke Order did not alter the status quo; the federal coal program continues to operate exactly as it has for decades.[3]

Contrary to the Interest Groups' argument, the relevant case is *Center for Biological Diversity v. Salazar*, 706 F.3d 1085 (9th Cir. 2013), where BLM authorized the restart of mining operations at a mine on federal land in 2009 after a seventeen-year hiatus under a plan of operations approved in 1988. *Salazar*, 706

---

[3] The Interest Groups also cite *California Wilderness Coalition v. United States Department of Energy*, 631 F.3d 1072, 1103 n.33 (9th Cir. 2011) for the proposition that NEPA requires review for agency decisions that "create authority for federal action … where no such authority previously existed." (Dkt. No. 130 at 19). The Interest Groups fail to explain how that case is remotely relevant here where BLM authority to lease coal on public lands has existed under the current program for almost forty years.

F.3d at 1088. The plaintiffs claimed that reopening the mine after it had been idle for seventeen years violated NEPA because the cessation of mining activities rendered the 1988 plan of operations ineffective and, accordingly, a new plan of operations with a supporting EIS was necessary before the mine could resume operations. *Id.* at 1091-92.

The court rejected plaintiffs' argument. It noted that "no regulation requires approval of a new plan of operations before regular mining activities may recommence following a temporary closure and that approval of the 1988 plan of operations was a major federal action that triggered NEPA's requirements but "that action [wa]s completed when the plan [wa]s approved." *Id.* at 1094 (quoting *Cold Mountain v Garber*, 375 F.3d 884, 894 (9th Cir. 2004)). "Before that action was complete, BLM performed the requisite environmental analysis. Accordingly, as far as the 1988 plan of operations is concerned, appropriate NEPA review took place[.]" *Salazar*, 706 F.3d at 1095.

The Zinke Order is analogous to *Salazar* as the revocation of the Jewell Order and the lifting of the pause did not constitute a change in the status quo of the federal coal program. *See Havasupai Tribe v. Provencio*, 906 F.3d 1155, 1163  (9th Cir. 2018) (distinguishing *Salazar* from *Pit River* because the resumption of mining operations did not change the status quo and satisfied NEPA because the action was complete with the original approval of the plan of operations). BLM's "NEPA

obligation for the Federal Coal Management Program terminated with its adoption in 1979." *WORC*, 892 F.3d at 1243-44.

Next, the Interest Groups attempt to distinguish *Glickman*. (Dkt. No. 126 at 17-20). In *Glickman*, the court held that agency studies of an issue that do not "propose any site-specific activity [or] call for specific actions directly impacting the physical environment" did not trigger the NEPA requirement for an EIS. *Glickman*, 136 F.3d at 670. The Interest Groups contend that, unlike in *Glickman*, the pause on coal leasing was a "programmatic decision[] that pave[d] the way for future environmental consequences" – i.e., "leasing and mining coal that could not occur without the Federal Defendants' decision to end the moratorium." (Dkt. No. 130 at 19-20).

Instead of *Glickman*, the Interest Groups urge the Court to look to *California ex rel. Lockyer v. United States Department of Agriculture*, 575 F.3d 999 (9th Cir. 2009) for guidance. (Dkt. No. 130 at 19-21). In that case, the question was whether the Forest Service complied with NEPA when it adopted a rule that partially repealed an existing rule. *Lockyer*, 575 F.3d at 1007-08. The Forest Service argued the new rule fell into an established "categorical exclusion" that obviated the need for an EIS. *Id*. at 1012. A categorical exclusion is "a category of actions which do not individually or cumulatively have a significant effect on the human environment[.]" *Id*. The Ninth Circuit panel held that the Forest Service unreasonably found that the

new rule did not have a significant effect on the human environment and upheld a district court injunction against the new rule. *Id.* at 1017-18, 1020-21.

*Lockyer* is not relevant to this case. The Jewell Order adopted the pause on coal leasing as part of its discretionary review of the federal coal program. Neither the Jewell Order nor the pause is a rule. The Zinke Order revoking the Jewell Order is not a rule. The Interest Groups offer no analysis or logical rationale why a case concerning the repeal of a rule is relevant to any issue before the Court in this case.

By contrast, Wyoming and Montana provided a detailed, logical review of *Glickman* and why its guidance is relevant to the court in resolving this case. (Dkt. No. 126 at 17-20). *Glickman* says that, when an agency adopts a plan to study a problem, it does not affect the quality of the human environment because the action does not create activities which impact the physical environment. *Glickman*, 136 F.3d at 670. (Dkt. No. 126 at 19). If, at some point, the agency takes a discrete action based on the study, then interested parties may challenge that decision as they deem appropriate. *Id. Glickman* is the appropriate context for examining this case. The Jewell Order merely provided for a "comprehensive review of the Federal coal program" and did not "propose any regulatory action." (AR 9, 12); (Dkt. No. 126 at 19). The Zinke Order did not propose or implement any agency action either; it directed BLM to resume processing new and modified coal mining applications in accordance with the federal coal program. The Interest Groups' remedy for any

12

alleged harm from a discrete agency action made under the federal coal program is, as in *Glickman*, to challenge that discrete action if they deem it necessary. (Dkt. No. 126 at 20); *see WORC*, 892 F.3d at 1244-45 (An agency action occurs under the federal coal program when a specific leasing decision is made.).

The Interest Groups claim that the defendants have argued that "NEPA applies only when BLM considers individual leases" and under that view "NEPA would not have been triggered by Federal Defendants' adoption of the coal-leasing program in the first instance." (Dkt No. 130 at 21). No defendant makes that argument. Everyone recognizes that adoption or modification of certain rules can trigger a NEPA analysis. In this case, NEPA comes into play when BLM makes leasing decisions because the federal coal leasing program's NEPA obligation is complete. *WORC*, 892 F.3d at 1243 (BLM's "NEPA obligation for the Federal Coal Management Program terminated with its adoption in 1979."). **If** BLM takes a major federal action with respect to the federal coal program that will have an effect on the quality of the human environment, **then** NEPA may require further environmental analysis. However, the Zinke Order was not a major federal action and so there is no NEPA obligation for the federal coal program at this time.

In their initial brief, Intervenor-Defendants pointed out that BLM has twice imposed pauses on processing new and modified coal lease sales in the past and lifting those pauses did not reopen land for coal leasing or implement a new agency

program necessitating an EIS. (Dkt. No. 126 at 20-21). The Interest Groups counter that requiring an EIS before ending the Jewell Order pause would be consistent with the past practice because the previous pauses were lifted after completion of a programmatic EIS and a supplemental EIS. (Dkt. No. 25). The Interest Groups are asking the Court to require an EIS because of the implementation of the pause itself; not because an EIS is being performed. The Interest Groups' argument illustrates how they are attempting to bootstrap a discretionary review of the federal coal program into a mandated EIS. The Interest Groups' argument is without merit.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Interest Groups' claims, their motions for summary judgment and grant the Intervenor-Defendants State of Wyoming and Montana's cross-motion for summary judgment.

Dated this 3rd day of December, 2018.

FOR DEFENDANT-INTERVENOR
STATES OF WYOMING AND MONTANA

_____/s/ Dave Dalthorp_____
Dave C. Dalthorp, MT Bar No. 3720
Scott Svee, MT Bar No. 8440
JACKSON, MURDO & GRANT, P.C.
203 North Ewing Street
Helena, MT 59601
Phone: (406) 513-1120
Fax: (406) 447-7033
dalthorp@jmgm.com
ssvee@jmgm.com

14

_____/s/ Michael M. Robinson_____
Erik E. Petersen, WSB No. 7-5608
Michael M. Robinson WSB No. 6-2658
Senior Assistant Attorneys General
Wyoming Attorney General's Office
2320 Capitol Avenue
Cheyenne, WY  82002
(307) 777-6946 (phone)
(307) 777-3542 (fax)
erik.petersen@wyo.gov
mike.robinson@wyo.gov


_____/s/ Melissa Schlichting_____
Timothy C. Fox
Montana Attorney General
Melissa Schlichting
Deputy Attorney General
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401

# CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E) and this Court's Order dated June 2, 2017 (Dkt. No. 34), I certify that this brief contains 3,520 words, excluding the parts of the brief exempted under the Local Rule, according to the count of Microsoft Word.

_____/s/ Dave Dalthorp_____
Dave C. Dalthorp
JACKSON, MURDO & GRANT, P.C.

# CERTIFICATE OF SERVICE

I certify that a copy of the foregoing is being filed with the Clerk of the Court using the CM/ECF system, thereby serving it on all parties of record on this 3rd day of December, 2018.

_____/s/ Dave Dalthorp_____
Dave C. Dalthorp
JACKSON, MURDO & GRANT, P.C.
