LAWRENCE VANDYKE
Deputy Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

JOHN S. MOST, Natural Resources Section
P.O. Box 7611 Washington, D.C. 20044
202-616-3353 || 202-305-0506 (fax)
John.Most@usdoj.gov

*Counsel for Federal Defendants*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION**

_____

| | |
|---|---|
| CITIZENS FOR CLEAN ENERGY *et al*. | ) CV 17-30-BMM |
| | ) (lead consolidated case) |
| and | ) |
| | ) |
| THE NORTHERN CHEYENNE TRIBE, | ) |
| | ) **FEDERAL DEFENDANTS'** |
| Plaintiffs, | ) **REMEDY BRIEF** |
| v. | ) |
| | ) |
| UNITED STATES DEPARTMENT OF THE | ) |
| INTERIOR *et al*. | ) |
| | ) |
| Federal Defendants, | ) |
| and | ) |
| | ) |
| STATE OF WYOMING *et al*., | ) |
| | ) |
| Intervenor-Defendants. | ) |
| _____ | ) |
| | ) |
| STATE OF CALIFORNIA *et al*. | ) CV 17-42-BMM |
| v. | ) (consolidated case) |

UNITED STATES DEPARTMENT OF THE
INTERIOR *et al*.

       Federal Defendants,

  and

STATE OF WYOMING *et al.*,

       Intervenor-Defendants.
_____
)
)
)
)
)
)
)
)
)
)
)
)
)

## BACKGROUND

Plaintiffs in this case challenge Interior's March 2017 decision to end a "pause" on agency processing of some new coal lease applications under the Mineral Leasing Act.  Former Secretary Jewell effected the pause in January of 2016 by issuing Secretarial Order ("SO") 3338, which directed the Bureau of Land Management ("BLM"), during the period of pause, to prepare a "Discretionary Programmatic Environmental Impact Statement" or PEIS.  Admin. Record ("AR") 3.  The "pause" was not an end in itself – it was put into place to facilitate preparation of a discretionary PEIS.  AR 10 (noting disadvantages of continued lease processing during this preparation).  Former Secretary Zinke ended the pause on March 29, 2017, when he issued Secretarial Order, No. 3348 (the "Zinke Order").

On April 19, 2019, following merits briefing and oral argument, the Court entered an order holding, among other things, that the Zinke Order was a "triggering event" for purposes of the National Environmental Policy Act ("NEPA") and a "final agency action" for purposes of the Administrative Procedure Act ("APA").  *See* ECF No. 141 ("Order").  The Order directed Federal Defendants to analyze, in accord with NEPA, the impacts of the Zinke Order.[1]  It

---

[1] *See* ECF No. 141 at 29-30 (stating the Court "defers to Federal Defendants in the first instance to conduct its required NEPA analysis"); *id*. at 31 (stating that the Court "has ordered Federal Defendants to initiate the NEPA process"); *id*. at 29

also directed the parties to meet and confer in a good faith attempt to reach an

agreement as to additional remedies.

On May 14, 2019, Federal Defendants reported to the parties that, in

response to the injunctive relief ordered by the Court, BLM was preparing a draft

environmental assessment ("EA") to examine the impacts of the Zinke Order.  On

May 22, 2019, after the initial time period for the parties to confer had ended

without agreement on remedy, Federal Defendants reported to the parties and the

court that they had posted the draft EA on BLM's website.  ECF No. 143.  This

commenced a fifteen-day public comment period, later extended by four days.  *See*

https://www.blm.gov/press-release/blm-extends-public-comment-period-june-10-

draft-environmental-assessment-lifting-pause.

Interior personnel have since reviewed the public comments received and

are presently preparing responses to those comments and otherwise diligently

working to finalize the EA.  Once that process is complete, Interior will determine

whether it can issue a Finding of No Significant Impact ("FONSI") or must instead

prepare an environmental impact statement ("EIS").  Interior expects to reach this

milestone by August 5, 2019.  Finally, upon culmination of this NEPA process,

---

(allowing that the analysis could take the form of an environmental impact
statement ("EIS") or an environmental assessment, accompanied by a "convincing
statement of reasons" why an EIS is not required).

Interior will likely issue a new decision, which may take the form of a decision record and/or a new secretarial order.

On July 18, 2019, Federal Defendants contacted counsel for Plaintiffs and inquired if they would consent to a motion for enlargement of the July 22 deadline for remedy briefing, to allow the agency additional time to compete its analysis and decision making.  Plaintiffs declined and stated in a July 19 email to the undersigned that they will oppose a request for further extension of the remedy briefing.

Accordingly, Federal Defendants now file this remedy brief in compliance with the Court's most recent scheduling order, ECF No. 146, and they respectfully ask that the Court to decline to enter any remedy order at all or, in the alternative, to (i) postpone any remedy ruling until the agency completes its decision making; and (ii) enter an order allowing the parties twenty-one days from completion of decision making to file supplemental remedy briefs.  In the event the Court decides to enter a remedy order, it should be limited to remand without vacatur for the reasons set out below.

## **DISCUSSION**

In light of the government's progress to date in addressing the Court's concerns with the Zinke Order, as expressed in the Court's April 19 Order, and the likelihood that their efforts will conclude in the very near future, postponement of

any remedy ruling would be fair and appropriate and would promote the interests

of judicial economy.  Plaintiffs would suffer no prejudice because, as Federal

Defendants stated in their June 17 motion for enlargement of time for remedy

briefing, ECF No. 145, they do not anticipate approving any leases – other than

one exempt from the pause and disclosed to Plaintiffs – before September 1, 2019.

*Id*. at 4.  The interest of judicial economy is served because the Court may avoid

what Federal Defendants believe would be a premature ruling based only on a draft

EA.  Avoiding such a premature ruling is fair and advances the purposes of NEPA

because it affords Federal Defendants the opportunity to respond to the numerous

public comments made on the draft EA and to complete their decision making,

thereby benefiting the public by fostering a comprehensive understanding of the

agency's rationale for its conclusions.

Even if the Court disagrees, however, any remedy order should do no more

than remand the challenged decision to the agency, without vacatur, for completion

of its NEPA analysis and the noted decision making.  A remand without vacatur

would be appropriate because no lease approvals are expected until September at

the earliest and completion of the NEPA analysis ordered by the Court is expected

shortly.

The APA provides that "[t]he reviewing court shall . . . hold unlawful and

set aside agency action, findings, and conclusions found to be . . . arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law." 5

U.S.C. § 706(2)(A). But "courts are not mechanically obligated to vacate agency

decisions that they find invalid." *Pac. Rivers Council v. U.S. Forest Serv.*, 942 F.

Supp. 2d 1014, 1017 (E.D. Cal. 2013) (gathering cases); *see also* 5 U.S.C. § 702

("[n]othing herein . . . affects . . . the power or duty of the court to dismiss any

action or deny relief on any other appropriate legal or equitable ground"). Rather,

"when equity demands," the challenged agency action can be "'left in place while

the agency follows the necessary procedures' to correct its action." *Cal. Cmtys.*

*Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012) (quoting *Idaho Farm*

*Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995)). That is precisely

what is occurring now, as a result of the April 19 Order requiring further

environmental analysis. Interior expects to complete its corrective analysis in early

August and, accordingly, there is no basis for vacating the Zinke Order in the

interim.

Federal Defendants further note that the decision whether to order vacatur

should be based on an assessment of "how serious the agency's errors are and the

disruptive consequences of an interim change that may itself be changed." *Cal.*

*Cmtys. Against Toxics*, 688 F.3d at 992 (citation and quotation omitted). In this

case, vacatur is not warranted because it would be highly disruptive to federal coal

leasing and operators' expectations and investments, and because the procedural

errors found by the Court will soon be corrected.

It also bears noting that the only agency action at issue in this case is the

Zinke Order, and that Plaintiffs have no basis for enjoining coal leases not at issue

here.  In the event Plaintiffs seek to vacate or enjoin existing coal leases or even

proposed future leases, that request should be denied for numerous reasons.

As a threshold matter, neither of the Secretarial Orders relevant to this case

is judicially enforceable.  The Ninth Circuit has long held that, "[t]o have the force

and effect of law enforceable against an agency in federal court, [an] agency

pronouncement must (1) prescribe substantive rules – not interpretive rules,

general statements of policy[,] or rules of agency organization, procedure or

practice – and, (2) conform to certain procedural requirements." *United States v.*

*Fifty-Three Eclectus Parrots*, 685 F.2d 1131, 1136 (9th Cir. 1982) (internal

quotation marks and citation omitted); *accord Lowry v. Barnhart*, 329 F.3d 1019,

1022 (9th Cir. 2003); *United States v. Alameda Gateway Ltd.*, 213 F.3d 1161, 1168

(9th Cir. 2000).  Neither requirement is met in this case, because neither Order

constitutes a substantive rule, and neither Order was issued in compliance with the

procedural requirements that attach to substantive rules.[2]  Thus, while this Court

---

[2] If the Jewell Order were a binding and enforceable substantive rule, the Secretary
would have been required to publish a notice of the proposed Order in the Federal
Register, 5 U.S.C. § 553(b); to receive public comment on the proposed Order, *id.*

has concluded that Plaintiffs may challenge the Zinke Order on its face, and while

it may vacate that Order if it sees fit, there would be no basis for an order

compelling BLM to abide by the Jewell Order, or for enjoining leases issued in

alleged violation of the Jewell Order.

Moreover, even if the Jewell Order were somehow enforceable, there still

would be no basis for enjoining anticipated lease sales.  BLM has explained that no

new lease approvals are expected until September at the earliest, and only four

lease applications are possible candidates for approval in that month.  As to those,

the ecologic harm Plaintiffs complain of would not occur until (i) permits under the

Surface Mining Control and Reclamation Act are issued by the relevant permitting

authority (in most cases, a state agency in the state where the leased parcels are

located); and (ii) the Secretary or Assistant Secretary of the Interior issues a mining

plan or a mining plan modification , following a review and recommendation by

Interior's Office of Surface Mining Reclamation and Enforcement.  These steps

routinely take at least a year.  Given the ample time remaining before surface-

disturbing activity could occur, and the likelihood that the legal error found in the

Order will be corrected within that time frame, Plaintiffs cannot show that they

have suffered irreparable injury, the first element in the Supreme Court's standard

---

§ 553(c); and to publish the final Order in the Federal Register not less than thirty
days prior to its effective date.  *See* 5 U.S.C. § 553(d).

for permanent injunctive relief, as set forth in *Monsanto Company v. Geertson Seed Farms* (*Monsanto*), 561 U.S. 139 (2010). [3]

Injunctive relief precluding future lease sales would also be inappropriate because it would circumvent the APA's procedural requirements for challenging agency action.  Under the APA, "judicial review is available only for final agency actions and not for anticipated future agency actions."  *See Dine Citizens Against Ruining Our Env't v. Jewell*, No. CIV 15-0209 JB/SCY, 2015 WL 4997207, at *34 (D.N.M. Aug. 14, 2015) (citing 5 U.S.C. § 704), *aff'd*, 839 F.3d 1276 (10th Cir. 2016).  Thus, insofar as Plaintiffs may wish to challenge possible future leases, the appropriate course would be to seek leave to amend its complaint to challenge those future leases once they are finalized or to file a new civil action.

With respect to the three completed lease approvals, permanent injunctive relief is also not appropriate because the Court has already ordered injunctive relief requiring the agency to correct the flaws it found in the Zinke Order.  As the draft EA indicates, from the time the pause was lifted by the Zinke Order in March of 2017 to the present day, the agency approved just three non-exempt coal lease

---

[3] Under *Monsanto,* to obtain permanent injunctive relief, a plaintiff must show: "(1) that [he] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.  *Monsanto* at 156 (citation omitted).

applications.  That EA, which as noted should be finalized shortly, is expected to

address those approvals in light of the concerns expressed by the Court in its April

19 Order.  Beyond these, Plaintiffs cannot point to any harm in the agency's

administration of federal coal leasing because no other leasing approvals have

occurred.  As such, Plaintiffs cannot satisfy the first, third, or fourth elements of

the Supreme Court's standard for permanent injunctive relief, as set forth in

*Monsanto*.

## CONCLUSION

Federal Defendants respectfully urge the Court to decline to enter any

remedy order at all or, in the alternative, to (i) postpone any remedy ruling until the

agency completes its decision making; and (ii) enter an order allowing the parties

twenty-one days from completion of decision making to file supplemental remedy

briefs.  In the event the Court decides to enter a remedy order, it should be limited

to remand without vacatur.

Respectfully submitted this 22nd day of July, 2019.

> LAWRENCE VANDYKE
> Deputy Assistant Attorney General
> U.S. Department of Justice
> Environment and Natural Resources Division
>
>  /s/ John S. Most
> JOHN S. MOST, Trial Attorney
> Natural Resources Section
> P.O. Box 7611, Washington, D.C. 20044
> 202-616-3353 || 202-305-0506 (fax)

John.Most@usdoj.gov

*Counsel for Federal Defendants*

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing is being filed with the Clerk of the Court using the CM/ECF system, thereby serving it on all parties of record on July 22, 2019.

/s/ *John S. Most*
JOHN S. MOST
*Counsel for Defendants*

10