Dave C. Dalthorp, MT Bar No. 3720
Scott Svee, MT Bar No. 8440
JACKSON, MURDO & GRANT, P.C.

James C. Kaste, WSB No. 6-3244
Deputy Attorney General
Wyoming Attorney General's Office
*Attorneys for Intervenor-Defendant State of Wyoming*

Timothy C. Fox
Montana Attorney General
Rob Cameron
Deputy Attorney General
*Attorneys for Intervenor-Defendant State of Montana*

Mark L. Stermitz
CROWLEY FLECK PLLP

Peter J. Schaumberg, *pro hac vice*
James M. Auslander, *pro hac vice*
BEVERIDGE & DIAMOND, P.C.
*Attorneys for Intervenor-Defendant National Mining Association*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | | |
|---|---|---|
| CITIZENS FOR CLEAN ENERGY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF THE INTERIOR, *et al.*, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 4:17-cv-00030-BMM (lead) <br> Case No. 4:17-cv-00042-BMM [Consolidated] |
| STATE OF CALIFORNIA, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF THE INTERIOR, *et al.*, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) | **INTERVENOR-DEFENDANTS STATE OF WYOMING, STATE OF MONTANA, AND NATIONAL MINING ASSOCIATION'S JOINT SUBSTITUTE BRIEF ON REMEDY** |

# **<u>TABLE OF CONTENTS</u>**

Introduction ....................................................................................................1

I.   Plaintiffs in This Case Have Not Challenged the Recent EA or Future
     Leasing Actions. ......................................................................................2

II.  Plaintiffs Are Not Entitled to a Novel "Status Quo."............................7

   A.  The Court Should Not Mandate a PEIS............................................8

   B.  The Court Should Not Impose a "Moratorium." ...........................10

   C.  The *Monsanto* Factors Support No Injunction. .............................12

Conclusion ....................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n,*
 988 F.2d 146 (D.C. Cir. 1993)...................................................................6

*Beverly Hills Unified Sch. Dist. v. Fed. Transit Admin.,*
 No. 12-9861 (consol.), 2016 WL 4445770 (C.D. Cal. Aug. 12, 2016)............6, 13

*California v. U.S. Dep't of Labor,*
 155 F. Supp. 3d 1089 (E.D. Cal. 2016) ..................................................4

*Conservation Cong. v. U.S. Forest Serv.,*
 No. 13-1977, 2018 WL 1142199 (E.D. Cal. Mar. 2, 2018) ...................................5

*Ctr. for Biological Diversity v. Zinke,*
 260 F. Supp. 3d 11 (D.D.C. 2017)..........................................................9

*Found. on Econ. Trends v. Lyng,*
 817 F.2d 882 (D.C. Cir. 1987)..............................................................12

*Friends of the Earth v. Laidlaw Envt'l Servs. Inc.,*
 528 U.S. 167 (2000) .........................................................................14

*Grunewald v. Jarvis,*
 776 F.3d 893 (D.C. Cir. 2015)..............................................................12

*Idaho Farm Bureau Fed'n v. Babbitt,*
 58 F.3d 1392 (9th Cir. 1995) ...............................................................6

*McCormack v. Hiedeman,*
 694 F.3d 1004 (9th Cir. 2012) ............................................................14

*Monsanto Co. v. Geertson Seed Farms,*
 561 U.S. 139 (2010) .................................................................. 12, 13, 14

*N. Coast Rivers All. v. U.S. Dep't of the Interior,*
 No. 16-307, 2016 WL 11372492 (E.D. Cal. Sept. 23, 2016)................................10

*N. Coast Rivers All. v. U.S. Dep't of the Interior*,
No. 16-307, 2016 WL 8673038 (E.D. Cal. Dec. 16, 2016) ..................................10

*Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*,
636 F.3d 1150 (9th Cir. 2011) ....................................................................... 12, 14

*Pollinator Stewardship Council v. EPA*,
806 F.3d 520 (9th Cir. 2015) ......................................................................................6

*W. Org. of Res. Councils ("WORC") v. Zinke*,
892 F.3d 1234 (D.C. Cir. 2018).................................................................................8, 9

*W. Org. of Res. Councils v. U.S. Bureau of Land Mgmt.*,
No. 16-21-GF-BMM, 2018 WL 9986684 (D. Mont. July 31, 2018)....................6

*WildEarth Guardians v. Bernhardt*,
No. 16-cv-1724, 2019 WL 3253685 (D.D.C. July 19, 2019)................................4

## Statutory Authorities

5 U.S.C. § 702 ................................................................................................................6

5 U.S.C. § 704 ................................................................................................................4

5 U.S.C. § 706 ................................................................................................................4

## Rules and Regulations

43 C.F.R. § 46.160 ......................................................................................................11

Fed. R. Civ. P. 8, 15 ....................................................................................................4

# INTRODUCTION

The issue of remedy in this case is moot, and the Court should deny Plaintiffs' requests to fashion relief beyond the scope of the two Secretarial Orders at issue. On April 19, 2019 (ECF No. 141),[1] this Court found that the Department of the Interior ("DOI") violated the Administrative Procedure Act ("APA") by not conducting a National Environmental Policy Act ("NEPA") analysis before issuing Secretarial Order 3348 ("Zinke Order") which replaced prior Secretarial Order 3338 ("Jewell Order"). As we and Federal Defendants then explained, the only proper remedy was a remand to DOI to conduct a NEPA review for the Zinke Order in response to the Court's Order. (*See generally* ECF No. 148.) Over the next several months DOI did exactly that, concluding on February 27, 2020 with an Environmental Assessment ("EA") and Finding of No Significant Impact ("FONSI"). (*See* ECF No. 152, linking to EA and FONSI.) This case is thus completed, and should be closed. No other remedy is necessary or legally justified.

Plaintiffs plainly assert in their substitute brief on remedy that nothing but a programmatic environmental impact statement ("PEIS") for the coal leasing program will suffice. Yet all three branches of government have rejected the notion that a PEIS is either required by law or a wise use of resources. More importantly for present purposes, Plaintiffs ask the Court to summarily adjudicate the adequacy

---

[1] All ECF citations herein are to filings in lead case No. 17-30.

of an EA and FONSI that are not before the Court. There are no allegations in Plaintiffs' complaint related to the EA and FONSI. There is no administrative record before the Court related to the EA and FONSI. Plaintiffs also ask the Court to annul future leases and their NEPA reviews that have not even occurred yet. The Court should reject Plaintiffs' invitation to prematurely decide these distinct issues.

Regarding relief, Plaintiffs repeatedly invoke a "status quo" *that never existed* under the Jewell Order. Because DOI has not proposed to amend its applicable regulations, no new or supplemental PEIS is legally required for federal coal leasing. And because DOI has no such legal obligation to complete the Jewell Order's "discretionary" PEIS, there likewise is no basis to perpetuate the Jewell Order's accompanying "pause" on processing of certain leases which was intended *solely* to facilitate that PEIS. Plaintiffs' continued mischaracterization of the two Secretarial Orders cannot justify manufacturing a novel Court injunction mandating a PEIS or an indefinite, standalone "moratorium" on federal coal leasing.[2]

## ARGUMENT

## I.     PLAINTIFFS IN THIS CASE HAVE NOT CHALLENGED THE RECENT EA OR FUTURE LEASING ACTIONS.

The only issue raised by Plaintiffs' complaints and adjudicated by the Court is whether the Zinke Order—which ended the Jewell Order's voluntary

---

[2] This brief regarding remedy does not constitute an acknowledgement of any underlying NEPA violation or a waiver of appeal rights.

programmatic NEPA review and "pause" (sometimes called a "moratorium") on certain federal coal leasing decisions during that review—itself triggered NEPA. The Court held that it did, and that "Federal Defendants' decision not to initiate the NEPA process was arbitrary and capricious" under the APA. (ECF No. 141 at 27, 31.) In its July 31, 2019 Order, the Court reiterated its holding that "the Zinke Order met the requirements for final agency action under the APA sufficient to trigger the NEPA process." (ECF No. 150 at 2-3.)[3] The Court "declined to direct Federal Defendants to prepare a PEIS, or supplement the PEIS." *Id.* at 3.

The Court agreed with Defendants that DOI should prepare a NEPA analysis for the Zinke Order and postponed a remedy ruling pending its completion. (ECF No. 150 at 4.) That NEPA review now has taken place. Though DOI had anticipated making a decision by August 2019 whether to prepare a FONSI, the agency spent substantially more time to carefully prepare its final NEPA document and respond to public comments.

In their latest remedy brief, Plaintiffs abandon any recognizable form of APA judicial review, and seek summary relief on separate issues that postdate the complaints, administrative record, briefing, and the Court's Order in this case. Plaintiffs now argue the EA is inadequate under NEPA, but that is a different issue

---

[3] The Court found that Plaintiffs' alternatively-stated APA arguments likewise all stem from the absence of a NEPA review accompanying the Zinke Order. (ECF No. 141 at 30-31.)

not before the Court in this case. Plaintiffs also speculate about and seek to preempt individual coal leasing actions that have not taken place and undisputedly will undergo their own extensive NEPA reviews.

Plaintiffs' requests for additional relief constitute an "end run around the prevailing party's original burden to establish an injury and entitlement to relief." *California v. U.S. Dep't of Labor*, 155 F. Supp. 3d 1089, 1096 (E.D. Cal. 2016). "The court may grant the moving party only that relief to which it is entitled under the original judgment." *Id.*  Basic tenets of administrative law and judicial review demand that if Plaintiffs wish to challenge the EA or specific leasing actions, they must seek leave to supplement or amend their complaint, or file a new complaint. 5 U.S.C. §§ 704, 706; Fed. R. Civ. P. 8, 15. For example, in a recent case where WildEarth Guardians (also a Plaintiff here) successfully challenged DOI's NEPA analyses for certain federal oil and gas leases, and after DOI revised its NEPA analyses on remand, the court denied further relief requested in the same case. *WildEarth Guardians v. Bernhardt*, No. 16-cv-1724, 2019 WL 3253685, at *2-3 (D.D.C. July 19, 2019). "To the extent that Plaintiffs wish to challenge the adequacy of BLM's new NEPA analysis, they must supplement their complaint to raise these new claims." *Id.* The same is true here.

Incredibly, Plaintiffs assert that the Court "need not address the substantive adequacy of [the EA] under NEPA" to reject the EA. (ECF No. 153 at 9.) That

proposition is baseless. Unlike in Plaintiffs' cited cases, there is no injunction that DOI must dissolve in this case such that subsequent DOI actions would be properly before the Court. *See, e.g.*, *Conservation Cong. v. U.S. Forest Serv.*, No. 13-1977, 2018 WL 1142199, at *2 (E.D. Cal. Mar. 2, 2018). And even the cases Plaintiffs cite examined the merits of the later agency action in determining whether to modify an injunction. Moreover, even a motion to dissolve an injunction "is not an opportunity for a plaintiff to raise issues that were not addressed in the summary judgment order." *Id.* Here, Plaintiffs identify no part of the Court's Order that the EA violates. Rather, they solely argue that the EA is not a PEIS, which the Court expressly did not require.

Even if the Court in this case were to reach the EA's merits (which it should not in the absence of a proper challenge and new administrative record), the EA satisfies DOI's obligations under the Court's Order and NEPA. The EA and FONSI prepared by DOI examine the effects of the Zinke Order's termination of the Jewell Order's voluntary programmatic EIS and its concomitant "pause" on limited types of federal coal leasing decisions. As DOI has explained, including in responses to public comments, its NEPA analysis did not need to invent and consider an independent and indefinite moratorium on federal coal leasing, or speculate as to potential policy ideas following a PEIS that DOI reasonably determined not to complete at this time. *E.g.*, FONSI at 1, 10, EA at 14; EA Appendix A at 3-5. Despite

5

Plaintiffs' desire for a broader programmatic review, DOI reasonably exercised its discretion to define the scope of its NEPA analysis associated with the Zinke Order.

Lastly, if the Court were to not only evaluate the EA but also find it deficient under NEPA, Plaintiffs still would not be entitled to vacatur of the Zinke Order. As this Court has recognized, "[t]he APA does not 'mechanically obligate[]' Courts [] 'to vacate agency decisions that they find invalid.'" *W. Org. of Res. Councils v. U.S. Bureau of Land Mgmt.*, No. 16-21-GF-BMM, 2018 WL 9986684, at *2 (D. Mont. July 31, 2018) (internal citations omitted); *see also Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995); 5 U.S.C. § 702. Courts in this Circuit have "debunked" the theory that vacatur is the "presumptive remedy" for a NEPA violation. *See, e.g, Beverly Hills Unified Sch. Dist. v. Fed. Transit Admin.*, No. 12-9861 (consolidated), 2016 WL 4445770, at *12 (C.D. Cal. Aug. 12, 2016). Specifically in NEPA cases, courts refrain from vacatur where there is "at least a serious possibility that the [agency would] be able to substantiate its decision on remand." *Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015) (internal citation omitted).

Ultimately, any appropriate relief regarding the EA or individual leases would depend on the nature and extent of any additional NEPA violations that Plaintiffs can specifically allege and prove—which underscores the need for Plaintiffs to file

a proper legal challenge to the EA or leases. The Court did "not foreclose Plaintiffs' ability to challenge the adequacy of Federal Defendants' NEPA review after its completion." (ECF No. 150 at 5.) But this is not that case.

## II.   PLAINTIFFS ARE NOT ENTITLED TO A NOVEL "STATUS QUO."

Though Plaintiffs urge "vacatur" of the Zinke Order and "reinstatement" of the Jewell Order, that relief would *not* yield a mandatory PEIS or moratorium. Plaintiffs' entire remedy brief relies on the erroneous premise that, but for the intervening Zinke Order, DOI was legally compelled to complete a new or supplemental PEIS and indefinitely stop most coal leasing. (*E.g.*, ECF No. 153 at 3, 8.) That is demonstrably false simply by looking at the plain terms of the Jewell Order lacking any such obligations. Indeed, rather than "restore the status quo" as they say, Plaintiffs are asking the Court to invent a novel reality, which all three branches of government have declined to implement. *E.g.*, *id.* at 3, 14, 20.

Thus, Plaintiffs are incorrect that "vacatur is sufficient" to effectuate the relief they seek. *Id.* at 3. Rather, Plaintiffs nominally seek vacatur in an effort to evade the further demanding standards for injunctive relief. If the Court decides to impose a PEIS or a "moratorium," it would be injunctive relief—judicially-created and judicially-imposed—not a "reinstated" action of the Executive Branch.

## A. THE COURT SHOULD NOT MANDATE A PEIS.

Despite their previous equivocation on "the requisite NEPA analysis" for the Zinke Order, Plaintiffs plainly seek a PEIS. (*See* ECF No. 1; ECF No. 153 at 1 (alleging a separate "overall programmatic environmental review required under NEPA"; *id.* at 10 ("Most significantly, the Final EA expressly disclaimed any programmatic evaluation of the federal coal-leasing program as a whole.")). Yet Plaintiffs are wrong that "[w]ith vacatur of the unlawful Zinke Order, Federal Defendants could lawfully rescind the Jewell Order only after a full environmental review of the federal coal-leasing program that complies with NEPA and this Court's summary judgment order." (ECF No. 153 at 3.)

The Jewell Order is entitled "Discretionary Programmatic Environmental Impact Statement." Thus, even if Plaintiffs were correct that vacatur of the Zinke Order would revive the Jewell Order (which it would not, as Federal Defendants have explained), at most an *optional* PEIS would be the outcome. As the FONSI and EA explain, Congress has not appropriated funds to DOI for such a PEIS; the D.C. Circuit has found no PEIS requirement absent newly proposed regulations for coal leasing; and DOI has elected to prioritize other activities and not propose new coal leasing regulations at this time. FONSI at 3; EA at 5; *W. Org. of Res. Councils ("WORC") v. Zinke*, 892 F.3d 1234 (D.C. Cir. 2018). Nor did the Jewell Order undergo any NEPA review. (EA at 6 n.4.) Moreover, this Court has already made

clear that it "cannot compel Federal Defendants at this time to prepare a PEIS, or supplemental PEIS, as Plaintiffs request." (ECF No. 141 at 29; *see also* ECF No. 150 at 3.)

To be clear, Plaintiffs seek to require DOI to undertake the same PEIS as the plaintiffs in *WORC*—the only difference being that here Plaintiffs want to convert the Jewell Order's discretionary PEIS into a compulsory PEIS merely because DOI began preparing it. But they cite no authority supporting that proposition or otherwise legally obligating DOI to prepare a PEIS even after a vacatur of the Zinke Order. Plaintiffs are entitled to no NEPA programmatic challenge unless DOI proposes to amend "the Federal Coal Management Program." *See WORC*, 892 F.3d at 1245. Vacating the Zinke Order because it did not complete the Jewell Order's discretionary PEIS divorced from any regulatory proposal would be the functional equivalent of compelling a PEIS in the first instance—thereby directly contravening this Court's summary judgment Order, the Jewell Order, and the D.C. Circuit's holding in *WORC*. *See also Ctr. for Biological Diversity v. Zinke*, 260 F. Supp. 3d 11, 24 (D.D.C. 2017) (rejecting "that an agency can convert a voluntary task into a mandatory one simply by embarking on it"). Lastly, as DOI points out, the Zinke Order does not foreclose DOI from exploring future regulatory changes. FONSI at 8; EA at 19 ("[C]anceling preparation of the PEIS does not preclude the BLM from making future improvements to the Federal coal leasing program."); EA Appendix

A at 6-7. Accordingly, this Court should not issue an injunction creating a PEIS obligation where none has existed.

### B. THE COURT SHOULD NOT IMPOSE A "MORATORIUM."

Simply put, under the Jewell Order there is no "pause" without the discretionary PEIS. Despite Plaintiffs' repeated mischaracterization of the circumstances as a "moratorium on the federal coal-leasing program that was previously in effect under the Jewell Order," the Court cannot "reinstate" something that never existed. ECF No. 153 at 17. In reality, Plaintiffs instead are asking the Court to rewrite the Jewell Order and issue an indefinite, standalone injunction on federal coal leasing. Plaintiffs cite no authority or basis for the Court to take that extraordinary step.[4]

Try as they may, Plaintiffs cannot disassociate the Jewell Order's PEIS and "pause" by labeling the Jewell Order a "moratorium." The Jewell Order, beginning with its title, made clear that the "pause" was the proverbial tail on the discretionary PEIS dog. As this Court has recognized, "the Jewell Order imposed a moratorium on new coal leasing until completion of the PEIS." (ECF No. 141 at 4.) The EA makes the same point. EA at 4 (Jewell Order "contemplated a limited pause in some

---

[4] "[A] more onerous standard [may apply] to a request for vacatur that would have the same operative effect as an injunction." *N. Coast Rivers All. v. U.S. Dep't of the Interior*, No. 16-307, 2016 WL 11372492, at *3 n.1 (E.D. Cal. Sept. 23, 2016); *id.*, 2016 WL 8673038, at *6 n.5 (E.D. Cal. Dec. 16, 2016).

leasing activities for the explicit purpose of facilitating preparation of the PEIS, a discretionary undertaking . . . ."); EA Appendix A at 4 ("Further, the pause called for in the Jewell Order was not open-ended in duration. Non-exempt applications were paused only to allow for development of new information through a programmatic review."). In turn, the Zinke Order did not merely "lift" the pause; it ended the PEIS that was the condition precedent for the "pause."

Because the Jewell Order's PEIS is discretionary, so too is its accompanying "pause." In other words, the pause cannot survive absent the PEIS. DOI previously decided to voluntarily prepare a PEIS. DOI then decided to terminate that discretionary effort. As a necessary consequence, the pause dependent on the PEIS terminated as well. Plaintiffs cite no authority mandating a continuing pause on any federal coal leasing even in the context of an ongoing PEIS; indeed, DOI's NEPA regulations provide the opposite. 43 C.F.R. § 46.160 ("During the preparation of a program or plan NEPA document, the Responsible Official may undertake any major Federal action in accordance with 40 CFR 1506.1 when that action is within the scope of, and analyzed in, an existing NEPA document supporting the current plan or program, so long as there is adequate NEPA documentation to support the individual action.").

Plaintiffs' actual end goal unquestionably is a freestanding, indefinite moratorium, detached from any agency action. Under the guise of NEPA claims,

Plaintiffs are using this litigation as a backdoor vehicle to judicially end federal coal leasing in the absence of such action by the other branches of government. This is improper, and this Court should not endorse such efforts. *Found. on Econ. Trends v. Lyng*, 817 F.2d 882, 886 (D.C. Cir. 1987) (where "[a] policy disagreement, at bottom, is the gravamen of appellants' complaint," courts should decline to "extend NEPA as far as [[Plaintiffs] would take] it"); *Grunewald v. Jarvis*, 776 F.3d 893, 903 (D.C. Cir. 2015) ("NEPA is 'not a suitable vehicle' for airing grievances about the substantive policies adopted by any agency, as 'NEPA was not intended to resolve fundamental policy disputes.'") (citation omitted).

### C. THE *MONSANTO* FACTORS SUPPORT NO INJUNCTION.

If the Court finds it necessary to consider the *Monsanto* factors for an injunction, the result is the same—Plaintiffs cannot carry their burden for injunctive relief. *See Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.,* 636 F.3d 1150, 1160 (9th Cir. 2011) ("[T]hose seeking injunctive relief, not those opposing that relief, are responsible for showing irreparable injury."). "[A]n injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010) (citation omitted). Plaintiffs must show: "(1) that [they have] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between

12

the plaintiff and defendant, a remedy in equity is warranted; (4) that the public interest would not be disserved by a permanent injunction." *Id.* at 156-57.

Plaintiffs experienced no disruptive consequences from the Zinke Order, which disposed of no coal. *See Beverley Hills*, 2016 WL 4445770, at *19-21. The Zinke Order is even further removed from agency action than cases involving planning actions, like *W. Org. of Res. Councils, supra*, where this Court denied vacatur. There is no dispute that each DOI federal coal decision of which Plaintiffs may complain requires separate agency action and undergoes extensive NEPA review, including cumulative impacts, and is subject to public notice and comment.

Disruptive consequences of vacatur, if any, would instead fall on the recipients of the four issued coal leasing decisions identified in the EA that would have been subject to the Jewell Order. Each of those decisions was the product of separate agency actions and NEPA reviews. Plaintiffs may elect to challenge those decisions, but those lessees should not be threatened with potential disruption and uncertainty created by wholesale vacatur of the Zinke Order. That is particularly true given that those lessees are not parties to this case and have not been afforded notice or due process to protect their property rights. DOI's continued work in processing and conducting NEPA reviews for other pending applications likewise neither harms Plaintiffs nor results in any irreversible and irretrievable commitment of resources absent issuance of new leases. Thus, no injunction is appropriate.

13

Moreover, granting Plaintiffs a new moratorium would conflict with the fundamental principle of balanced remedies in fashioning injunctive relief, including in NEPA cases. *See, e.g.*, *Monsanto*, 561 U.S at 157-58 (rejecting "erroneous assumption that an injunction is generally the appropriate remedy for a NEPA violation"); *Park Vill.,* 636 F.3d at 1160 ("[I]njunctive relief must be "tailored to remedy the *specific harm alleged*. An overb[roa]d injunction is an abuse of discretion.") (emphasis in original, internal citations omitted); *McCormack v. Hiedeman*, 694 F.3d 1004, 1019 (9th Cir. 2012) (reversing "overbroad" injunction). Here, the Court already ordered Federal Defendants to initiate NEPA, and they did so. While the Court found "procedural injury" under NEPA for standing purposes, that does not meet the well-established test of irreparable injury justifying an injunction. *Friends of the Earth v. Laidlaw Envt'l Servs. Inc*., 528 U.S. 167, 185 (2000) (holding a separate showing is necessary for injunctive relief). And future final agency actions are fully subject to NEPA and judicial review. The Court need not proceed further under *Monsanto* to deny any further remedy.

14

## CONCLUSION

The appropriate remedy in this case has already been performed. Additional remedies are unnecessary and legally inappropriate. The Court should close this case.

Dated: April 21, 2020

Respectfully submitted,

*/s/ Mark L. Stermitz*
Mark L. Stermitz
CROWLEY FLECK PLLP
305 S. 4th Street E., Suite 100
P.O. Box 7099
Missoula, MT 59807-7099
Telephone: (406) 523-3600
Fax: (406) 523-3636
mstermitz@crowleyfleck.com

Peter J. Schaumberg, *pro hac vice*
James M. Auslander, *pro hac vice*
BEVERIDGE & DIAMOND, P.C.
1350 I St., N.W., Suite 700
Washington, DC 20005
Phone: (202) 789-6043
pschaumberg@bdlaw.com
jauslander@bdlaw.com

*Attorneys for Intervenor-Defendant
National Mining Association*

*/s/ Mark L. Stermitz (by permission)*
Dave C. Dalthorp, MT Bar No. 3720
JACKSON, MURDO & GRANT, P.C.
203 North Ewing Street
Helena, MT 59601
Phone: (406) 513-1120

15

Fax: (406) 447-7033
dalthorp@jmgm.com

*/s/ Mark L. Stermitz* (by permission)
James C. Kaste, WSB No. 6-3244
Deputy Attorney General
Wyoming Attorney General's Office
2320 Capitol Avenue
Cheyenne, WY  82002
(307) 777-6946 (phone)
(307) 777-3542 (fax)
james.kaste@wyo.gov

*/s/ Mark L. Stermitz* (by permission)
Timothy C. Fox
Montana Attorney General
Rob Cameron
Deputy Attorney General
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401

*Counsel for the States of Wyoming and Montana*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitations pursuant to Local Rule 7.1(d)(2)(E) and the Court's Orders (ECF Nos. 141 and 162) because this brief contains 4,233 words including everything from the caption to the certificate of service.

*/s/ Mark L. Stermitz*
Mark L. Stermitz

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of April, 2020, I electronically filed the foregoing Intervenor-Defendants' Joint Substitute Brief on Remedy with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Mark L. Stermitz*
Mark L. Stermitz
