PRERAK SHAH
Deputy Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

JOSEPH H. KIM
Natural Resources Section
P.O. Box 7611 Washington, D.C. 20044
202-305-0207 || 202-305-0506 (fax)
Joseph.Kim@usdoj.gov

*Counsel for Federal Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

_____

| | |
|---|---|
| CITIZENS FOR CLEAN ENERGY *et al.* | ) CV 17-30-BMM |
| | ) (lead consolidated case) |
| and | ) |
| | ) |
| THE NORTHERN CHEYENNE TRIBE, | ) |
| | ) **FEDERAL DEFENDANTS'** |
| Plaintiffs, | ) **RESPONSE TO PLAINTIFFS'** |
| v. | ) **SUBSTITUTE BRIEF ON** |
| | ) **REMEDY** |
| U.S. DEPARTMENT OF THE INTERIOR *et al.* | ) |
| | ) |
| Federal Defendants, | ) |
| and | ) |
| | ) |
| STATE OF WYOMING *et al.*, | ) |
| | ) |
| Intervenor-Defendants. | ) |
| | ) |

_____

| | |
|---|---|
| | ) |
| | ) |
| STATE OF CALIFORNIA *et al.* | ) CV 17-42-BMM |
| v. | ) (consolidated case) |

1

|  | ) |
| UNITED STATES DEPARTMENT OF THE INTERIOR *et al*. | ) ) ) |
| Federal Defendants, | ) ) |
| and | ) ) |
| STATE OF WYOMING *et al.*, | ) |
| Intervenor-Defendants. | ) ) |
| _____ | ) |

Pursuant to this Court's Order dated March 31, 2020 [ECF No. 162], Federal Defendants submit this response brief to Plaintiffs' Substitute Brief on Remedy [ECF No. 153].  Fundamentally, the remedy ordered in this case has now been completed, through Federal Defendants' act of issuing a Final Environmental Assessment ("EA") and Finding of No Significant Impact ("FONSI"), [ECF No. 152].  Accordingly, this case can now be closed and judgment entered under Fed. R. Civ. P. 58.  Any claims concerning the legal adequacy of the EA and FONSI must be brought through a new or supplemental complaint.  The Court should decline Plaintiffs' invitation to assess the adequacy of that EA and FONSI in the context of remedy briefing, and without the benefit of the corresponding administrative record.  And the Court should reject Plaintiffs' argument that an EA of any sort is inadequate because, in Plaintiffs' view, a programmatic environmental impact statement ("PEIS") is required.  Plaintiffs base these claims

on a misreading of the Court's April 19, 2019 summary judgment order, which

imposes no such requirement.

I.    THE FINAL EA AND FONSI REMEDY THE NEPA VIOLATION
      IDENTIFIED IN THE COURT'S APRIL 19, 2019 ORDER

      Plaintiffs in these consolidated cases challenged Federal Defendants' March

2017 Secretary's Order ("SO") 3348, which ended a "pause" on agency processing

of most new coal lease applications under the Mineral Leasing Act.  Former

Secretary Jewell effected this pause in January of 2016 by issuing SO 3338, which

directed the Bureau of Land Management ("BLM"), during the period of pause, to

prepare a "Discretionary Programmatic Environmental Impact Statement" or PEIS.

Admin. Record ("AR") 3, 8.  The pause was not an end in itself – it was put into

place to "allow future leasing decisions to benefit from the recommendations that

result from the PEIS."  AR 10.  After a change in Secretary, and pursuant to a

Presidential Executive Order, former Secretary Zinke exercised his lawful

authority and subsequently decided not to prepare the discretionary PEIS.  AR 2,

15933.[1]  Accordingly, the Secretary issued SO 3348 on March 29, 2017,

---

[1]  Section 6 of the Executive Order provides that "[t]he Secretary of the Interior
shall take all steps necessary and appropriate to amend or withdraw Secretary's
Order 3338 dated January 15, 2016 (Discretionary Programmatic Environmental
Impact Statement (PEIS) to Modernize the Federal Coal Program), and to lift any
and all moratoria on Federal land coal leasing activities related to Order 3338.  The
Secretary shall commence Federal coal leasing activities consistent with all
applicable laws and regulations."  Executive Order 13783 at 16096.

announcing this decision.  An effect of this decision meant that future leasing decisions would no longer need to await recommendations that may have resulted from the PEIS.

The complaints in these consolidated cases alleged a failure to conduct analysis under the National Environmental Policy Act ("NEPA") for the issuance of SO 3348.  While Federal Defendants argued that SO 3348 constituted neither final agency action, for purposes of the Administrative Procedure Act ("APA"), nor a type of action that required analysis under NEPA, this Court held that SO 3348 "constitutes a major federal action sufficient to trigger NEPA" and also "meets the requirements for final agency action" for purposes of the APA.  ECF No. 141 ("SJ Order") at 24, 25.  The SJ Order then held that "Federal Defendants' decision not to initiate the NEPA process proves arbitrary and capricious."  Id. at 27; see also id. at 22 (noting that "Federal Defendants failed to initiate a single step of the NEPA process in relation to [SO 3348]"); id. at 29 (noting that "Federal Defendants have failed to take even the initial step of determining the extent of environmental analysis that [SO 3348] requires").

To remedy the violation found, the SJ Order directed Federal Defendants to analyze, in accord with NEPA, the impacts of SO 3348, while leaving SO 3348 intact.  See SJ Order at 31 (stating that the Court "has ordered Federal Defendants to initiate the NEPA process"); id. at 29 (allowing that the analysis could take the

4

form of an EIS or an EA, accompanied by a "convincing statement of reasons" why an EIS is not required); id. at 29-30 (stating the Court "defers to Federal Defendants in the first instance to conduct its required NEPA analysis"). Significantly, while Plaintiffs' complaints focused on the necessity of a new or supplemental PEIS (the former having been contemplated under SO 3338), see Complaint [ECF No. 1; case no. 4:17-cv-30] at First and Second Claims; Complaint [ECF No. 1; case no. 4:17-cv-42] at Second Claim, this Court appropriately recognized in its SJ Order that it "cannot compel Federal Defendants at this time to prepare a PEIS, or supplemental PEIS, as Plaintiffs request."  SJ Order at 29; see also id. at 31.  This remains true today.

Consistent with the SJ Order, Federal Defendants prepared a NEPA analysis (and an associated FONSI) focused on the impacts of SO 3348.  See ECF No. 152. Like any administrative action, the EA and FONSI are entitled to a presumption of regularity.[2]  See, e.g., San Luis & Delta-Mendota Water Authority v. Locke, 776 F.3d 971, 994 (9th Cir. 2014).  In this manner, Federal Defendants have now fully remediated the NEPA violation identified in the Court's SJ Order.

---

[2] As discussed below, at a minimum, this presumption cannot be defeated absent a new administrative record.

II.     WITH THE NEPA VIOLATION NOW FULLY REMEDIATED, THIS
        CASE MAY BE CLOSED AND JUDGMENT ENTERED UNDER FED.
        R. CIV. P. 58

As noted above, there appears to be nothing left to do in these consolidated

cases.  By completing the ordered NEPA analysis, this case is now complete, and

the issue of remedy (for a violation of failing to initiate a NEPA analysis) is now

moot.

Plaintiffs' Substitute Brief on Remedy, however, continues to argue that

"programmatic environmental review [is] required under NEPA[.]"  See, e.g.,

Plaintiffs' Substitute Brief on Remedy at 1.  This appears to be related to Plaintiffs'

argument that "a full environmental review of the federal coal-leasing program" is

needed.  E.g., id. at 3.  And this appears to be what Plaintiffs mean when they

argue "that the EA facially fails to respond to the legal deficiencies previously

identified by the Court."  Id. at 9; see also id. at 8, 9, 10 (using the phrase "on their

face" or "on its face").  But these arguments are incorrect.  Nowhere did the SJ

Order conclude that NEPA compliance in the issuance of SO 3348 demanded

preparation of a PEIS.  Rather, the order merely required that some form of NEPA

analysis be undertaken for the purpose of examining the impacts of SO 3348.

Noting that "Federal Defendants may comply with their NEPA obligations in a

manner of ways," this Court then deferred to Federal Defendants on the form of

6

this analysis.  SJ Order at 29.[3]  If the Court had intended to require a PEIS, as

Plaintiffs argue, then it presumably would never have suggested that an EA and a

well-reasoned FONSI *may* suffice.  Id.  Indeed, this Court has already rejected

Plaintiffs' claims seeking a new PEIS or a supplement to a prior PEIS.  Id. at 29,

31 (stating that the court cannot compel a PEIS at this time).  See also Western

Organization of Resource Councils v. Jewell, 124 F. Supp. 3d 7, 13 (D.D.C. 2015)

(dismissing claims for a supplemental PEIS for the federal coal management

program), aff'd sub. nom. Western Organization of Resource Councils v. Zinke,

892 F.3d 1234 (D.C. Cir. 2018).

Plaintiffs also complain that the EA is "facially" defective because it

narrowly examines the impacts of only four coal lease sales, rather than examining

the impacts of issuing SO 3448.[4]  Here again, they characterize the alleged defect

as "facial" in an attempt to persuade this Court to review the merits of the EA in

---

[3] The review could be in the form of an EIS or EA, see SJ Order at 29, or even a
Categorial Exclusion under 43 C.F.R. § 46.210(i).

[4] While the EA (and associated FONSI) ordered by this Court are not part of the
administrative record in this case, they are publicly available documents.  See
https://eplanning.blm.gov/epl-front-
office/eplanning/planAndProjectSite.do?methodName=dispatchToPatternPage&cu
rrentPageId=185221.  Consistent with the APA, the Court may take judicial notice
of the fact that these documents were issued and relate to SO 3348 for the narrow
purpose of verifying that they are "in relation to [SO 3348]."  SJ Order at 22.
However, as noted above, substantive challenges to the adequacy of the EA would
require a new or supplemental complaint and a new administrative record.

the context of remedy, rather than requiring Plaintiffs to supplement their complaint and otherwise comply with the APA's judicial review provisions. But this second variant of Plaintiffs' "facial defect" argument also fails, because whether Defendants adequately analyzed the impacts of SO 3348 in the new EA, or whether that analysis was too narrow in scope, can only be determined upon full judicial review of that EA against its administrative record.[5]

The remainder of Plaintiffs' Substitute Brief on Remedy argues that vacatur is required and that an injunction is also warranted. See Plaintiffs' Substitute Brief on Remedy at 14-25. But this discussion, and the associated cases Plaintiffs cite, are inapplicable where, as here, there is no longer any violation. What this Court held was "arbitrary and capricious" was "Federal Defendants' decision not to initiate the NEPA process[.]" SJ Order at 27. As discussed above, this situation no longer exists, making any further discussion of remedy within this case unnecessary and superfluous.

---

[5] Plaintiffs speciously contend that the EA in question narrowly focused on four discrete lease sales, rather than assessing the impact of lifting the coal leasing pause imposed by SO 3348's predecessor. As BLM explains in its EA, however, and as will be reflected in the administrative record for any new civil action challenging the EA, the four coal leases examined at depth in the EA represent the delta between the *status quo ante*—where the coal pause would remain in place for the full duration contemplated in SO 3338, i.e., the amount of time BLM projected it would take to prepare a PEIS—and the new *status quo*, i.e., an immediate resumption of coal leasing under SO 3348. Contrary to Plaintiffs contentions, it was not "facially" unreasonable for BLM to scope its NEPA analysis in this manner.

Significantly, this case does not and cannot involve a challenge to the adequacy of the EA.  The EA (and associated FONSI) were completed well after the administrative record for this case was compiled, and are therefore obviously not part of that record or before this Court in this APA case.  Nor does this case involve any challenge to a lease sale recently held in Colorado on April 10, 2020.  *Cf., e.g.*, Plaintiffs' Substitute Brief on Remedy at 2, 15.  That lease sale was subject to its own NEPA analysis, and has its own administrative record that is also not part of the record before this Court in this case.  This is not to say that Plaintiffs do not have the "ability to challenge the adequacy of Federal Defendants' NEPA review after its completion."  Order dated July 31, 2019 [ECF No. 150].  But it does mean that any such challenge should be asserted in a new or supplemental complaint, to be decided upon an appropriate administrative record.  And any challenge to the Colorado lease sale may also raise questions of standing and venue that would first need to be addressed.

III.   ALTHOUGH NO FURTHER REMEDY IS NECESSARY IN THIS CASE, SHOULD THE COURT ORDER REMAND, IT SHOULD BE WITHOUT VACATUR OR INJUNCTION

In the alternative, if the Court determines that it may assess the adequacy of the EA and FONSI without first requiring a new or supplemental complaint or observing the APA's judicial review procedures, Federal Defendants respectfully

submit that any remedy order this Court may issue should neither vacate nor enjoin SO 3348, consistent with the Court's previous remand [ECF Nos. 141, 150].

The APA provides that "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).  But "courts are not mechanically obligated to vacate agency decisions that they find invalid."  Pac. Rivers Council v. U.S. Forest Serv., 942 F. Supp. 2d 1014, 1017 (E.D. Cal. 2013) (gathering cases); see also 5 U.S.C. § 702 ("[n]othing herein . . . affects . . . the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground").  Rather, "when equity demands," the challenged agency action may be "'left in place while the agency follows the necessary procedures' to correct its action."  Cal. Cmtys. Against Toxics v. EPA, 688 F.3d 989, 992 (9th Cir. 2012) (quoting Idaho Farm Bureau Fed'n v. Babbitt, 58 F.3d 1392, 1405 (9th Cir. 1995)).

In this case, given the limited nature of SO 3348, it would be equitable to allow the Secretary's Order announcing the discretionary decision to no longer pursue a PEIS to remain in place while any remaining procedural errors found by the Court are corrected.  Vacatur is also unwarranted because it could significantly disrupt federal coal leasing and operators' expectations and investments, by sowing confusion about the state of future coal leasing.

There is also no basis for an injunction here.  As noted in Federal

Defendants Remedy Brief, neither SO 3338 nor SO 3348 is judicially enforceable,

because neither was issued pursuant to notice and comment rulemaking.  See ECF

No. 149 at 8; see also AR 2, 12 (SO 3338 at Sec. 8; SO 3348 at Sec. 6).   Thus, an

injunction compelling compliance with either secretarial order would be

inappropriate.  See Vermont Yankee Nuclear Power Corp. v. Natural Resources

Defense Council, 435 U.S. 519, 543-44 (1978) (holding that courts cannot impose

procedural steps on agencies beyond those required by law); see also River

Runners for Wilderness v. Martin, 593 F.3d 1064, 1071 (9th Cir. 2010) (explaining

that only agency pronouncements issued in compliance with the procedural

requirements for legislative rulemaking may be enforced).

Even putting aside the principles set out in Vermont Yankee and River

Runners, moreover, an injunction to effectively enforce the coal leasing "pause" in

SO 3338 would make little sense here.  As noted above, SO 3338 merely paused

lease sales to "allow future leasing decisions to benefit from the recommendations

that result from the PEIS" that SO 3338 had directed BLM to undertake.  AR at 10.

Now that the Department of the Interior has opted not to prepare a PEIS for its coal

leasing program, there is nothing to wait for.  And, of course, this Court has

already recognized that it may not enjoin BLM "to prepare a PEIS, or

supplemental PEIS, as Plaintiffs request."  SJ Order at 29; see also id. at 31; accord

11

Western Organization of Resource Councils, 124 F. Supp. 3d at 10 (also holding

that BLM is not required to prepare a PEIS for its coal leasing program).

Federal Defendants also note that although the Colorado lease sale has been

conducted, no lease has yet been issued, nor would any lease be effective before

May 1, 2020, at the earliest.  Even then, impacts from that project that Plaintiffs

appear concerned with would not occur until (i) permits under the Surface Mining

Control and Reclamation Act ("SMCRA") are issued by the SMCRA permitting

authority (in this case, the Colorado Department of Reclamation Mining and Safety

and the Office of Surface Mining Reclamation and Authority); and (ii) the

Secretary or Assistant Secretary of the Interior approves a mining plan or a mining

plan modification, following a review and recommendation by Interior's Office of

Surface Mining Reclamation and Enforcement.[6]  These steps can take months to

even a year or more.  Given the time remaining before surface-disturbing activity

could occur, and the likelihood that any further legal error found will be corrected

within that time frame, Plaintiffs cannot show that they have suffered irreparable

injury, the first element in the Supreme Court's standard for permanent injunctive

---

[6] Moreover, as noted above, the impacts from this lease sale have already been
analyzed by a separate NEPA analysis.

relief, as set forth in <u>Monsanto Company v. Geertson Seed Farms (Monsanto)</u>, 561 U.S. 139 (2010).[7]

Injunctive relief precluding all future lease sales would also be inappropriate because it would circumvent the APA's procedural requirements for challenging agency action.  Under the APA, "judicial review is available only for final agency actions and not for anticipated future agency actions."  <u>See</u> <u>Dine Citizens Against Ruining Our Env't v. Jewell</u>, No. CIV 15-0209 JB/SCY, 2015 WL 4997207, at *34 (D.N.M. Aug. 14, 2015) (citing 5 U.S.C. § 704), <u>aff'd</u>, 839 F.3d 1276 (10th Cir. 2016).  Thus, insofar as Plaintiffs may wish to challenge hypothetical future leases, they need to wait for any such actions and then file new civil actions.

ACCORDINGLY, this case can now be closed and judgment entered under Fed. R. Civ. P. 58.  Any further claims should be brought through a new or supplemental complaint, by appropriate parties in an appropriate venue. Alternatively, even if the Court determines that it may review the adequacy of the new EA and FONSI without first requiring a new or supplemental complaint or observing the APA's judicial review procedures, and even assuming it then deems

---

[7] Under <u>Monsanto</u>, to obtain permanent injunctive relief, a plaintiff must show: "(1) that [he] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  <u>Monsanto</u> at 156 (citation omitted).

that EA/FONSI inadequate, the appropriate remedy would be to remand the EA

and FONSI for further consideration, without vacatur or injunction.

Respectfully submitted this 21st day of April, 2020.

PRERAK SHAH
Deputy Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division

*/s/ Joseph H. Kim*
JOSEPH H. KIM, Trial Attorney
P.O. Box 7611, Washington, D.C. 20044
202-305-0207 || 202-305-0506 (fax)
Joseph.Kim@usdoj.gov

*Counsel for Federal Defendants*

## **CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the type-volume limitations pursuant to Local Rule 7.1(d)(2) and the Court's Orders [ECF No. 141 and 162] because this brief contains 3,275 words total (even including words that may be excluded under Local Rule 7.1(d)(2)(E)).

*/s/ Joseph H. Kim*
JOSEPH H. KIM
*Counsel for Federal Defendants*

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing is being filed with the Clerk of the Court using the CM/ECF system, thereby serving it on all parties of record on April 21, 2020.

*/s/ Joseph H. Kim*
JOSEPH H. KIM
*Counsel for Federal Defendants*

15