JENNY K. HARBINE
Earthjustice
313 East Main Street
Bozeman, MT 59715
jharbine@earthjustice.org
(406) 586-9699 | Phone

*Counsel for Plaintiffs in*
*Case No. 4:17-cv-30-BMM*

GEORGE TORGUN (*pro hac vice*)
ELIZABETH B. RUMSEY (*pro hac vice*)
Deputy Attorneys General
1515 Clay Street, 20th Floor
Oakland, CA 94612-0550
Telephone: (510) 879-1002
George.Torgun@doj.ca.gov

*Counsel for State of California in*
*Case No. 4:17-cv-42-BMM*

**[Additional Counsel in Signature Block]**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| CITIZENS FOR CLEAN ENERGY, <u>et al.</u>,<br><br>           Plaintiffs,<br><br>and<br><br>THE NORTHERN CHEYENNE TRIBE,<br><br>           Plaintiff,<br><br>      v.<br><br>U.S. DEPARTMENT OF THE INTERIOR, <u>et al.</u>,<br><br>           Defendants, | Case No. 4:17-cv-30-BMM<br><br><br>**PLAINTIFFS' REPLY BRIEF ON REMEDY** |

and

STATE OF WYOMING, et al.,

        Defendant-Intervenors.

STATE OF CALIFORNIA, et al.,

        Plaintiffs,

    v.

U.S. DEPARTMENT OF THE INTERIOR, et al.,

        Defendants,

and

STATE OF WYOMING, et al.,

        Defendant-Intervenors.

Case No. 4:17-cv-42-BMM
(consolidated case)

# TABLE OF CONTENTS

Table of Authorities .................................................................................. ii

Introduction ...............................................................................................1

Argument....................................................................................................2

I.      On Their Face, BLM's Final EA and FONSI Do Not Remedy the
        NEPA Violation Identified in the Court's April 19, 2019 Order ...................2

        A.      This Court Has Authority to Determine Whether the Final EA
                Cures the NEPA Violation Identified by this Court ...........................2

        B.      This Court Has Not Relieved Federal Defendants of Their
                Obligation to Review the Full Impacts of the Zinke Order .................6

        C.      Defendants' Attempts to Relitigate the Merits Should Be
                Rejected .................................................................................8

II.     This Court Should Vacate the Zinke Order...................................................11

III.    Enjoining the Zinke Order is Unnecessary, But Would be Warranted
        for Federal Defendants' Violation of NEPA .................................................16

Conclusion ................................................................................................17

# TABLE OF AUTHORITIES

## CASES

Alliance for the Wild Rockies v. U.S. Forest Serv.
  907 F.3d 1105 (9th Cir. 2018) ............................................................12

Alsea Valley All. v. Dep't of Commerce
  358 F.3d 1181 (9th Cir. 2004) ............................................................15

Blue Mountains Biodiversity Project v. Blackwood
  161 F.3d 1208 (9th Cir. 1998) ..............................................................6

Brady Campaign to Prevent Gun Violence v. Salazar
  612 F. Supp. 2d 1 (D.D.C. 2009)........................................................16

California v. BLM
  277 F. Supp. 3d 1106 (N.D. Cal. 2017)..............................................14

California v. U.S. Dep't of the Interior
  381 F. Supp. 3d 1153 (N.D. Cal. 2019)..............................................13

Center for Food Safety v. Vilsack
  734 F. Supp. 2d 948 (N.D. Cal. 2010)................................................14

Conservation Cong. v. United States Forest Serv.
  No. 2:13-CV-01977-JAM-DB, 2018 WL 1142199 (E.D. Cal. Mar.
  2, 2018) ................................................................................................5

Forest Serv. Employees for Envtl. Ethics v. U.S. Forest Serv.
  397 F. Supp. 2d 1241 (D. Mont. 2005)................................................6

Innovation Law Lab v. Wolf
  951 F.3d 1073 (9th Cir. 2020) ............................................................12

Monsanto Co. v. Geertson Seed Farms
  561 U.S. 139 (2010)......................................................................16, 17

Native Ecosystems Council v. Krueger
  348 F. Supp. 3d 1065 (D. Mont. 2018)................................................8

Organized Vill. of Kake v. U.S. Dep't of Agric.
  795 F.3d 956 (9th Cir. 2015) (en banc) ..............................................15

Paulsen v. Daniels
  413 F.3d 999 (9th Cir. 2005) ...............................................................15

Pub. Serv. Co. of Colo. v. Batt
  67 F.3d 234 (9th Cir. 1995) ..................................................................3

Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs
  255 F. Supp. 3d 101 (D.D.C. 2017).....................................................12

Swan View Coalition v. Barbouletos
  639 F. Supp. 2d 1187 (D. Mont. 2009)..............................................3, 4

Turtle Island Restoration Network v. U.S. Dep't of Commerce
  672 F.3d 1160 (9th Cir. 2012) .............................................................15

Western Organization of Resource Councils v. Zinke
  892 F.3d 1234 (D.C. Cir. 2018).............................................................9

WildEarth Guardians v. Bernhardt
  No. CV 16-1724 (RC), 2019 WL 3253685 (D.D.C. July 19, 2019) ...................5

WildEarth Guardians v. U.S. Bureau of Land Mgmt.
  No. 4:18-cv-73-BMM, 2020 WL 2104760 (D. Mont. May 1, 2020).................12

**STATUTES**

5 U.S.C. § 706(2)(A)................................................................................11

**FEDERAL REGULATIONS**

43 C.F.R. § 3425.1-4...............................................................................13

## INTRODUCTION

Federal Defendants have failed to remedy the serious violation of the National Environmental Policy Act ("NEPA") that this Court found them liable for more than a year ago.  The Court ruled that Federal Defendants' issuance of Secretarial Order 3348 (the "Zinke Order") triggered the obligation to examine the environmental impacts of restarting the federal coal leasing program and opening up tens of thousands of acres of public lands to new development.  But the Final Environmental Assessment ("EA") and Finding of No Significant Impact ("FONSI") that the U.S. Bureau of Land Management ("BLM") issued do not rectify that violation, since even on the most generous interpretation they review only a fraction of the leasing program—four leases—and their impacts.

Contrary to the arguments of Federal Defendants and Defendant-Intervenors (collectively, "Defendants"), Plaintiffs are not seeking judicial review of the Final EA and FONSI, let alone review on independent new grounds.  Instead, Plaintiffs are simply asking the Court to find that the Final EA and FONSI do not correct the violation identified in the Court's summary judgment ruling.  The violation thus continuing, the Court should order the standard remedy for unlawful agency action under the Administrative Procedure Act ("APA") and vacate the Zinke Order.

**ARGUMENT**

## I.   ON THEIR FACE, BLM'S FINAL EA AND FONSI DO NOT REMEDY THE NEPA VIOLATION IDENTIFIED IN THE COURT'S APRIL 19, 2019 ORDER

As this Court found, Federal Defendants violated NEPA by ending

protections that had been in place under Secretarial Order 3338 (the "Jewell

Order") and opening up all BLM land to new coal leasing that had been prohibited

under the Jewell Order.  Order 22-27 [Doc. 141].  The issue before the Court now

is the appropriate remedy for that NEPA violation.  The Court may resolve that

issue without deciding whether Federal Defendants committed a <u>new</u> NEPA

violation in the Final EA.  Instead, this Court need only determine whether Federal

Defendants have examined under NEPA the environmental consequences of the

major federal action identified by this Court.  They have not.

### A.   This Court Has Authority to Determine Whether the Final EA Cures the NEPA Violation Identified by this Court

Defendants erroneously claim that there is "nothing left to do in these

consolidated cases" because Federal Defendants have completed an EA on four

coal leases.  Federal Defendants' Response to Plaintiffs' Substitute Brief on

Remedy [Doc. 164] ("DOI Br.") 6; <u>see also</u> <u>id.</u> (stating "[t]he issue of remedy … is

moot"); <u>id.</u> at 8 (stating that Federal Defendants' NEPA violation "no longer

exists, making any further discussion of remedy within this case unnecessary and

superfluous").  Under Defendants' view, the mere completion of "<u>some</u> form of

NEPA analysis … for the purpose of examining the impacts of SO 3348" is all that

is required.  Id. at 6 (emphasis added); see also Intervenor-Defendants State of

Wyoming, State of Montana, and National Mining Association's Joint Substitute

Brief on Remedy [Doc. 163] ("NMA Br.") 1 (arguing that, with the preparation of

the EA, "[t]his case is thus completed, and should be closed").

Defendants' position should be rejected first because it is premised on the

meritless assumption—already rejected by the Ninth Circuit Court of Appeals—

that "the publication of any [NEPA review], however flawed" is necessarily

sufficient to remedy the specific NEPA violation identified by this Court.  Pub.

Serv. Co. of Colo. v. Batt, 67 F.3d 234, 237 (9th Cir. 1995) ("The government's

[position] would permit the government to end the injunction by the publication of

any EIS, however flawed, and the issuance of a record of decision based upon it.

We reject a reading that would leave the injunction that toothless.").  Indeed, even

after district courts in this Circuit issue a remand order, they look to whether the

defendant agency's action on remand cures the identified legal violation.

Plaintiffs' Substitute Brief on Remedy [Doc. 153] ("Pls. Br.") 9-10 (gathering

cases).

Federal Defendants' assertion that their NEPA analysis on remand is entitled

to a presumption of regularity and therefore rectifies the violation found by the

Court, DOI Br. 5, has been rejected by this District in analogous circumstances.  In

Swan View Coalition v. Barbouletos—which Plaintiffs cited in their substitute

remedy brief but Defendants failed to address—the government argued that its action on remand in an Endangered Species Act ("ESA") case was entitled to a presumption that it "complies with ESA even though the Court has not been afforded an opportunity to decide whether it does."  639 F. Supp. 2d 1187, 1188 (D. Mont. 2009).  Rejecting that argument, district court Judge Donald Molloy explained that the "presumption of regularity" affects only "the burden of proof in an action already before a court," id., and does not support an agency's "unilateral declaration that [it] complied with the Court's Order" on remand, id. at 1190. Similarly, here, Federal Defendants are not entitled to any presumption that their Final EA remedies the legal violation identified by this Court.  To the contrary, this Court's summary judgment order provided that "if Federal Defendants determine that an EIS would not be necessary, [they] must supply a 'convincing statement of reasons' to explain why the Zinke Order's impacts would be insignificant."  Order 29 [Doc. 141].  Meeting this standard here requires, at the very least, actually examining the full impacts of the Zinke Order, which Federal Defendants have failed to do.

Defendants are also wrong that this Court may not issue a remedy for the NEPA violation it already adjudicated, and Plaintiffs must instead launch a new challenge to the Final EA to obtain relief.  In the numerous cases previously cited by Plaintiffs, district courts reviewed government agency's actions following

remand to determine whether those actions cured the agency's legal violation.  Pls.

Br. 9-10.  And there is no jurisdictional barrier to such review here because this

Court has neither issued a remand nor closed this case.  Instead, this Court ordered

additional briefing on the issue of remedy, Order 32-33 [Doc. 141], and

"postpone[d] a remedies ruling until after Federal Defendants' completion of their

NEPA review," Order re Remedy 5 [Doc. 150].

WildEarth Guardians v. Bernhardt, No. CV 16-1724 (RC), 2019 WL

3253685 (D.D.C. July 19, 2019) is not to the contrary.  See NMA Br. 4.  In

considering a motion to enforce the court's prior injunction order, the court in that

case affirmed that the "key question … is whether Plaintiffs have 'received all

relief required' by the Court's earlier order."  WildEarth Guardians, 2019 WL

3253685, at *3.  Thus, while the plaintiffs could not raise new claims challenging

the legal adequacy of the agency's action on remand, the court did not foreclose

the plaintiffs from obtaining relief for the claims already adjudicated—nor could it.

Id.; see also Conservation Cong. v. United States Forest Serv., No. 2:13-CV-

01977-JAM-DB, 2018 WL 1142199, at *2 (E.D. Cal. Mar. 2, 2018) (stating that

post-remand, "the Court's review of the agency's action is limited to the scope of

the prior litigation and the injunction order at issue").

In sum, contrary to Defendants' claims, the issue of a remedy for Federal Defendants' NEPA violation—including whether the Final EA cures that violation—is squarely before this Court.

## B.     This Court Has Not Relieved Federal Defendants of Their Obligation to Review the Full Impacts of the Zinke Order

Defendants' position on remedy also should be rejected because it unreasonably distorts this Court's statement in its summary judgment decision that it would not order Federal Defendants to prepare a programmatic environmental impact statement ("PEIS") to mean that the agency need not consider the full impacts of restarting the federal coal leasing program.  DOI Br. 5, 6-7; NMA Br. 3. Specifically, the Court stated that "Federal Defendants may determine that the preparation of an EA would satisfy their NEPA obligations" or, "[i]n the alternative, … that the potential environmental impacts from the Zinke Order warrant the preparation of an EIS."  Order 29 [Doc. 141].  The case upon which the Court relied for this principle likewise held that, while the district court may order an agency to comply with NEPA, it "cannot compel it to conduct an EIS as opposed to an EA."  Forest Serv. Employees for Envtl. Ethics v. U.S. Forest Serv., 397 F. Supp. 2d 1241, 1254 (D. Mont. 2005).  In other words, this Court declined to order a particular level of review (an EA or EIS), which under NEPA is driven by whether the record supports a finding that the environmental consequences of an action may be significant.  Order 29 [Doc. 141] (citing Blue Mountains

Biodiversity Project v. Blackwood, 161 F.3d 1208, 1212 (9th Cir. 1998)).  But the Court did not, as Defendants suggest, state that Federal Defendants may redefine the major federal action under review, which necessarily implicates the federal coal leasing program, generally, not just four leases.

To be clear, Plaintiffs in their remedy brief do not argue that Federal Defendants' NEPA review is inadequate because it takes the form of an EA, rather than an EIS.  Plaintiffs argue only that the scope of that review, which is limited to four previously issued coal leases, is insufficient to cure Federal Defendants' ongoing NEPA violation regarding its decision to restart the federal coal leasing program without an evaluation of the impacts of that entire program.

Federal Defendants' related suggestion that a broad and even programmatic NEPA review is not required because this Court's summary judgment order did not "demand[] preparation of a PEIS," is also flawed.  DOI Br. 6.  First, this Court in its summary judgment order did not "demand[]" a remedy at all (including remand), and instead deferred that issue to be separately resolved.  Order 32-33 [Doc. 141].  Thus, it is unsurprising that the Court did not expressly direct Federal Defendants to perform a programmatic review.  Second, in a case discussed by Plaintiffs but once again overlooked by Defendants, this District rejected a similar claim that the absence of specific direction from the court to perform programmatic review on remand absolved an agency of its legal obligation to do

so. Pls. Br. 14. In <u>Native Ecosystems Council v. Krueger</u>, the Forest Service argued that its site-specific consultation on the effect of a forest plan on Canada lynx complied with the court's remand order where "th[e] Court never ordered a programmatic consult" to remedy the Forest Service's ESA violation. 348 F. Supp. 3d 1065, 1068 (D. Mont. 2018). Rejecting this argument, Chief Judge Dana Christensen noted that "[f]rom the beginning, Plaintiffs have raised a programmatic challenge," and the court granted summary judgment for Plaintiffs on their claim. <u>Id.</u> at 1070. The Forest Service's site-specific consultation on remand thus did not satisfy the agency's obligations either under the Court's order or the ESA. <u>Id.</u> Here, too, Federal Defendants' NEPA analysis did not address the specific legal violation identified by this Court, i.e., Federal Defendants' failure to evaluate the environmental consequences of "re-open[ing] public land to coal leasing," Order 22 [Doc. 141], an action that is far broader in scope than four leases. Accordingly, the Final EA does not satisfy Federal Defendants' obligations under this Court's summary judgment ruling.

**C.  Defendants' Attempts to Relitigate the Merits Should Be Rejected**

In addition to their misguided attempts to shield Federal Defendants' Final EA from any judicial scrutiny in the remedy phase of this case, Defendants strain to justify the limited scope of that EA by rehashing their arguments that the Zinke Order did not trigger NEPA in the first instance. This Court already rejected

8

Defendants' arguments in its summary judgment ruling, and they are equally

meritless now.  For example, Defendant-Intervenors claim that "Plaintiffs are

entitled to no NEPA programmatic challenge" absent a regulatory proposal to

amend the federal coal-leasing program.  NMA Br. 9.  But this Court held that,

even absent any proposal for regulatory reforms, the decision to end the protections

of the Jewell Order and open up tens of thousands of acres of public land to coal

leasing <u>itself</u> is a major federal action triggering NEPA's environmental review.

Order 23-24, 27 [Doc. 141].

This Court also rejected Defendants' reliance on <u>Western Organization of</u>

<u>Resource Councils v. Zinke</u> ("<u>WORC</u>"), 892 F.3d 1234 (D.C. Cir. 2018)—

repeated in their remedy briefs, DOI Br. 7, 12; NMA Br. 8-9—finding that "[t]he

Jewell Order, and subsequent lifting of the moratorium through the Zinke Order,

distinguish the D.C. Circuit's analysis in <u>WORC</u>," Order 18 [Doc. 141].  And this

Court rejected Federal Defendants' prior justification, reprised for remedy

purposes, for "circumvent[ing] any environmental analysis by characterizing the

Zinke Order as a mere a policy shift and return to the status quo."  <u>Id.</u> at 23-24; <u>see</u>

DOI Br. 3-4 (explaining that decision of the new Interior Secretary to end the

moratorium had the effect "that future leasing decisions would no longer need to

await recommendations that may have resulted from the PEIS").  Defendants'

repetition of these arguments no more justifies Federal Defendants' truncated

environmental review of the Zinke Order than their initial failure to conduct that review at all.

In a further attempt to downplay the effects of the Zinke Order, Defendant-Intervenors accuse Plaintiffs of inventing the status quo that pre-dated the Zinke Order "by labeling the Jewell Order a 'moratorium.'"  NMA Br. 10; see also id. 7 (claiming that Jewell Order did not "indefinitely stop most coal leasing").  But that is how the Federal Defendants' themselves characterized the situation:  BLM stated that, "[w]hen the moratorium on leasing began in January 2016, there were 44 lease and lease modification applications pending with the BLM.  … Pursuant to S.O. 3338, Section 5(a)(ii), … no leasing decisions can be made until the moratorium is lifted."  AR 25 (emphasis added).  Subject to narrow exceptions, BLM's moratorium prohibited it from approving "new applications for thermal (steam) coal leases or lease modifications."  AR 11; see also AR 100 (stating that the moratorium "effectively stopped a number of leasing actions and has prevented new leasing applications from being accepted (with very limited exceptions)").  In other words, in the absence of affirmative action by the Federal Defendants to rescind the moratorium, which they eventually took when they issued the Zinke Order, federal coal leasing would be prohibited.  Because the decision to end the moratorium was a "major federal action sufficient to trigger NEPA," Federal Defendants could not take that action without first evaluating its environmental

10

consequences.  Order 24 [Doc. 141].  Federal Defendants cannot satisfy their

obligations under the Court's summary judgment ruling by evaluating less than the

full scope of consequences from that action.[1]

Because the Final EA expressly declined to address the environmental

consequences of the major federal action identified by this Court—i.e., Federal

Defendants' decision to open tens of thousands of acres of public land to coal-

leasing that were previously off-limits—it has not remedied the violation that the

Court identified.  Pls. Br. 10-11 (citing Final EA, at 13-14; id. Appendix A

(Response to Comments) at 4-5).

## II.    THIS COURT SHOULD VACATE THE ZINKE ORDER

Federal Defendants and Defendant-Intervenors have failed to make any

persuasive arguments regarding why this Court should not apply the normal

remedy of vacatur given Federal Defendants' violation of NEPA and the APA in

issuing the Zinke Order.  See 5 U.S.C. § 706(2)(A) ("The reviewing court shall ...

set aside agency action, findings, and conclusions found to be ... arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law").

---

[1] Contrary to Defendant-Intervenors' assertion, Plaintiffs do not argue that vacatur
of the Zinke Order would require Federal Defendants to restart the same PEIS
process they began under the Jewell Order.  See NMA Br. 9.  Indeed, after the
Zinke Order is vacated, Federal Defendants need not undertake any environmental
review of the coal program at all, unless and until they decide again to re-open
public lands to coal leasing.

First, while Defendant-Intervenors cite an unpublished district court opinion from 2016 allegedly "'debunk[ing]' the theory that vacatur is the 'presumptive remedy' for a NEPA violation," NMA Br. 6, the Ninth Circuit and other courts have continued to apply this statutory remedy.  See Innovation Law Lab v. Wolf, 951 F.3d 1073, 1094 (9th Cir. 2020) ("When a court determines that an agency's action failed to follow Congress's clear mandate the appropriate remedy is to vacate that action") (internal quotations and citation omitted); Alliance for the Wild Rockies v. U.S. Forest Serv., 907 F.3d 1105, 1121-22 (9th Cir. 2018) ("vacatur of an unlawful agency action normally accompanies a remand"); WildEarth Guardians v. U.S. Bureau of Land Mgmt., No. 4:18-cv-73-BMM, 2020 WL 2104760, *13 (D. Mont. May 1, 2020) (in NEPA challenge to EAs and FONSIs for oil and gas lease sales in Montana, Court "will follow the normal procedure in the Ninth Circuit and vacate the agency's decisions"); Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs, 255 F. Supp. 3d 101, 147 (D.D.C. 2017) ("vacatur is the 'standard remedy' for a NEPA violation").

Federal Defendants contend that "given the limited nature of SO 3348," it would be "equitable" to allow a remand without vacatur "while any remaining procedural errors found by the Court are corrected."  DOI Br. 10.  However, as discussed above, this unsupported rationale is based on Federal Defendants' mischaracterization of the scope and impacts of the Zinke Order.  See supra Part I.

Moreover, Federal Defendants have already had more than a year to address the violations found by the Court (effectively, a remand without vacatur), but have failed to do so.

Defendants also provide no evidence of "disruptive consequences" that would result from vacatur of the Zinke Order. See DOI Br. 10; NMA Br. 13. Defendant-Intervenors misleadingly claim that "[d]isruptive consequences of vacatur, if any, would … fall on the recipients of the four issued coal leasing decisions identified in the EA that would have been subject to the Jewell Order." NMA Br. 13. But Plaintiffs have not requested that those prior leasing decisions be vacated, and Plaintiffs' prospective request for vacatur of the Zinke Order does not disturb those leasing decisions already made. With respect to any potential consequences to future leases, Defendants fail altogether to acknowledge the Jewell Order's exception for emergency leases in circumstances in which a new federal coal lease is needed to maintain an existing mine operation. See AR 11 (providing exception for emergency leasing); 43 C.F.R. § 3425.1-4 (defining conditions for emergency leasing).

Regardless, any potential uncertainty to industry that may result from vacatur of the Zinke Order is not the type of severe disruptive consequences that would warrant remand without vacatur. See California v. U.S. Dep't of the Interior, 381 F. Supp. 3d 1153, 1179 (N.D. Cal. 2019) (vacatur of rule governing

coal, oil, and gas royalties not unduly disruptive given the "lack of any facts in the record to support that assertion" and because "any significant change in the rules ... inevitably will result in a period of adjustment for interested parties"); California v. BLM, 277 F. Supp. 3d 1106, 1125–26 (N.D. Cal. 2017) ("potential disruptive consequences" to industry from reinstating oil and gas rule were outweighed by the fact that compliance "will reduce the waste of public resources, curb the emission of harmful environmental pollutants, increase royalty payments, and, for many of the new requirements relating to reducing the waste of valuable resources, pay for itself over time"); Center for Food Safety v. Vilsack, 734 F. Supp. 2d 948, 953 (N.D. Cal. 2010) ("In light of the limited circumstances in which the Ninth Circuit has determined that equity warranted remanding without a vacatur, it is not clear that economic consequences is a factor the Court may consider in environmental cases").

Furthermore, any potential disruption is of Federal Defendants' own making given the full year that has passed since the Court issued its summary judgment order. And Federal Defendants' claim of disruption is further undercut by their own assertions that it may "take months or a year or more" before any permits and plans are approved and surface-disturbing activity would occur on some leases, and "the likelihood that any further legal error found will be corrected within that time frame." See DOI Br. 12.

14

Moreover, reinstatement of the moratorium that was previously in effect under the Jewell Order would, as a matter of law, follow vacatur.  Organized Vill. of Kake v. U.S. Dep't of Agric., 795 F.3d 956, 970 (9th Cir. 2015) ("The effect of invalidating an agency rule is to reinstate the rule previously in force.") (en banc) (quoting Paulsen v. Daniels, 413 F.3d 999, 1008 (9th Cir. 2005)); Turtle Island Restoration Network v. U.S. Dep't of Commerce, 672 F.3d 1160, 1165 (9th Cir. 2012) ("reinstatement of the [prior rule] operates as a matter of law under the vacatur").  This Court should reject Defendant-Intervenors' claim that, through their request for vacatur, Plaintiffs "are asking the Court to … issue an indefinite, standalone injunction on federal coal leasing."  NMA Br. 10.  Vacatur "prohibits, as a practical matter, the enforcement of" the Zinke Order, but is not "the practical equivalent of 'enjoining'" the agency.  Alsea Valley All. v. Dep't of Commerce, 358 F.3d 1181, 1186 (9th Cir. 2004).  The Jewell Order protected public lands and the environment from coal leasing.  Order 23 [Doc. 141]; see supra Part I.C.  Vacating the Zinke Order would reinstate those protections and prevent environmental harm unless and until Federal Defendants comply with NEPA as required by the Court's summary judgment ruling.

Consequently, the appropriate remedy for Federal Defendants' NEPA violation is vacatur of the Zinke Order.

### III.  ENJOINING THE ZINKE ORDER IS UNNECESSARY, BUT WOULD BE WARRANTED FOR FEDERAL DEFENDANTS' VIOLATION OF NEPA

Should the Court reach the injunction issue—which it need not do, Pls. Br. 21-25—Defendants have failed to counter Plaintiffs' showing that an injunction would be appropriate under the four-factor Monsanto test.  See Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 156-57 (2010).  With regard to irreparable injury, Plaintiffs' showing was not based on the recently held Dunn Ranch Tract lease sale in Colorado, see DOI Br. 12, or allegations of only procedural injury, see NMA Br. 15.  Rather, Plaintiffs discussed the environmental harms of increased air and water pollution, greenhouse gas emissions, noise, and aesthetic injury from the federal coal leasing program, and the Zinke Order's failure to consider programmatic reforms to avoid such impacts.  See Pls. Br. 22-24.  Moreover, "[w]hen a procedural violation of NEPA is combined with a showing of environmental or aesthetic injury, courts have not hesitated to find a likelihood of irreparable injury."  Brady Campaign to Prevent Gun Violence v. Salazar, 612 F. Supp. 2d 1, 24 (D.D.C. 2009) (citing cases).

Defendants are also mistaken that an injunction would be inappropriate because precluding future lease sales "would circumvent the APA's procedural requirements for challenging agency action."  DOI Br. 13; NMA Br. 14.  Plaintiffs have not asked the Court to enjoin any specific leases or lease sales.  Rather, the injunction would prohibit Federal Defendants from implementing the Zinke Order

16

unless and until the violations found by this Court in its summary judgment order have been remedied.[2]

In sum, while an injunction is unnecessary because vacatur is a sufficient remedy in this case, Monsanto, 561 U.S. at 166, an injunction to prevent implementation of the Zinke Order would also be warranted.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court vacate the Zinke Order, thereby reinstating the federal coal-leasing moratorium that existed under the Jewell Order.

---

[2] For this same reason, an injunction would not "compel compliance" with the Jewell Order, as Federal Defendants claim.  DOI Br. 11.

17

Respectfully submitted this 5th day of May, 2020.

/s/ Jenny K. Harbine

Jenny K. Harbine
Earthjustice
313 East Main Street
Bozeman, MT 59715
jharbine@earthjustice.org
(406) 586-9699 | Phone
(406) 586-9695 | Fax

*Counsel for Plaintiffs in*
*Case No. CV-17-30-BMM*

Wyatt F. Golding (*pro hac vice*)
Ziontz Chestnut
2101 Fourth Avenue, Suite 1230
Seattle, WA 98121
wgolding@ziontzchestnut.com
(206) 448-1230 | Phone
(206) 448-0962 | Fax

*Counsel for Plaintiff Northern*
*Cheyenne Tribe*

Michael Saul (*pro hac vice*)
Center for Biological Diversity
1536 Wynkoop Street, Suite 421
Denver, CO 80202
MSaul@biologicaldiversity.org
(303) 915-8308 | Phone

*Counsel for Plaintiff*
*Center for Biological Diversity*

18

ROGER SULLIVAN
DUSTIN LEFTRIDGE
McGarvey, Heberling, Sullivan
& Lacey, P.C.
345 1st Ave. E.
Kalispell, Montana 59901-5341
(406) 752-5566
RSullivan@McGarveyLaw.com

*Counsel for State Plaintiffs*


XAVIER BECERRA
Attorney General of California
DAVID ZONANA
Supervising Deputy Attorney General


  /s/ George Torgun
_____
GEORGE TORGUN (*pro hac vice*)
ELIZABETH B. RUMSEY
(*pro hac vice*)
Deputy Attorneys General
1515 Clay Street, 20th Floor
Oakland, CA 94612-0550
Telephone: (510) 879-1002
George.Torgun@doj.ca.gov

*Counsel for State of California*


HECTOR BALDERAS
Attorney General of New Mexico


  /s/ Bill Grantham
_____
BILL GRANTHAM (*pro hac vice*)
Assistant Attorney General
201 Third St. NW, Suite 300
Albuquerque, NM 87102
Telephone: (505) 717-3520
wgrantham@nmag.gov

*Counsel for State of New Mexico*

19

LETITIA JAMES
Attorney General of New York

 /s/ Andrew G. Frank
_____
ANDREW G. FRANK (*pro hac vice*)
Assistant Attorney General
New York Attorney General's Office
28 Liberty Street
New York, NY 10005
Telephone: 212-416-8271
Email: andrew.frank@ag.ny.gov

*Counsel for State of New York*

ROBERT W. FERGUSON
Attorney General of Washington

 /s/ William R. Sherman
_____
WILLIAM R. SHERMAN (*pro hac vice*)
Assistant Attorney General
AURORA JANKE, MT Bar No.
39522610
Assistant Attorney General
800 5th Ave Suite 2000, TB-14
Seattle, WA 98104-3188
Telephone: (206) 442-4485
Email: bill.sherman@atg.wa.gov

*Counsel for State of Washington*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief, inclusive of everything from the caption to the certificate of service, contains 4,839 words, in compliance with the Court's March 31, 2020 Order.

/s/ George Torgun
George Torgun

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was today served via the Court's

CM/ECF system on all counsel of record.

　　　　　　　　　　　　　　/s/ George Torgun
　　　　　　　　　　　　　　George Torgun