# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| CITIZENS FOR CLEAN ENERGY, et al., | **CV-17-30-GF-BMM** |
| and | |
| THE NORTHERN CHEYENNE TRIBE, | |
| Plaintiffs, | |
| v. | **ORDER** |
| U.S. DEPARTMENT OF THE INTERIOR, et al., | |
| Federal Defendants, | |
| and | |
| STATE OF WYOMING, et al., | |
| Defendant-Intervenors. | |
| STATE OF CALIFORNIA, et al., | **CV-17-42-GF-BMM** |
| Plaintiffs, | (Consolidated case) |
| v. | |
| U.S. DEPARTMENT OF THE INTERIOR, et al., | |
| Federal Defendants, | |
| and | |
| STATE OF WYOMING, et al., | |
| Defendant-Intervenors. | |

**INTRODUCTION**

This case involves a challenge to the federal government's decision to lift the moratorium on coal leasing.  The Court granted summary judgment, in part, for the Plaintiffs in its March 19, 2019 Order ("Order").  The Court deferred ruling on the appropriate remedy. The Court now must determine what remedy, if any, would be appropriate.  Plaintiffs request vacatur of the Zinke Order, or, alternatively, an injunction preventing the issuance of coal leases.

The Court held a hearing on May 13, 2020, on the remedies briefs filed in this consolidated action brought by the Center for Biological Diversity, Citizens for Clean Energy, Defenders of Wildlife, EcoCheyene, Montana Environmental Information Center, Sierra Club, the Northern Cheyenne Tribe, and WildEarth Guardians (collectively "Organizational Plaintiffs"), State of California, State of Washington, and the State of New Mexico (collectively "State Plaintiffs"), and by Defendants Secretary of Interior Ryan Zinke, the U.S. Department of Interior, the U.S. Bureau of Land Management (collectively "Federal Defendants"), the State of Wyoming, the State of Montana (collectively "State Defendants"), and the National Mining Association (collectively "Defendants"). The Court again uses the generic terms Plaintiffs and Defendants unless an issue requires the Court to identify a specific party.

## BACKGROUND

A. FACTUAL BACKGROUND

The United States Government owns an approximately 570-million-acre coal mineral estate. (Doc. 118 at 4).  The Bureau of Land Management ("BLM") administers federal coal leases on the Government's estate. (*Id.*).  The BLM possesses broad discretion to lease public land for coal mining. (*Id.* at 5).  BLM currently manages 299 active federal coal leases. (Doc. 153-1 Final EA at 7).  The BLM managed leases account for an estimated 6.5 billion tons of recoverable coal. (*Id.*).  Over forty percent of the coal produced in the United States comes from federal land.  AR-00004.  Over eighty-five percent of coal production on federal land in the United States occurs in the Powder River Basin shared by Montana and Wyoming.  *Id.*  BLM last commenced a comprehensive environmental review for the federal coal program in 1979. (Doc. 118 at 6).

### 1. *Secretarial Order 3338*

Former Secretary of the Interior Sally Jewell issued Secretarial Order 3338 (the "Jewell Order") on January 15, 2016.  (Doc. 118 at 8).  The Jewell Order directed BLM to prepare a programmatic environment impact statement ("PEIS") that addressed at a minimum the following issues:

> (a) how, when, and where to lease coal; (b) fair return to the American public for federal coal; (c) the climate change impacts of the federal coal program, and how best to protect the public lands from climate change impacts; (d) the externalities related to federal coal production,

3

including environmental and social impacts; (e) whether lease decisions should consider whether the coal would be for export; and (f) the degree to which federal coal fulfills the energy needs of the United States. (*Id.* at 9).

The Jewell Order imposed a moratorium on new coal leasing until completion of the PEIS.  (*Id.*).

### 2.  Secretarial Order 3348

President Trump issued an executive order on March 28, 2017, directing Secretary of the Interior Ryan Zinke to "take all steps necessary and appropriate to amend or withdraw" the Jewell Order.  (Doc. 118 at 12).  Secretary Zinke issued Secretarial Order 3348 (the "Zinke Order") the next day on March 29, 2017.  AR-00001-2.  The Zinke Order determined that "the public interest is not served by halting the Federal coal program for an extended time[.]"  *Id.*  The Zinke Order further reasoned that Federal Defendant's consideration of potential improvements to the coal leasing program did not require the preparation of a PEIS.  *Id.*  The Zinke Order lifted the moratorium and directed BLM to "process coal lease applications and modifications expeditiously in accordance with regulations and guidance existing before the issuance of" the Jewell Order.  *Id.*

B. THE COURT'S SUMMARY JUDGMENT ORDER AND SUBSEQUENT DEVELOPMENTS
   1. *The Court's Summary Judgment Order and Deferral of Decision on Remedies*

4

The Court entered an Order granting, in part, and denying, in part, the cross-motions for summary judgment on April 19, 2018.  (Doc. 141).  The Court determined that the Zinke Order constituted a major federal action that triggered the application of the National Environmental Policy Act ("NEPA").  (Doc. 141 at 24).  The Court also determined that the Zinke Order met the requirements for final agency action thereby subjecting it to review under the Administrative Procedure Act ("APA").  (*Id.*).

The Court recognized that, although the Zinke Order triggered NEPA, the Court lacked the ability to compel Federal Defendants to prepare a PEIS or supplemental PEIS at that time, as that initial decision regarding the scope of the environmental review remained firmly within the agency's discretion.  (Doc. 141 at 28-29).  The Court noted, however, that if Defendants determined that an EIS would not be necessary, that Federal Defendants would be required to provide a "convincing statement of reasons" to explain why the impacts of the Zinke Order would be insignificant.  (Doc. 141 at 29).  The Court recognized that "Federal Defendants may comply with their NEPA obligations in a manner of ways." (*Id.* (citing 40 C.F.R. § 1508.4)).  The Court concluded that it could not specify how Federal Defendants' began to undertake its NEPA analysis.

The Court directed the parties to meet and confer in good faith to attempt to reach an agreement on remedies.  (Doc. 141 at 33-34).  The Court also ordered that

5

the parties were to file remedies briefs if they could not reach an agreement. (Doc. 141). Federal Defendants gave notice that they partially had complied with the Court's Order by posting a draft environmental assessment ("EA") examining the impacts of the Zinke Order. (Doc. 143). The notice provided that BLM was to receive comments from the public on the draft EA. BLM would consider the comments, respond publicly, and "determine whether any impacts of significance require preparation of an environmental impact statement or if preparation of a Finding of No Significant Impact ("FONSI") is appropriate." (Doc. 143 at 1). Plaintiffs filed a response in which they disagreed that the issuance of the draft EA constituted partial compliance with the Court's Order and notified the Court that they intended to file remedies briefing. (Doc. 144).

After the remedies briefing was complete, the Court entered an Order on July 31, 2019. (Doc. 150). The Court deferred a ruling on remedies until after Federal Defendants completed their NEPA review. The Court provided the following guidance:

> The Court's postponement of a remedies ruling does not foreclose Plaintiffs' ability to challenge the adequacy of Federal Defendants' NEPA review after its completion. The parties shall reserve their rights set forth in the Court's Summary Judgment Order (Doc. 141) to file briefs within the word limits determined by the Court.

(Doc. 150 at 5).

2.  *Final EA and Finding of No Significant Impact*

BLM issued a Final EA and FONSI on February 26, 2020.  (Doc. 152).  The draft EA received 47,000 public comments during a 19-day comment period.  (Doc. 153 at 6).  Both the EA and the FONSI limit its analysis to "the environmental impacts of resuming lease processing 24 months ahead of schedule."  (Doc. 153-1 Final EA at 11).  BLM justified this narrow scope of analysis based on the fact that "[t]he Zinke Order lifted a limited, temporary pause on Federal coal leasing (the Pause) that was instituted by the [Jewell Order]."  (Doc. 153-2 FONSI at 1).

The EA analyzed four federal coal leases that would not have been processed under the Jewell Order, but were allowed under the Zinke Order.  (Doc. 153-1 at 10).  The EA addressed several issues relating to the environmental effects of resuming coal leasing 24 months earlier.  (*Id.* at 13).  In particular, the EA identified greenhouse gas emissions, socioeconomic impacts, and water quality, quantity and riparian areas as issues to be addressed.  (*Id.*).  The FONSI similarly limited its analysis to "the consequences of lifting the Pause approximately 24 months earlier."  (Doc 153-2 at 1).  The FONSI relies heavily on the fact that the Jewell Order disrupted a 40-year framework for coal leasing, and the finite nature of the Pause, together with the NEPA review of individual leases, limited the effects of the Zinke Order.  (*Id.* at 1-2, 6).

7

### 3. *Current Remedies Briefing*

Plaintiffs filed "Plaintiffs' Substitute Brief on Remedy" on March 10, 2020. (Doc. 153). The Court entered a scheduling order and Federal Defendants and Intervenor Defendants filed responsive briefs. (Docs. 162, 163, 164). Plaintiffs filed a reply brief. (Doc. 165).

## LEGAL STANDARDS

### A. NATIONAL ENVIRONMENTAL POLICY ACT

The National Environmental Policy Act ("NEPA") requires federal agencies to "take a hard look" at the "environmental consequences" of their decision-making. *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989) (internal citations omitted). The statute "does not mandate particular results." *Id*. NEPA instead "prescribes the necessary process" that agencies must follow to identify and evaluate "adverse environmental effects of the proposed action." *Id*. Such effects may be direct or indirect. 40 C.F.R. § 1502.16.

NEPA does not always require an EIS to ensure that an agency has taken a "hard look" at potential environmental impacts. *Cal. ex rel.Lockyer v. U.S. Dep't of Agric.*, 575 F.3d 999, 1012 (9th Cir. 2009). An agency may comply with NEPA through the preparation of the following documents and accompanying analysis: (1) an EIS; (2) a less extensive EA and a finding of no significant impact on the environment ("FONSI"); or (3) a categorical exclusion and finding that the action

does not individually or cumulatively have a significant effect on the human environment. *Id.*; 40 C.F.R. § 1508.4.

B. REMEDIES AFTER AN APA VIOLATION

"[R]emand, along with vacatur, is the presumptively appropriate remedy for a violation of the APA." *Sierra Club v. Van Antwerp*, 719 F. Supp. 2d 77, 78 (D.D.C. 2010) (citation omitted).  It should be noted, however, that "courts are not mechanically obligated to vacate agency decisions that they find invalid." *Pac. Rivers Council v. U.S. Forest Serv.*, 942 F. Supp. 2d 1014, 1017 (E.D. Cal. 2013).

## DISCUSSION

A. WHETHER PLAINTIFFS ARE ENTITLED TO VACATUR OF THE ZINKE ORDER

Plaintiffs renew their request to vacate Federal Defendants' "unlawful decision to rescind the federal coal-leasing moratorium."  (Doc. 153 at 1). Plaintiffs argue that Federal Defendants finalized an EA that narrowly evaluated four coal leases already issued.  Plaintiffs contend that the EA failed to "examine, in accord with NEPA, the impacts of the Zinke Order."  (Doc. 153 at 6 (citing Court's Order Doc. 152)).  Essentially, the Final EA and FONSI "do not remedy the NEPA violation identified in the Court's April 19, 2019 Order." (Doc. 153 at 8).  Plaintiffs make clear they do not challenge the sufficiency of the EA and FONSI.  (Doc. 153 at 9).

Federal Defendants argue that no issues remain in this case. Federal Defendants assert that the Final EA and FONSI remedy the violation identified in the Court's Order. (Doc. 164 at 3). Federal Defendants assert that Plaintiffs essentially request that the Court review the adequacy of the EA and FONSI. (*Id.* at 2). This review would require an amended complaint and a supplemental/new administrative record. (*Id.*). Federal Defendants contend that the Court already has rejected Plaintiffs' plea to order the preparation of a programmatic PIES. (*Id.* at 6). Intervenor Defendants agree with the Federal Defendants that no issues remain in this case. (Doc. 163). Intervenor Defendants point out that the Court ordered Federal Defendants to conduct a NEPA analysis and that Federal Defendants now have completed that analysis.

The Court agrees with Federal Defendants and Intervenor Defendants. The Court's Order determined the following matters: (1) the Zinke Order constituted a major federal action thereby triggering NEPA; (2) the major federal action was reviewable under the APA; and (3) the Court lacked the ability at that time to compel the agency to act in a specific way. The Court cautioned that if "Federal Defendants determine that an EIS would not be necessary, however, Federal Defendants must supply a 'convincing statement of reasons' to explain why the Zinke Order's impacts would be insignificant." (Doc. 141 at 29). The Court noted that the "Federal Defendants have failed to take even the initial step of determining

10

the extent of environment analysis that the Zinke Order requires." (*Id.*).
Regarding compliance with NEPA, the Court "defer[red] to Federal Defendants in
the first instance to conduct its required NEPA analysis.  The Court stands in no
position at this time to evaluate the sufficiency of that analysis." (*Id.* at 30).

Plaintiffs do not challenge the sufficiency of the EA and FONSI.  Plaintiffs
instead ask for vacatur based on the failure of the EA to comply facially with the
NEPA violations identified in the Court's Order.  The Court determined that the
Zinke Order constituted a federal action requiring NEPA review, but ultimately
deferred to the agency to conduct its NEPA analysis.  (Doc. 141 at 30).  The
agency now has conducted its analysis.  (*See* Doc. 152).  The Court's Order
specifically found that the decision "not to initiate the NEPA process proves
arbitrary and capricious."  (Doc. 141 at 27).  Federal Defendants have attempted to
remedy the violation identified in the Court's Order through the completion of an
EA and a FONSI.

Plaintiffs assert that simply any NEPA review would not necessarily prove
sufficient.  The review instead "must actually correct the errors that formed the
basis for the Court's legal conclusions."  (Doc. 153 at 9).  Plaintiffs cite to a
number of cases wherein courts have determined compliance with a court's remand
order and the substantive law.  The Court does not find these cases and their
reasoning applicable here.

11

For example, in *Public Service Co. of Colorado v. Batt*, 67 F.3d 234 (9th Cir. 1995), the Ninth Circuit dismissed an appeal from a district court's injunction. The district court found that Idaho had shown several irreparable injuries that would result from the decisions of the Department of Energy ("DOE") regarding the shipment, receipt, processing, and storage of spent nuclear fuel at the national engineering laboratory in Idaho. *Public Serv. Co. of Colorado v. Andrus*, 825 F. Supp. 1483, 1505 (D. Idaho 1993). The district court issued an order requiring DOE to prepare an EIS regarding the effects of "all major federal actions involving the transportation, receipt, processing, and storage of spent nuclear fuel at the Idaho National Engineering Laboratory," and setting forth a reasonable range of alternatives to these actions. *Id.* at 1511. The district court also enjoined DOE from transporting, receiving, processing, and storing spent nuclear fuel at the Laboratory until "the comprehensive environmental impact statement is completed, reviewed, and any challenges to the statement are resolved." *Id.* Finally, the order provided that the district court would retain jurisdiction over the case for the purpose of hearing and resolving disputes between Idaho and DOE "regarding the adequacy of the final environmental impact statement. Thereafter, upon good cause showing, the injunction shall be dissolved." *Id.*

DOE later sought permission from Idaho for certain emergency shipments of spent fuel to the laboratory. *Batt*, 67 F.3d at 235. DOE and Idaho entered an

12

agreement in August 1993, that, if the district court would enter their proposed order modifying the court's June 1993 order, DOE would neither appeal the June 1993 order, nor seek legislation to alter or supersede that order. *Id.* The district court adopted the proposed order on December 22, 1993. *Id.* The December 1993 order provided that "[t]he court's Memorandum Opinion and Order of June 28, 1993, shall remain in full force and effect, subject to the modifications set forth below." *Id.* DOE issued its final EIS, and the district court granted Idaho's motion to reopen the proceedings. The district court specifically noted that "the court finds good cause to continue this injunction until this matter is finally resolved." *Id.* at 236.

DOE issued its record of decision on June 1, 1995. *Id.* DOE immediately filed a Notice of Compliance with the December 1993 order. Idaho objected on the grounds that the EIS did not comply with the requirements of the district court's June 1993 order. DOE then filed an emergency motion to vacate or, in the alternative, to modify the district court's order of May 19, 1995, to permit 12 shipments of spent nuclear fuel to the laboratory. DOE filed a notice of appeal, before the district court had ruled on the emergency motion, seeking review of the district court's May 19, 1995, ruling "continuing" the 1993 injunction. The district court issued an order on June 27, 1995, that denied DOE's motion. *Id.* The district court explained that it had continued the injunction because it believed that the

13

original injunction's provision for the district court to resolve disputes regarding the EIS before dissolving the injunction remained in effect. *Id.*

The Ninth Circuit dismissed the appeal. *Id.* at 237. The June 1993 order enjoined DOE from making shipments "until the comprehensive environmental impact statement is completed, reviewed, and any challenges to the statement are resolved." *Public Serv. Co.*, 825 F. Supp. at 1511. The order expressly reserved the district court's jurisdiction to resolve such challenges, and further provided that "[t]hereafter, upon good cause showing, the injunction shall be dissolved." *Id.* Idaho challenged the EIS and the district court had not yet resolved that challenge or dissolved the injunction at the time of DOE's appeal. *Batt*, 67 F.3d at 237.

Both the words of the two 1993 orders and the context in which the disputed language appears defeated DOE's claim that the injunction would end upon issuance of the record of decision. *Id.* The "EIS required by the Order of June 28, 1993" was an EIS to which the court had resolved all challenges. *Id.* Idaho argued throughout the case that DOE was failing to assess the environmental impact of its actions in good faith. *Id.* The district court's order reflected that view. *See Public Serv. Co.*, 825 F. Supp. at 1496–97, 1499, 1509. DOE's interpretation of the December 1993 agreement would have permitted DOE to end the injunction by the publication of any EIS, however flawed, and the issuance of a record of decision

14

based upon it. The Ninth Circuit rejected this view as leaving the injunction "toothless." *Batt*, 67 F.3d at 237.

The Court did not enjoin BLM here. The Court instead deferred a ruling on remedies until after the Federal Defendants had completed their NEPA review. (Doc. 150).  The Court acknowledged that Plaintiffs could challenge the adequacy of Federal Defendants' NEPA review after its completion.  (*Id.* at 5).  Federal Defendants have completed what they intend to perform for NEPA review through the preparation of the EA and the issuance of a FONSI.

Similarly, in *Swan View Coalition v. Barbouletos*, the district court reviewed compliance with its earlier injunction that had required the U.S. Fish & Wildlife Service ("FWS") "to issue a new Biological Opinion that complies with the ESA." 639 F. Supp. 2d 1187, 1190 (D. Mont. 2009).  FWS filed a notice of compliance with remand in which it contended that the injunction automatically lifted when the new biological opinion issued.  *Id.* at 1188.  Plaintiffs moved to enforce the injunction.  The district court rejected FWS's claim and concluded that its injunction remained in effect until FWS issued a new biological opinion that complied with the ESA.  *Id.* at 1190.

The Court's Order here simply proves less expansive than Plaintiffs' interpretation, or as the orders in the cases cited by Plaintiffs.  Plaintiffs essentially

repeat their request for the Court to order a programmatic review and preparation of a PEIS.  (*See* Doc. 153 at 13 ("[T]he final EA is more akin to the lease-specific NEPA analyses that must later occur <u>under the umbrella of</u> the programmatic evaluation, not in lieu of it." (emphasis in original))).  This Court already considered and declined to impose this request on Federal Defendants.

The Court cited *California ex rel. Lockyer v. U.S. Department of Agriculture* in its previous Order.  575 F.3d 999 (9th Cir. 2009).  Plaintiffs continue to rely on *Lockyer* in support of their argument that NEPA and this Court's prior Order imposes a duty on BLM to assess in a programmatic fashion the environmental effects of the Zinke Order.  In *Lockyer*, the Forest Service promulgated a new rule ("Roadless Rule") on January 5, 2001, that constituted a programmatic approach to roadless area management in the United States.  *Id.* at 1007.  The Roadless Rule arose following the completion of the final environmental impact statement in November 2000 that comprised the Forest Service's categorical, programmatic approach to roadless area management.  *Id.* at 1006.

The change in presidential administrations delayed the Roadless Rule's effective date and the new administration began work on a replacement rule known as the "State Petitions Rule."  The State Petitions Rule would replace the Roadless Rule.  *Id.* at 1007.  The Forest Services adopted the State Petitions Rule without having conducted any further environmental review. The Forest Service explained

16

that it had designated the State Petitions Rule for a categorical exclusion under NEPA. *Id.* at 1008 (citing 70 Fed. Reg. 25,660). The district court found unreasonable the classification of the State Petitions Rule for a categorical exclusion under NEPA and entered an injunction enjoining the enforcement of the State Petitions Rule and reinstating the Roadless Rule. *California ex rel. Lockyer v. U.S. Dep't of Agric.*, 459 F. Supp. 2d 874 (N.D. Cal. 2006).

The Ninth Circuit agreed that the Forest Service unreasonably determined that the State Petitions Rule was without substantive effect and therefore fell within the agency's categorical exclusion. *Lockyer*, 573 F.3d at 1020-21. The Forest Service failed to persuade the Ninth Circuit that the seven-month period that the Roadless Rule had been in effect was "insufficient to make any meaningful difference in forest planning." *Id.* at 1014 (emphasis omitted). The Ninth Circuit reasoned that the Roadless Rule's seven-month effective period resulted in benefits to roadless areas and their corresponding ecosystems. *Id.* The Ninth Circuit affirmed the district court's injunction effectively reinstating the Roadless Rule. *Id.* at 1020.

A number of factors distinguish *Lockyer* from the situation presently before the Court. First, the adequacy of the agency's action—the decision to classify the State Petitions Rule as a categorical exclusion under NEPA—was directly before the district court in *Lockyer*. *Lockyer*, 459 F. Supp. 2d at 901. Plaintiffs' claims

17

do not directly place the adequacy of the agency's most recent actions before the Court. Plaintiffs asserted in their complaint that Federal Defendants had failed to conduct an environmental analysis of the consequences of the Zinke Order. (Doc. 1 at 4). Federal Defendants now claim to have completed that analysis. (Docs. 152, 164).

The second distinction arises from the fact that the district court in *Lockyer* entered an injunction based on the violations of NEPA and the ESA. *Lockyer*, 459 F. Supp. 2d at 914-19. The district court reinstated the Roadless Rule. *Id.* at 919. The Forest Service adopted Roadless Rule after having completed a full environmental review. *Id.* BLM had not yet completed the PEIS contemplated by the Jewell Order at the time that it changed course with the Zinke Order. More importantly, the Court declined to enter an injunction in its earlier Order and likewise declines to enter an injunction here, unless and until, the Court can analyze the sufficiency of the agency's actions in a procedurally appropriate manner. *Lockyer* also involved rule-making. This Court admittedly used the reasoning from *Lockyer* to determine that the Zinke Order triggered NEPA. *Lockyer*'s reasoning only goes so far, however, as the case before the Court does not involve agency rulemaking. *See Paulsen v. Daniels*, 413 F.3d 999, 1008 (9th Cir. 2005) ("the effect of invalidating an *agency rule* is to reinstate the rule previously in force" (emphasis added)).

18

The Court takes a final moment to review the analysis in *Western Organization of Resource Councils (WORC) v. Zinke*, 892 F.3d 1234 (D.C. Cir. 2018), and its potential application here. The plaintiffs in *WORC* asserted that NEPA obligated the Secretary of the Interior to revise and update the 1979 Programmatic Environmental Impact Statement ("PEIS") for the federal coal leasing program when its conclusions had become stale and outdated. *Id.* at 1237. In particular, the plaintiffs argued that NEPA mandated the Secretary of the Interior to supplement the PEIS to account for the impacts of coal combustion on greenhouse gases in the atmosphere. *Id.*

The plaintiffs in *WORC* brought their cause of action in 2014. The district court determined that then-Secretary of the Interior Sally Jewell had not proposed any new action regarding the coal-leasing program that would trigger the requirement to update and revise the PEIS. *Id.* at 1236-37 (citing *W. Org. of Res. Councils v. Jewell*, 124 F. Supp. 3d 7, 13 (D.D.C. 2015)). Secretary Jewell issued the Jewell Order during the pendency of the plaintiffs' appeal. The D.C. Circuit limited its review to the issue of whether the Interior Department possessed a duty to update the PEIS due to its reliance on outdated information. *WORC*, 892 F.3d at 1241.

The D.C. Circuit determined that "neither NEPA nor the [Interior] Department's own documents create a legal duty for the Secretary to update the . . .

19

PEIS." *Id.* at 1246-47. No major federal action could be identified regarding the plaintiff's challenge. *Id.* at 1243. The Interior Department's approval of the 1979 PEIS constituted the major federal action. *Id.* NEPA did not require the Interior Department to update the PEIS after the major federal action had been completed in 1979. *Id.* at 1245.

The Court distinguished *WORC* based on the Jewell Order and subsequent lifting of the leasing moratorium through the Zinke Order. (Doc. 141 at 19). The Zinke Order lifted the Jewell Order's moratorium and directed BLM to expedite coal leases. AR-00001. The Zinke Order changed the status quo in a way that triggered the need for environmental review. (Doc. 141 at 24). The Court remains free to assess the adequacy of that environmental review if Plaintiffs pursue such a challenge. And Plaintiffs remain free to allege in any new challenge that issuance of the Zinke Order qualified as arbitrary and capricious under the standard applied in *Organized Village of Kake v. U.S. Department of Agriculture*, 795 F.3d 956, 966 (9th Cir. 2015).

The Court emphasizes that its deference to Federal Defendants regarding how to comply with NEPA in the first instance does not relieve Federal Defendants from evaluating the impacts of the Zinke Order in accordance with NEPA and any other legal duties.  Therefore, if Plaintiffs challenge the sufficiency of the EA and FONSI, the Court likely possesses the authority to determine whether the agency's

environmental review complied with the Mineral Leasing Act, the Federal Land Policy and Management Act, and whether Federal Defendant's fulfilled their trust obligations to the Northern Cheyenne Tribe.  The Court disagrees with Plaintiffs, however, about whether this analysis requires a substantive review of the EA and FONSI.

Any question addressed at this stage necessarily would entail an assessment of the sufficiency of the EA and the FONSI.  The Court declines to conduct that analysis without a new complaint and administrative record to review.  As noted by the district court in *WildEarth Guardians v. Bernhardt*, "[t]o the extent that Plaintiffs wish to challenge the adequacy of BLM's new NEPA analysis, they must supplement their complaint to raise these new claims."  No. 16-cv-1724, 2019 WL 3253685, at *2-3 (D.D.C. July 19, 2019).  There the district court held that EAs prepared for a series of oil and gas leases violated NEPA in a number of respects. *Id.*  The district court enjoined BLM from issuing a permit to drill or otherwise authorize new oil and gas leases.  *Id.*

BLM moved for a voluntary remand and the district court granted the motion.  *Id.* at *2.  The district court rejected Plaintiff's claims to enjoin BLM until after the district court had reviewed the adequacy of BLM's environmental review on remand.  The district court declined to anticipate deficiencies in the new environmental review.  *Id.* at *3.  Plaintiffs had received the relief required by the

district court's order and a fresh challenge to the newly completed environmental review would be required to obtain more relief.  *Id.*

Plaintiffs remain free to challenge the sufficiency of the NEPA analysis. Plaintiffs would have been in a position to challenge Federal Defendants' inaction if the Federal Defendants had refused to undertake an analysis and not completed an EA and FONSI.  Federal Defendants have completed an EA and issued a FONSI.  These circumstances do not entitle Plaintiffs to vacatur of the Zinke Order based on the Court's previous Order.

B. WHETHER PLAINTIFFS ARE ENTITLED TO AN INJUNCTION

Plaintiffs argue that vacatur of the Zinke Order represents the appropriate remedy here, but separately assert that an injunction would be warranted.  A plaintiff seeking a permanent injunction must demonstrate the following factors: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010) (citation omitted). "[A]n injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Id.* at 165.  Plaintiffs assert that each of the *Monsanto* factors favor an injunction.

22

An injunction to reinstitute a moratorium on coal leasing would not be appropriate or proportionate at this juncture.  The Court's Order identified a violation of the APA by Federal Defendants when they failed to initiate the NEPA process.  Plaintiffs' Complaint alleged that "Defendants . . . failed to complete the PEIS, or even to prepare the less-detailed 'environmental assessment,' prior to making their decision to life the moratorium in violation of NEPA."  (Doc. 1 at 4).  The Federal Defendants now have initiated and completed that process, and, therefore, no basis exists for entering an injunction based on the Plaintiffs' Complaint or the Court's Order.

Further, even if the Court considers the merits of the argument for an injunction, the Court remains unconvinced that Plaintiffs have demonstrated that they have suffered irreparable injury.  Federal Defendants assert that they have issued no leases yet and that they will complete NEPA reviews for each individual leasing decision.  (Doc. 164 at 4, 12).  Plaintiffs remain free to bring a challenge to the EA and FONSI, or any individual lease under the APA.  *See Monsanto*, 561 U.S. at 162 (noting that "a permanent injunction is not now needed to guard against any present or imminent risk of likely irreparable harm" because plaintiffs could file a new suit alleging a NEPA violation under the APA).  Plaintiffs have not made the requisite showing to entitle them to an injunction.

## CONCLUSION AND ORDER

The Court's Order required Federal Defendants to initiate a NEPA process and acknowledged that the Court lacked the authority to compel the agency to complete a PEIS at the time.  Federal Defendants have remedied the violation specified in the Court's Order (failure to initiate NEPA analysis) and any challenge to the EA and the FONSI is not appropriately before the Court.  Plaintiffs remain free to file a complaint to challenge the sufficiency of the EA and FONSI and the issuance of any individual coal leases.

**IT IS ORDERED** that Plaintiffs' requested relief identified in their Motions for Summary Judgment (Docs. 115, 117) and Briefs on Remedies (Docs. 147, 153) is **DENIED**.

**IT IS ALSO ORDERED** that the Clerk of Court is directed to close this case and enter judgment pursuant to Federal Rule of Civil Procedure 58.

DATED this 22nd day of May, 2020.

Brian Morris, Chief District Judge
United States District Court