Jenny K. Harbine
Amanda D. Galvan
Earthjustice
313 East Main Street
Bozeman, MT 59715
jharbine@earthjustice.org
agalvan@earthjustice.org
(406) 586-9699 | Phone
(406) 586-9695 | Fax

*Counsel for Plaintiffs in*
*Case No. 4:17-cv-30-BMM*

GEORGE TORGUN (*pro hac vice*)
ELIZABETH B. RUMSEY (*pro hac vice*)
Deputy Attorneys General
1515 Clay Street, 20th Floor
Oakland, CA 94612-0550
Telephone: (510) 879-1002
George.Torgun@doj.ca.gov

*Counsel for State of California in*
*Case No. 4:17-cv-42-BMM*

**[Additional Counsel in Signature Block]**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| CITIZENS FOR CLEAN ENERGY, <u>et al.</u>,<br><br>        Plaintiffs,<br><br>and<br><br>THE NORTHERN CHEYENNE TRIBE,<br><br>        Plaintiff,<br><br>      v. | Case No. 4:17-cv-30-BMM<br><br><br>**BRIEF IN SUPPORT OF PLAINTIFFS' JOINT MOTION FOR LEAVE TO SUPPLEMENT THEIR COMPLAINTS** |

U.S. DEPARTMENT OF THE INTERIOR, <u>et</u> <u>al.</u>,

                Defendants,

and

STATE OF WYOMING, <u>et</u> <u>al.</u>,

                Defendant-Intervenors.

---

STATE OF CALIFORNIA, <u>et</u> <u>al.</u>,

                Plaintiffs,

      v.

U.S. DEPARTMENT OF THE INTERIOR, <u>et</u> <u>al.</u>,

                Defendants,

and

STATE OF WYOMING, <u>et</u> <u>al.</u>,

                Defendant-Intervenors.

Case No. 4:17-cv-42-BMM
(consolidated case)

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 15(d), Plaintiffs in Case Nos. 4:17-cv-030-BMM ("Tribe and Conservation Plaintiffs") and 4:17-cv-042-BMM ("State Plaintiffs") respectfully request leave to supplement their respective complaints to allege new facts and claims related to Federal Defendants' issuance on February 25, 2020 of an environmental assessment and finding of no significant impact regarding the federal coal-leasing program.  Bureau of Land Mgmt. ("BLM"), Final Envtl. Assessment, Lifting the Pause on the Issuance of New Federal Leases for Thermal (Steam) Coal (Feb. 25, 2020) ("EA").  This motion seeks to promote a complete adjudication of the dispute between the parties in the interests of fairness and judicial economy.

Plaintiffs' central legal allegation in their supplemental complaints is the same as the allegation in their original complaints: that the U.S. Department of Interior and Bureau of Land Management (collectively, "Federal Defendants") failed to evaluate the environmental consequences of Secretarial Order 3348 (the "Zinke Order"), as required by the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4370h.  This Court's April 19, 2019 Order held that Federal Defendants violated NEPA by failing to initiate environmental review before opening tens of thousands of acres of federal public land to new coal leasing. Federal Defendants' EA purports to evaluate the impacts of Zinke Order.

However, the EA fails both in scope and substance to satisfy Federal Defendants' NEPA obligations.

While Plaintiffs' previously sought vacatur of the Zinke Order based on the facial inadequacy of the EA, Federal Defendants argued "this case can now be closed and judgment entered under Fed. R. Civ. P. 58.  Any claims concerning the adequacy of the EA and FONSI must be brought through a new or supplemental complaint."  Fed. Defs.' Resp. to Pls.' Sub. Br. on Remedy at 2 [Doc. 164] (Apr. 21, 2020); see also id. at 13 (same).  This Court agreed.  Remedy Order at 10, 24 [Doc. 170] (May 22, 2020).  Thus, Plaintiffs now seek leave to challenge the Zinke Order on supplemental grounds pursuant to Fed. R. Civ. P. 15(d).

In support of this motion, the Tribe and Conservation Plaintiffs and State Plaintiffs each submit their proposed First Supplemental Complaint, attached as Exhibits 1 and 2 to their joint motion.

## BACKGROUND

These consolidated actions challenge Federal Defendants' decision to revoke the coal-leasing moratorium.  Federal Defendants' actions unlawfully opened the door to new coal leasing and its attendant consequences without first performing an environmental review evaluating the program's significant environmental, health, and economic impacts or needed reforms to the federal coal program to address these impacts, in violation of NEPA's "look-before-you-leap" mandate.

2

See Compl. for Decl. and Injunctive Relief at ¶¶ 60-71 (Mar. 29, 2017) [Doc. 1];

see also Blue Mountains Biodiversity Project v. Blackwood, 161 F.3d 1208, 1216

(9th Cir. 1998) ("NEPA emphasizes the importance of coherent and

comprehensive up-front environmental analysis to ensure informed decision

making to the end that 'the agency will not act on incomplete information, only to

regret its decision after it is too late to correct.'") (internal citation omitted).

      On April 19, 2019, this Court held that Federal Defendants violated NEPA

by failing to evaluate the environmental consequences of the Zinke Order.

Specifically, the decision to revoke the federal coal-leasing moratorium

immediately ended protections for tens of thousands of acres of federal land and

constituted a "major federal action" triggering NEPA; the Zinke Order had

immediate legal consequences, rendering it a final agency action; and thus,

"Federal Defendants' decision not to initiate the NEPA process proves arbitrary

and capricious."  Order at 22-27 (Apr. 19, 2019) [Doc. 141].  The Court declined

to rule on the Tribe and Conservation Plaintiffs' further claim that Federal

Defendants violated their trust obligation to the Northern Cheyenne Tribe, stating

"[t]he Court remains unable to evaluate this claim until Federal Defendants have

completed their NEPA analysis."  Id. at 30.  The Court similarly deferred a ruling

on the State Plaintiffs' claim that the Zinke Order constituted an arbitrary reversal

of Federal Defendants' prior findings under the Mineral Leasing Act and Federal Land Policy and Management Act.  Id.

Addressing the Plaintiffs' NEPA claims, this Court ordered "Federal Defendants to initiate the NEPA process" and determine whether an EIS is ultimately necessary.  Id. at 29.  Additionally, it warned that "[i]f Federal Defendants determine that an EIS would not be necessary . . . Federal Defendants must supply a 'convincing statement of reasons' to explain why the . . . impacts would be insignificant."  Id.  On February 25, 2020, Federal Defendants took this "initial step" by issuing an EA.

Plaintiffs urged the Court to find that the EA was facially inadequate to remedy the NEPA violation affirmed in the Court's April 19, 2019 Order because it failed to consider the consequences of reopening all public lands to coal leasing, and indeed, expressly disclaimed such analysis.  Plaintiffs thus requested that the Court vacate the Zinke Order.  See Pls.' Sub. Br. on Remedy [Doc. 153] (March 10, 2020).  In response, Federal Defendants argued that claims challenging the EA "must be brought through a new or supplemental complaint."  Fed. Defs.' Resp. to Pls.' Sub. Br. on Remedy at 2 [Doc. 164] (Apr. 21, 2020).

In its Order denying Plaintiffs' requested relief on May 22, 2020, this Court agreed with Federal Defendants that the Court's review of the EA requires an "amended complaint and a supplemental/new administrative record."  Remedy

4

Order at 10 [Doc. 170]. This Court also stated that it "remains free to assess the

adequacy of that environmental review if Plaintiffs pursue such a challenge." Id. at

20. The same day the Court entered its Order denying Plaintiffs' request for relief,

the Court entered judgment in this case. Judgment [Doc. 171]. The time for

Federal Defendants and Defendant-Intervenors to appeal that judgment has not yet

run, 28 U.S.C. § 2107(b), and Plaintiffs have 30 days following that deadline in

which to file a motion with this Court for an award of attorney's fees, 28 U.S.C. §

2412(d)(1)(A).[1]

Plaintiffs file the present motion for leave to supplement their original

claims, in the interest of judicial economy, and to ensure that this Court may fully

adjudicate whether the Federal Defendants' actions, including actions taken

subsequent to the filing of the original complaints, were arbitrary, capricious, and

unlawful, as the Plaintiffs allege.

## STANDARD OF REVIEW

Governing law favors granting the Plaintiffs' motion. Rule 15(d) "is a tool

of judicial economy and convenience. Its use is therefore favored." Keith v.

Volpe, 858 F.2d 467, 473 (9th Cir. 1988); see also San Luis & Delta-Mendota

Water Auth. v. U.S. Dep't of Interior, 236 F.R.D. 491, 496 (E.D. Cal. 2006)

---

[1] The appeal deadline is July 21, 2020. Plaintiffs' fee motion is due August 20, 2020.

("Leave should be freely given").  The power of the district courts to grant

permission to file a supplemental complaint has been "liberally applied in favor of

granting leave."  6A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc.

Civ. § 1510 (3d ed. 2020).  Under the rule, district courts have "broad discretion in

allowing supplemental pleadings" to promote "judicial economy and

convenience."  Keith, 858 F.2d at 473.  Further, supplemental complaints are

permitted after the district court enters final judgment on the original complaint.

See Griffin v. Cty. Sch. Bd., 377 U.S. 218, 226-27 (1964) (approving post-

judgment supplemental complaint); see also Keith, 858 F.2d at 474 (same).

The decision to grant a motion under Rule 15(d) requires courts to "balance

a number of competing factors" to determine the appropriateness of the

supplemental pleading requested.  See 6A Charles Alan Wright & Arthur R.

Miller, Fed. Prac. & Proc. Civ. § 1510 (3d ed. 2020).  Here, the opportunity for

complete adjudication of the controversy, considerations of judicial economy, the

reduction of expenditure of resources for both parties, and the lack of prejudice

against all parties weigh in favor of granting leave to file the supplemental

complaints.

## ARGUMENT

This Court should grant the Plaintiffs' request for leave to supplement their

complaints because a challenge to the EA is a continuation of their original causes

6

of action which have not been fully adjudicated.  Further, preserving the existing

record and taking advantage of this Court's extensive knowledge of the

controversy promotes judicial economy without prejudice to the other parties to

this litigation.

I.      **ALLOWING THESE SUPPLEMENTAL COMPLAINTS CHALLENGING THE SUFFICIENCY OF THE EA PROMOTES COMPLETE ADJUDICATION OF THE DISPUTE BETWEEN PARTIES**

Complete adjudication of Plaintiffs' original complaints requires granting

leave to challenge the EA because the sufficiency of an EA is central to the NEPA

challenge at the heart of this case.  Supplemental complaints should be allowed to

"promote as complete an adjudication of the dispute between parties as possible."

William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co., 668 F.2d 1014, 1057

(9th Cir. 1981).

In its summary judgment order on Plaintiffs' initial complaints, the Court

held that the Zinke Order is a final agency action and a major federal action

necessitating NEPA compliance.  Order at 24, 27 [Doc. 141].  However, the Court

deferred ruling on the proper remedy for Federal Defendants' NEPA violation and,

additionally, concluded that it "cannot reach [Plaintiffs' remaining] claims until

Federal Defendants have completed their environmental review."  Order at 30-31

[Doc. 141].  The remaining claims included the Tribe and Conservation Plaintiffs'

claim that the Zinke Order violated Federal Defendants' trust obligation to the

7

Northern Cheyenne Tribe and the State Plaintiffs' claims under the Mineral

Leasing Act and the Federal Land Policy and Management Act.

Subsequently, upon Plaintiffs' request for a determination that the EA did

not redress Federal Defendants' NEPA violation, the Court held that the adequacy

of that EA was not properly before it.  Remedy Order at 11, 21 [Doc. 170].

However, the Court stated that Plaintiffs were free to bring such a challenge to the

EA and that, "if Plaintiffs challenge the sufficiency of the EA and FONSI, the

Court likely possesses the authority to determine whether the agency's

environmental review complied with the Mineral Leasing Act, the Federal Land

Policy and Management Act, and whether Federal Defendant's fulfilled their trust

obligations to the Northern Cheyenne Tribe."  Id. at 20-21.  The Court should

allow these supplemental complaints challenging the sufficiency of the EA to

promote the complete adjudication of the original and outstanding claims

dependent on that analysis.

## II.    THE COURT SHOULD GRANT LEAVE TO FILE THESE SUPPLEMENTAL COMPLAINTS BECAUSE ANALYSIS OF THE EA IS A CONTINUATION OF THE ORIGINAL CAUSE OF ACTION

Leave to supplement the complaint is warranted here, because the proposed

complaint represents a "discrete and logical extension of the original claims in the

case."  San Luis & Delta-Mendota Water Auth., 236 F.R.D. at 501.  Rule 15(d)

imposes a low relational bar and supplemental claims need only "have some

8

relation to the claim set forth in the original proceeding." Keith, 858 F.2d at 474 (quoting 3 J. Moore, Moore's Federal Practice ¶ 15.16[3] (1985)); see also Defs. of Wildlife v. U.S. Army Corps of Eng'rs, No. CV-15-14-GF-BMM, 2017 WL 1405732, at *6 (D. Mont. Apr. 19, 2017) (allowing a Fourth Supplemental Complaint that would "logically [] expand the scope" of the litigation to include an EIS and ROD that were produced in response to the Court's order). Similarly, supplemental complaints should be allowed where there the complaint "incorporate[s] by reference" the allegations contained in the original complaint and the events giving rise to the new claims are a "continuation of the old cause of action." Inglis & Sons, 668 F.2d at 1056-58 (citing Griffin, 377 U.S. at 226-27).

Here, Plaintiffs seek to challenge whether the EA satisfies the Federal Defendants' NEPA obligation to evaluate their decision to re-open all federal public lands to coal leasing. Thus, Plaintiffs' supplemental complaints challenge the same major federal action as their original complaints, and incorporate their initial complaints that formed the basis of the Court's Order finding that Federal Defendants' decision to revoke the federal coal-leasing moratorium necessitates NEPA compliance. Plaintiffs' supplemental complaints address Federal Defendants' actions that were prompted by Plaintiffs' original complaints and the Court's Order, alleging that Federal Defendants continue to fail to satisfy their NEPA obligations. Under these circumstances, "[t]o force plaintiffs to file new

lawsuits to litigate what are essentially continuations of their original suits would waste judicial resources."  Habitat Educ. Ctr., Inc. v. Kimbell, 250 F.R.D. 397, 402 (E.D. Wis. 2008)

The circumstances giving rise to Plaintiffs' supplemental complaints here are similar to those addressed by the U.S. Supreme Court in Griffin and the Ninth Circuit Court of Appeals in Keith.  In Griffin, the Court held that a supplemental complaint was appropriate to address the ongoing segregation of schools by the defendant county after the Court had previously held that the county's actions to maintain segregation were unconstitutional, and the county's subsequent actions were "a part of continued, persistent efforts to circumvent" the Court's original order.  Griffin, 377 U.S. at 226-27.  And in Keith, the Court held that the plaintiffs could file a supplemental complaint to challenge a city's failure to provide replacement housing for residents displaced by construction of a freeway, where the plaintiffs' original complaint, and subsequent consent decree and court order also addressed the provision of replacement housing.  Keith, 858 F.2d at 474 (stating "there is clearly a relationship among the claims in this action and the claims in the original action").  Thus, in each case, the plaintiffs were allowed to supplement their complaints to challenge post-judgment conduct by defendants that the plaintiffs claimed still fell short of legal requirements they sought to enforce in their original complaints.

10

Likewise, here, the focal point of Plaintiffs' original and supplemental complaints are the same—Federal Defendants' failure to comply with NEPA when terminating the federal coal-leasing moratorium. Because Federal Defendants' actions after this Court's April 19, 2019 Order holding that the issuance of the Zinke Order violated NEPA still fall short of statutory requirements, Plaintiffs' supplemental complaints are a "logical extension" of their original complaints, and should be allowed. San Luis & Delta-Mendota Water Auth., 236 F.R.D. at 501.

## III. THE COURT SHOULD GRANT LEAVE TO FILE THESE SUPPLEMENTAL COMPLAINTS TO PROMOTE JUDICIAL ECONOMY

Because the leave sought here is to challenge the same major federal action on supplemental grounds, it should be granted in the interest of judicial economy and convenience. "The clear weight of authority . . . in both the cases and the commentary, permits the bringing of new claims in a supplemental complaint to promote the economical and speedy disposition of the controversy." Keith, 858 F.2d at 473; see also San Luis & Delta-Mendota Water Auth., 236 F.R.D. at 499 (finding that allowing supplemental claims "serves the interests of judicial economy" where the district court has developed "extensive knowledge of the relevant law [and] background"); see also Ohio Valley Envtl. Coal. v. U.S. Army Corps of Eng'rs, 243 F.R.D. 253, 257 (S.D. W. Va. 2007) (Supplemental actions brought by environmental organizations were allowed where the legal issues were

11

"essentially identical" and the court would be able to avoid the cost and waste of separate actions).

As a matter of judicial economy and convenience, this Court should favor hearing the additional claims, rather than requiring Plaintiffs to bring the claims in a separate action.  The cases initiated by the Tribe and Conservation Plaintiffs and the State Plaintiffs have already been consolidated, and this Court is already familiar with the facts, the existing record that will largely form the basis for adjudicating the supplemental claims, and the claims at issue in these matters.

Importantly, allowing supplemental complaints here would preserve the existing record, with supplementation of the record only as necessary in connection with Federal Defendants' preparation of the EA.  Preserving the existing record is especially important in this matter, where the record is comprised of 87,375 pages, and required nearly a year to produce following a contested motion to supplement and a contested reconsideration motion.  The supplemental claims sought to be added here serve "the efficient administration of justice" because their addition would "enabl[e] [the] court to … avoid the cost, delay and waste of separate actions" and entirely separate administrative records. Keith, 858 F.2d at 473 (quoting New Amsterdam Casualty Co. v. Waller, 323 F.2d 20, 28–29 (4th Cir.1963), cert. denied, 376 U.S. 963 (1964)); see also San Luis & Delta-Mendota Water Auth., 236 F.R.D. at 501 (granting Rule 15(d)

12

motion where "allowing supplementation serves the interest of judicial economy, as consuming administrative and judicial resources of the court in not having to open a new case, randomly assigning it, going through the related-case low number analysis, and initiating Rule 16 scheduling as if this were a new case, do not serve judicial economy").

Supplemental complaints would also preserve the existing parties to these actions.  In each case, the Court received separate motions to intervene from Montana, Wyoming, and the National Mining Association, accompanied by numerous motions for *pro hac vice* admission to the Court.  Should Plaintiffs be required to initiate new actions, those Defendant-Intervenors will not be parties, and will be required to prepare and file new motions to intervene.

In sum, the filing of supplemental complaints will obviate the need for numerous motions, the filing of an entirely new administrative record, and other administrative tasks that would unnecessarily consume the Courts' and party's resources and delay resolution of this case.

## IV.  THE COURT SHOULD GRANT LEAVE TO FILE THESE SUPPLEMENTAL COMPLAINTS BECAUSE THEY DO NOT UNDULY PREJUDICE DEFENDANTS

The addition of supplemental claims will not prejudice any other party; indeed, Federal Defendants themselves suggested that Plaintiffs bring further claims to challenge the EA through supplemental complaints after judgment is

13

entered.  <u>See</u> Fed. Defs.' Resp. Br. on Remedy at 2, 13 [Doc. 164].  Far from

prejudicing other parties, allowing supplementation will likely save Federal

Defendants or Defendant-Intervenors resources by preserving the existing parties,

as well as the existing administrative record, as described above.  <u>See</u> <u>Raduga</u>

<u>USA Corp. v. U.S. Dept. of State</u>, 440 F. Supp. 2d 1140, 1150-51 (S.D. Cal. 2005)

(supplemental complaints were allowed following the issuance of relief and the

entry of judgment, when the defendant was not prejudiced by the motion).

     Further, supplementation would not expose Federal Defendants or

Defendant-Intervenors to litigation to which they would not already be subject.

Whether Plaintiffs file supplemental complaints or entirely new actions, their

claims will be the same.  The only difference is the efficiency achieved through

supplementation, which is the goal of the present motion.

## V.   THE COURT SHOULD EXERCISE ITS DISCRETION TO GRANT LEAVE TO FILE SUPPLEMENTAL COMPLAINTS AT THIS POINT IN LITIGATION

     Plaintiffs' motion for leave to supplement their complaints is timely, and

indeed, follows the sequencing Federal Defendants and this Court have suggested.

As noted, Federal Defendants argued in their opposition to Plaintiffs' request for a

vacatur remedy that "this case can now be closed and judgment entered under Fed.

R. Civ. P. 58.  Any claims concerning the adequacy of the EA and FONSI must be

brought through a new or supplemental complaint."  Fed. Defs.' Resp. to Pls.'

Sub. Br. on Remedy at 2 [Doc. 164] (Apr. 21, 2020); see also id. at 13 (same).  The

Court stated its agreement.  Remedy Order at 10, 24 [Doc. 170] (May 22, 2020).

The judgment entered by this Court on May 22, 2020 does not preclude this Court

from considering Plaintiffs' supplemental complaints under Rule 15(d).  See

Griffin, 377 U.S. at 226-27 (allowing a supplemental complaint after the district

court had entered judgment where there was a clear relationship among the

supplemental and original claims; and emphasizing Rule 15(d) as one of judicial

economy and convenience); see also Keith, 858 F.2d at 474 (allowing

supplementation after final court order and entry of consent decree); Ne. Ohio

Coal. for the Homeless v. Husted, No. 2:06-CV-00896, 2015 WL 13034990, at *5

(S.D. Ohio Aug. 7, 2015), as amended nunc pro tunc, No. 2:06-CV-896, 2016 WL

8223066 (S.D. Ohio Mar. 17, 2016) (affirming that "when a plaintiff seeks

additional relief, he or she is permitted to supplement the complaint pursuant to the

requirements of Rule 15 after the entry of a final judgment such as a consent

decree").

     Instead, "[t]he district court has discretion to hear a motion to file a

supplemental pleading at any time during which the action is before it."  6A

Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1509 (3d ed.

2020).  This case is still before the Court as the deadline to file appeals has not yet

run and, even after it does, this Court "continues to have jurisdiction after issuing

15

judgment on the merits for the purposes of addressing attorneys' fees." <u>Applied Materials, Inc. v. MultiMetrixs, LLC</u>, No. C 06-7372 MHP, 2009 WL 10690770, at *5 (N.D. Cal. Nov. 23, 2009) (citing court's continuing jurisdiction over attorneys' fees in granting motion to supplement).  Thus, Plaintiffs are "not seeking to reopen a stale, unrelated matter from years ago but an action that is still active." <u>Id.</u>

In the interest of complete adjudication of this active controversy and judicial economy, supplementation is appropriate.

## CONCLUSION

For the foregoing reasons, the Tribe and Conservation Plaintiffs and State Plaintiffs respectfully request that their motion to supplement their complaints be granted.

Respectfully submitted this 20th day of July, 2020.

/s/ Jenny K. Harbine
Jenny K. Harbine
Amanda D. Galvan
Earthjustice
313 East Main Street
Bozeman, MT 59715
jharbine@earthjustice.org
agalvan@earthjustice.org
(406) 586-9699 | Phone
(406) 586-9695 | Fax

*Counsel for Plaintiffs in*
*Case No. CV-17-30-BMM*

16

Wyatt F. Golding (*pro hac vice*)
Ziontz Chestnut
2101 Fourth Avenue, Suite 1230
Seattle, WA 98121
wgolding@ziontzchestnut.com
(206) 448-1230 | Phone
(206) 448-0962 | Fax

*Counsel for Plaintiff Northern Cheyenne Tribe*

Michael Saul (*pro hac vice*)
Center for Biological Diversity
1536 Wynkoop Street, Suite 421
Denver, CO 80202
MSaul@biologicaldiversity.org
(303) 915-8308 | Phone

Anchun Jean Su (*pro hac vice*)
Center for Biological Diversity
1411 K St. NW, Suite 1300
Washington, D.C. 20005
jsu@biologicaldiversity.org
(202) 849-8401 | Phone

*Counsel for Plaintiff Center for Biological Diversity*

  /s/ Roger Sullivan
ROGER SULLIVAN
DUSTIN LEFTRIDGE
McGarvey, Heberling, Sullivan
& Lacey, P.C.
345 1st Ave. E.
Kalispell, Montana 59901-5341
(406) 752-5566
RSullivan@McGarveyLaw.com

*Counsel for State Plaintiffs in Case No. CV-17-42-BMM*

17

XAVIER BECERRA
Attorney General of California
DAVID ZONANA
Supervising Deputy Attorney General

/s/ George Torgun

GEORGE TORGUN (*pro hac vice*)
ELIZABETH B. RUMSEY (*pro hac vice*)
Deputy Attorneys General
1515 Clay Street, 20th Floor
Oakland, CA 94612-0550
Telephone: (510) 879-1002
George.Torgun@doj.ca.gov

*Counsel for State of California*


HECTOR BALDERAS
Attorney General of New Mexico

/s/ Bill Grantham

BILL GRANTHAM (*pro hac vice*)
Assistant Attorney General
201 Third St. NW, Suite 300
Albuquerque, NM 87102
Telephone: (505) 717-3520
wgrantham@nmag.gov

*Counsel for State of New Mexico*


LETITIA JAMES
Attorney General of New York

/s/ Andrew G. Frank

ANDREW G. FRANK (*pro hac vice*)
Assistant Attorney General
New York Attorney General's Office
28 Liberty Street
New York, NY 10005
Telephone: 212-416-8271
Email: andrew.frank@ag.ny.gov

*Counsel for State of New York*

18

ROBERT W. FERGUSON
Attorney General of Washington

 /s/ William R. Sherman
WILLIAM R. SHERMAN (*pro hac vice*)
Assistant Attorney General
AURORA JANKE, MT Bar No.
39522610
Assistant Attorney General
800 5th Ave Suite 2000, TB-14
Seattle, WA 98104-3188
Telephone: (206) 442-4485
Email: bill.sherman@atg.wa.gov

*Counsel for State of Washington*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served today via the Court's

CM/ECF system on all counsel of record.

/s/Jenny K. Harbine
Jenny K. Harbine