JENNY K. HARBINE
AMANDA D. GALVAN
Earthjustice
P.O. Box 4743
Bozeman, MT 59772-4743
jharbine@earthjustice.org
agalvan@earthjustice.org
(406) 586-9699 | Phone

*Counsel for Plaintiffs in*
*Case No. 4:17-cv-30-BMM*

GEORGE TORGUN (*pro hac vice*)
ELIZABETH B. RUMSEY (*pro hac vice*)
Deputy Attorneys General
1515 Clay Street, 20th Floor
Oakland, CA 94612-0550
Telephone: (510) 879-1002
George.Torgun@doj.ca.gov

*Counsel for State of California in*
*Case No. 4:17-cv-42-BMM*

**[Additional Counsel in Signature Block]**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| CITIZENS FOR CLEAN ENERGY, et al., <br>         Plaintiffs, <br><br>  and <br><br> THE NORTHERN CHEYENNE TRIBE, <br><br>         Plaintiff, <br><br>    v. <br><br> U.S. DEPARTMENT OF THE INTERIOR, et al., <br><br>         Defendants, | Case No. 4:17-cv-30-BMM <br><br> **PLAINTIFFS' JOINT BRIEF IN OPPOSITION TO INTERVENOR-DEFENDANT'S MOTION TO DISMISS** |

and

STATE OF WYOMING, <u>et</u> <u>al.</u>,

          Defendant-Intervenors.

STATE OF CALIFORNIA, <u>et</u> <u>al.</u>,

          Plaintiffs,

     v.

U.S. DEPARTMENT OF THE INTERIOR, <u>et</u> <u>al.</u>,

          Defendants,

and

STATE OF WYOMING, <u>et</u> <u>al.</u>,

          Defendant-Intervenors.

Case No. 4:17-cv-42-BMM
(consolidated case)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION ....................................................................................1

ARGUMENT ..........................................................................................2

I.     DEFENDANTS FACE A HEAVY BURDEN TO DEMONSTRATE
      MOOTNESS ....................................................................................2

II.    PLAINTIFFS' CASES CONTINUE TO PRESENT A LIVE
      CONTROVERSY ............................................................................3

        A.    The Haaland Order Did Not Eliminate the Legal and Practical
             Effects of the Challenged Decision, Which Continue to
             Threaten Harm to Plaintiffs' Interests....................................4

        B.    Effective Relief is Available to Address Plaintiffs' Harms. ................9

III.   FEDERAL DEFENDANTS' "VOLUNTARY CESSATION" OF
      COAL LEASING IS ILLUSORY AND, IN ANY EVENT, COULD
      NOT MOOT PLAINTIFFS' CLAIMS ........................................14

CONCLUSION ....................................................................................15

# TABLE OF AUTHORITIES
## FEDERAL CASES

Cantrell v. City of Long Beach,
    241 F.3d 674 (9th Cir. 2001) ......................................................................*passim*

Cnty of Los Angeles v. Davis,
    440 U.S. 625 (1979)................................................................................14

Ellis v. Railway Clerks,
    466 U.S. 435 (1984)............................................................................ 2-3, 9

Erie v. Pap's A.M.,
    529 U.S. 277 (2000)................................................................................2

Fikre v. Fed. Bureau of Investigation,
    904 F.3d 1033 (9th Cir. 2018) .................................................. 14, 14-15

Garcia v. Lawn,
    805 F.2d 1400 (9th Cir. 1986) ..............................................................10

Knox v. Serv. Emps. Int'l Union, Loc. 1000,
    567 U.S. 298 (2012)......................................................... 2-3, 3, 9

Cal. ex rel. Lockyer v. U.S. Dep't. of Agric.,
    575 F.3d 999 (9th Cir. 2009) ..............................................................11

Logan v. U.S. Bank Natl Ass'n,
    722 F.3d 1163 (9th Cir. 2013) .............................................................15

McCormack v. Herzog,
    788 F.3d 1017 (9th Cir. 2015) .............................................................14

Nat. Res. Def. Council v. Pruitt,
    No. 16-CV-02184-JST, 2017 WL 5900127 (N.D. Cal. Nov. 30,
    2017) ......................................................................................................9

Nw. Env't Def. Ctr. v. Gordon,
    849 F.2d 1241 (9th Cir. 1988) ...................................................*passim*

United States v. Geophysical Corp.,
    732 F.2d 693 (9th Cir. 1984) .......................................................... 9-10

United States v. W.T. Grant Co.,
    345 U.S. 629 (1953)....................................................................................15

Utah Physicians for a Healthy Env't v. BLM,
    528 F.Supp.3d 1222 (D. Utah 2021)..........................................................12

W. States Ctr., Inc. v. Dep't of Homeland Sec.,
    Case No. 3:20-CV-01175-JR, 2021 WL 1896965 (D. Or. May 11,
    2021) ............................................................................................................9

Western Organization of Resource Councils v. Zinke,
    892 F.3d 1234 (D.C. Cir. 2018)..............................................................13

Wild Wilderness v. Allen,
    871 F.3d 719 (9th Cir. 2017) ............................................................10, 13

Wise v. City of Portland,
    539 F. Supp. 3d 1132 (D. Or. 2021) ..........................................................9

## OTHER AUTHORITIES

Assoc. Press, Interior Head Haaland revokes Trump-era orders on energy (Apr. 16, 2021), at https://apnews.com/article/joe-biden-climate-climate-change-summits-environment-9802db0231a662c6849316acafee3250...............................................2

Sec'y of the Interior, Revocation of Secretary's Orders Inconsistent with Protecting Public Health and the Environment and Restoring Science to Tackle the Climate Crisis, Secretarial Order No. 3398 (Apr. 16, 2021), at https://www.doi.gov/sites/doi.gov/files/elips/documents/so-3398-508_0.pdf.........1

U.S. Energy Information Administration, Short-term Energy Outlook (Jan. 11, 2022), at https://www.eia.gov/outlooks/steo/........................................................11

## INTRODUCTION

Plaintiffs in these consolidated actions oppose Defendants' misguided efforts to preclude this Court's review of the Federal Defendants' conduct with respect to federal coal leasing. These cases are not moot. This Court should deny Defendant-Intervenor National Mining Association's ("NMA") motion to dismiss because the legal and practical harms effectuated by Secretarial Order 3348 ("Zinke Order"), which rescinded a moratorium on federal coal leasing, present a live controversy for which the Court can provide effective relief.

In April 2021, Secretary of the Interior Debra Haaland Secretarial Order 3398 (the "Haaland Order") that nominally "revoked" the Zinke Order.[1] However, this Court already correctly found that the Haaland Order did not prevent new coal leasing or eliminate the harm to Plaintiffs that is at the center of this controversy. Order Denying Mot. for Stay 5 (ECF No. 206). On the contrary, Federal Defendants have been clear that the Haaland Order did not reverse or otherwise affect Federal Defendants' 2017 decision to re-open federal public lands to new coal leasing, or the Federal Defendants' final environmental review of that decision ordered by this Court, which are the actions that Plaintiffs challenge in

---

[1] Sec'y of the Interior, Revocation of Secretary's Orders Inconsistent with Protecting Public Health and the Environment and Restoring Science to Tackle the Climate Crisis, Secretarial Order No. 3398 (Apr. 16, 2021), at https://www.doi.gov/sites/doi.gov/files/elips/documents/so-3398-508_0.pdf.

1

this litigation.[2] Simply put, the decision to restart the coal leasing that Plaintiffs

challenge remains in effect notwithstanding the Haaland Order, and thus Federal

Defendants remain free to engage in the leasing that harms Plaintiffs' interests.

Accordingly, this is a live controversy and NMA's motion to dismiss this litigation

should be denied.[3]

## ARGUMENT

## I.  DEFENDANTS FACE A HEAVY BURDEN TO DEMONSTRATE MOOTNESS

In seeking dismissal on mootness grounds, Defendants face a "heavy"

burden. Cantrell v. City of Long Beach, 241 F.3d 674, 678 (9th Cir. 2001) (citing

Nw. Env't Def. Ctr. v. Gordon, 849 F.2d 1241, 1244 (9th Cir. 1988)). "A case

becomes moot only when it is impossible for a court to grant 'any effectual relief

whatever' to the prevailing party." Knox v. Serv. Emps. Int'l Union, Loc. 1000,

567 U.S. 298, 307–08 (2012) (quoting Erie v. Pap's A.M., 529 U.S. 277, 287

(2000)). "[A]s long as the parties have a concrete interest, however small, in the

---

[2] Assoc. Press, Interior Head Haaland revokes Trump-era orders on energy (Apr. 16, 2021), at https://apnews.com/article/joe-biden-climate-climate-change-summits-environment-9802db0231a662c6849316acafee3250.

[3] Federal Defendants argued mootness in their brief in support of their cross-motion for summary judgment, Fed. Defs.' Br. in Supp. of Cross-Mot. for Summ. J. (ECF No. 220) ("Fed. Br."), which they subsequently incorporated by reference in their brief is support of NMA's motion to dismiss, Fed Defs.' Br. in Response to Mot. to Dismiss (ECF No. 221). Accordingly, Plaintiffs respond to Federal Defendants' summary judgment arguments in this filing.

outcome of the litigation, the case is not moot." Id. (quoting Ellis v. Railway Clerks, 466 U.S. 435, 442 (1984)).

The mootness standard is even more demanding in the National Environmental Policy Act ("NEPA") context.  Cantrell, 241 F.3d at 678.  As the Ninth Circuit has explained, this is because "if the completion of the action challenged under NEPA is sufficient to render the case nonjusticiable, entities could merely ignore the requirements of NEPA, build its structures before a case gets to court, and then hide behind the mootness doctrine."  Id. (internal quotation marks omitted).  Thus, even where a challenged project has already been completed, NEPA cases still present a live controversy if additional environmental review could result in consideration of new alternatives or mitigation measures. Id. at 678–79; see also Nw. Env't Def. Ctr., 849 F.2d at 1245 ("The fact that the alleged violation has itself ceased is not sufficient to render a case moot.  As long as effective relief may still be available to counteract the effects of the violation, the controversy remains live and present.").

As described below, Defendants cannot meet these high standards for dismissal on mootness grounds.

## II.   PLAINTIFFS' CASES CONTINUE TO PRESENT A LIVE CONTROVERSY

Defendants have not met their "heavy burden" to show that Plaintiffs no longer have a concrete interest in the outcome of the litigation and that it would be

impossible for this Court to grant any effective relief.  Cantrell, 241 F.3d at 678.

Federal Defendants continue to carry out the policy that was initiated through the

Zinke Order, which effectively allowed new federal coal leasing on public lands.

The Haaland Order revoked the Zinke Order, but the Haaland Order did not

terminate the policy authorizing new leasing.  Because Plaintiffs challenge that

decision to renew federal coal leasing without complying with NEPA and other

legal obligations, and that decision and associated inadequate NEPA compliance

remain in effect, Plaintiffs' cases present a live controversy for which effective

relief is available.

**A.     The Haaland Order Did Not Eliminate the Legal and Practical Effects of the Challenged Decision, Which Continue to Threaten Harm to Plaintiffs' Interests.**

Plaintiffs' claims are not moot because the action they challenge—the

decision to rescind a moratorium on federal coal leasing and re-open federal public

lands to new coal mining, and its environmental review of that decision—remains

in effect and continues to threaten harm to their interests.  Defendants' contrary

mootness arguments are premised on a strawman.  Defendants argue that

Plaintiffs' claims are based entirely "upon the Zinke Order, or the EA and FONSI

prepared for the Zinke Order, as the 'final agency action' under the Administrative

Procedure Act ("APA") to establish jurisdiction in this Court, and as the 'major

federal action' under NEPA."  NMA Br. in Supp. of Mot. to Dismiss 8 (ECF No.

212) ("NMA Br."); see also Fed. Br. 9 (ECF No. 220); State Intervenor-
Defendants' Br. in Supp. of Mot. to Dismiss 4-5 (ECF No. 222) ("State Br.").  On
this basis, Defendants assert that the Haaland Order eliminated that final agency
action and terminated this Court's jurisdiction to review it.  NMA Br. 8.  But
Defendants' suggestion that this Court's jurisdiction rests on a piece of paper and
not the agency decision to allow coal leasing on public lands, which remains in
effect despite the Haaland Order, cannot be sustained under the governing
mootness standards.

First, Defendants wrongly argue that Plaintiffs challenge only the Zinke
Order rather than the decision it embodied.  Plaintiffs' complaints specifically
challenge Federal Defendants' decision to open federal public lands to new
development without adequate environmental review.  For example, the Tribe and
Conservation Organizations' First Amended Complaint alleges that "because the
Zinke Order opens the door to federal coal leasing and its harmful environmental
impacts without adequately evaluating those impacts or alternatives to avoid
them—including in the EA—the Zinke Order and the federal coal leasing it
authorizes continue to violate NEPA."  ECF No. 176 ¶ 1; accord id. ¶¶ 42, 49.  The
State Plaintiffs challenge Federal Defendants' decision "to restart the federal coal
leasing program based on an inadequate and overly narrow environmental review
that fails to assess the environmental impacts of the program, in violation of

[NEPA]" and "without evaluating whether the program is in the public interest or ensuring that it will provide fair market value to the public, in violation of the Mineral Leasing Act … and the Federal Land Policy and Management Act."  ECF No. 173-2 ¶ 1 (ECF 156 in consolidated case CV-17-42-GF-BMM) (citations omitted).  Thus, Federal Defendants' decision to open public lands to coal leasing, not just the issuance of the Zinke Order, forms the basis of these actions.  Even after the Haaland Order, Federal Defendants' decision to open public lands to coal leasing remains in effect and continues to harm to Plaintiffs.

Second, this Court has already decided the key issue presented by Defendants' mootness arguments, finding that the Haaland Order did not halt or redress the harm at the center of these cases.  Federal Defendants previously cited the Haaland Order's nominal revocation of the Zinke Order and direction to review the federal coal-leasing program as grounds for an abeyance of these cases.  Fed. Mot. to Stay 2 (ECF No. 199).  In denying the stay motion, this Court noted that regardless of the Haaland Order, "BLM remains capable of issuing coal leases—as it has for more than 4,000 acres of public land since the Zinke Order's publication" and "[l]ease applications remain pending for thousands of acres encompassing at least one billion tons of coal."  Order Denying Mot. for Stay 5 (ECF No. 206).  Today, seven months later, the circumstances summarized by the Court are unchanged.  Even now, "Federal Defendants fail[] to provide a timeline for the six

6

month-old [now nearly fourteen month-old] federal review process—and that process only will result in a report.  Policy change will take yet more time." Id. at 6.  As this Court recognized, continued coal development poses potential harm to the Plaintiffs' interests in this litigation.  Id. at 5.

This Court's previous decision on the effect of the Haaland Order remains correct.  The Haaland Order did not eliminate any of the practical or legal consequences that formed the basis of this Court's April 19, 2019 order on the merits of Plaintiffs' initial complaints.  Ruling for Plaintiffs on summary judgment, this Court held that the Zinke Order was a final agency action under the APA and a major federal action under NEPA because of its practical and legal consequences.  Order 25–27 (ECF No. 141).  Specifically, this Court concluded that Federal Defendants took final agency action because "[t]he legal consequences that flow from the Zinke Order are evident.  With the Zinke Order's implementation, all BLM land became subject to lease applications with terms of twenty years." Id. at 26.  In holding that the Zinke Order constituted major federal action, the Court agreed with Plaintiffs that "the moratorium protected public lands of historical, cultural, spiritual, recreational, and vocational significance from development [and] the Zinke Order immediately lifted those protections without any environmental review." Id. at 23.  Those protections remain lifted.  Rather than reversing Federal Defendants' decision to renew coal leasing on federal public

7

lands, the Haaland Order did not reinstate the former coal-leasing moratorium nor "take any action on coal development," and thus as a practical matter leaves in place Interior's decision to reopen public lands to coal leasing.[4]

Nor did the Order withdraw or otherwise affect the Final Environmental Assessment or Finding of No Significant Impact that Plaintiffs now challenge in their amended complaints.  Thus, the Bureau of Land Management ("BLM") remains free to continue leasing coal on federal lands despite its NEPA violations.  Indeed, BLM has stated it would provide Plaintiffs advance notice of lease sales or modifications, but it has never represented that such leasing will not occur.  ECF No. 213, ¶ 3.

Although the Haaland Order did not revoke the authorization for new leasing, it was not silent on federal coal leasing policy.  Instead, that Order gave Federal Defendants 60 days—until June 15, 2021—to review the Zinke Order and submit a report with a "plan and timeline to reverse, amend or update" the coal-leasing policy embodied by the Zinke Order.  Haaland Order § 5.  However, to date, no such review has evidently taken place.  As a result, the coal-leasing policy

---

[4] See supra, note 2.

at issue in this case remains unchanged from the policy initiated by the Zinke Order.[5]

Because Federal Defendants' decision to restart federal coal leasing remains unaffected by the Haaland Order, Plaintiffs retain "a concrete interest … in the outcome of the litigation" and "the case is not moot." Knox, 567 U.S. at 307–08 (quoting Ellis, 466 U.S. at 442).

**B.    Effective Relief is Available to Address Plaintiffs' Harms.**

This Court's ongoing jurisdiction to resolve Plaintiffs' claims on their merits is further established by the availability of effective relief to redress the harms at the center of this controversy.  Nw. Env't Def. Ctr., 849 F.2d at 1244 ("The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted.") (quoting United States v. Geophysical

---

[5] The State Defendant-Intervenors' suggestion that the change in presidential administrations or existence of a coal-leasing review alone moot this case is wrong. State Br. 3-4.  None of the cases cited for this proposition suggest mere political changes—as opposed to actual changes in the challenged conduct—render a case moot.  See Wise v. City of Portland, 539 F. Supp. 3d 1132, 1145 (D. Or. 2021) (revocation of challenged executive order removed authority for use of agency resources to engage in the challenged conduct); W. States Ctr., Inc. v. Dep't of Homeland Sec., Case No. 3:20-CV-01175-JR, 2021 WL 1896965, at *1-2 (D. Or. May 11, 2021) (case moot where challenged federal policing policy written in presidential tweets was removed and not continued by new administration); Nat. Res. Def. Council v. Pruitt, No. 16-CV-02184-JST, 2017 WL 5900127, at *3 (N.D. Cal. Nov. 30, 2017) (case moot where emergency drought declaration that had authorized challenged permitting activity was withdrawn).

Corp., 732 F.2d 693, 698 (9th Cir. 1984)).  Namely, this Court may vacate Federal Defendants' decision to terminate the protections afforded by the coal-leasing moratorium unless and until they comply with NEPA's requirements to adequately evaluate the consequences of that decision.  See Wild Wilderness v. Allen, 871 F.3d 719, 725 (9th Cir. 2017) (finding case "not moot" where "court could order a new NEPA analysis with a broader purpose and need or with additional alternatives; issue injunctive relief…; or simply order [federal agency] to issue a full EIS").

Defendants' argument that this Court is limited to granting only the precise relief Plaintiffs requested in their complaints—vacating the Zinke Order—is unfounded.  "[C]ourts of equity have broad discretion in shaping remedies."  Garcia v. Lawn, 805 F.2d 1400, 1403 (9th Cir. 1986).  Thus, in deciding a mootness issue, "the question is not whether the precise relief sought at the time the [complaint] was filed is still available.  The question is whether there can be any effective relief."  Id. (emphasis added); see also Nw. Env't Def. Ctr., (rejecting mootness argument and stating that, "[t]he plaintiffs are not required … to have asked for the precise form of relief that the district court may ultimately grant").

Moreover, Plaintiffs have always been clear that it is the decision reflected in the Zinke Order, rather than the piece of paper it was written on, that harms

10

Plaintiffs' interests.  The decision in the Zinke Order to restart to coal leasing

remains in place today, even though the Order has nominally been revoked.  That

decision "threatens to unleash significant harm to water and air quality, public

health, and our public lands."  ECF No. 176, ¶ 3.  As this Court recognized in its

April 19, 2019 Order, the federal coal-leasing moratorium prevented

environmental harm from new coal leases, and the Zinke Order fundamentally took

these "substantive environmental protections off the books."  Order 21 (ECF No.

141) (analogizing to Cal. ex rel. Lockyer v. U.S. Dep't. of Agric., 575 F.3d 999,

1015 (9th Cir. 2009)).  Without these protections, Federal Defendants are free to

issue coal leases.[6]

Further, in the NEPA context, a case is not moot even after a challenged

action is completed if additional environmental review could result in

consideration of new alternatives or mitigation measures.  Cantrell, 241 F.3d at

678–79.  Such is the case here.  To redress procedural and environmental harm

from Federal Defendants' NEPA violation, this Court could provide effective relief

---

[6] Federal Defendants' statement that they have not issued new coal leases since the
Haaland Order issued is cold comfort.  Fed. Br. 3.  Not only do Federal Defendants
remain at liberty to issue future coal leases, but recent data show that coal
production in the United States rose 8% in 2021 and is projected to further increase
in 2022.  U.S. Energy Information Administration, Short-term Energy Outlook
(Jan. 11, 2022), at https://www.eia.gov/outlooks/steo/.  Thus, demand for coal
continues.

11

by ordering Federal Defendants to complete an adequate environmental review of their decision to reopen federal lands to coal leasing.  A thorough NEPA process may yield mitigation or alternatives that alleviate or eliminate harm to Plaintiffs from potential new leasing, including measures such as incorporating the cost of coal's climate impacts into new lease terms or ending federal coal leasing altogether.

In addition to addressing harm from new leases, additional environmental review could also alleviate the ongoing harm to Plaintiffs from past leasing under the Zinke Order.  For example, after unlawfully lifting the moratorium, in August 2018 BLM approved an expansion of the Alton mine onto more than 2,000 acres of public lands in southern Utah.  Supp_AR-10, 18.  Although a federal district court in Utah ruled in March 2021 that BLM's NEPA analysis for the 30-million-ton mine expansion failed to adequately consider indirect and cumulative climate impacts, Utah Physicians for a Healthy Env't v. BLM, 528 F.Supp.3d 1222, 1227, 1237 (D. Utah 2021), the court did not vacate the lease and BLM has allowed mining in the expansion area to continue unabated.  By BLM's own admission, the Alton lease could not have gone forward without the Zinke Order's illegal lifting of the coal leasing moratorium.  Supp_AR-10.  Additional environmental review on the decision to re-open public lands to coal leasing could yield mitigation measures and alternatives to inform BLM's action on the Alton coal lease on

12

remand, including a decision to cancel the unlawfully issued lease.  Because

additional environmental review could provide relief to the Plaintiffs by mitigating

or eliminating ongoing and future harm from the decision to reopen public lands to

coal leasing, this controversy is a live one.  Cantrell, 241 F.3d at 678–79; see also

Nw. Env't Def. Ctr., 849 F.2d at 1245; Wild Wilderness, 871 F.3d at 725.

　　　NMA opaquely contends that the revocation of the Zinke Order renders

Plaintiffs' litigation a purely "programmatic challenge" over which this Court

lacks jurisdiction, citing Western Organization of Resource Councils v. Zinke, 892

F.3d 1234 (D.C. Cir. 2018).  NMA Br. 13-14.  First, contrary to NMA's claim,

Plaintiffs do not ask the Court to impose a permanent moratorium or enact specific

policy changes.  Id. at 13.  Instead, Plaintiffs ask the Court to vacate BLM's

decision to end the coal-leasing moratorium that was premised on an unlawful

environmental assessment, and order BLM to conduct an adequate NEPA analysis

before it may renew coal leasing.  Second, this Court has already determined that

the decision to revoke the coal-leasing moratorium is a final agency action and a

major federal action subject to NEPA, and that is the action challenged here.  ECF

No. 141, at 19.  The Western Organization decision, which did not challenge final

agency action, is irrelevant.  892 F.3d at 1246.

　　　Because the Haaland Order does not prevent ongoing coal leasing based on

inadequate environmental review, this case is not moot.

## III. FEDERAL DEFENDANTS' "VOLUNTARY CESSATION" OF COAL LEASING IS ILLUSORY AND, IN ANY EVENT, COULD NOT MOOT PLAINTIFFS' CLAIMS

Because the Haaland Order did not eliminate Federal Defendants' challenged coal-leasing conduct, even temporarily, these cases present a live controversy, and the Court need not address the exceptions to mootness addressed in NMA's Brief.  See NMA Br. 14-17.  In any event, Federal Defendants' "voluntary cessation" of coal leasing could not moot this case, and NMA's contrary arguments are meritless.

"It is well-established … that 'voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case' unless 'it can be said with assurance that 'there is no reasonable expectation ...' that the alleged violation will recur' and 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'"  Fikre v. Fed. Bureau of Investigation, 904 F.3d 1033, 1037 (9th Cir. 2018) (quoting Cnty of Los Angeles v. Davis, 440 U.S. 625, 631 (1979)) (alteration in original).  Further, to establish mootness of a challenge to voluntarily rescinded government action, "the government must still demonstrate that the change in its behavior is 'entrenched' or 'permanent.'"  Id. (quoting McCormack v. Herzog, 788 F.3d 1017, 1025 (9th Cir. 2015)).  As the Ninth Circuit has explained, "there is no bright-line rule for application of the voluntary cessation doctrine"—including no requirement that the

14

voluntary action was motivated by the litigation—but "this much is apparent: a claim is not moot if the government remains practically and legally 'free to return to [its] old ways' despite abandoning them in the ongoing litigation." Id. at 1039 (quoting United States v. W.T. Grant Co., 345 U.S. 629, 632 (1953)); accord Logan v. U.S. Bank Natl Ass'n, 722 F.3d 1163, 1166 (9th Cir. 2013).

As discussed, not only did the Haaland Order fail to "completely and irrevocably eradicate[]" the effects of the Zinke Order, Fikre, 904 F.3d at 1037, Federal Defendants' statements at the time the Haaland Order was issued make clear that it did not affect their coal-leasing conduct at all.  See supra Pt. II.A.  And in its own brief arguing mootness, Federal Defendants claim only that "no coal leasing has occurred since the April 16 order was issued;" they do not state that no further leasing will occur.  Fed. Br. 3.  There is no practical or legal impediment to federal coal leasing in the future, and such coal leasing would violate NEPA and Federal Defendants' other legal obligations.  For this reason, too, Plaintiffs' cases are not moot.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask that the Court deny the Defendants' motions and supporting briefs to dismiss this case on mootness grounds.

15

Respectfully submitted on the 3rd day of February, 2022,

/s/ Jenny K. Harbine

Jenny K. Harbine
Amanda D. Galvan
Earthjustice
P.O. Box 4743
Bozeman, MT 59772-4743
jharbine@earthjustice.org
agalvan@earthjustice.org
(406) 586-9699 | Phone
(406) 586-9695 | Fax

*Counsel for Plaintiffs in*
*Case No. CV-17-30-BMM*

Wyatt F. Golding (*pro hac vice*)
Ziontz Chestnut
2101 Fourth Avenue, Suite 1230
Seattle, WA 98121
wgolding@ziontzchestnut.com
(206) 448-1230 | Phone
(206) 448-0962 | Fax

*Counsel for Plaintiff Northern*
*Cheyenne Tribe*

Michael Saul (*pro hac vice*)
Center for Biological Diversity
1536 Wynkoop Street, Suite 421
Denver, CO 80202
MSaul@biologicaldiversity.org
(303) 915-8308 | Phone

Anchun Jean Su (*pro hac vice*)
Center for Biological Diversity
1411 K St. NW, Suite 1300
Washington, D.C. 20005
jsu@biologicaldiversity.org
(202) 849-8401 | Phone

*Counsel for Plaintiff*
*Center for Biological Diversity*

16

/s/ Roger Sullivan
ROGER SULLIVAN
DUSTIN LEFTRIDGE
McGarvey, Heberling, Sullivan
& Lacey, P.C.
345 1st Ave. E.
Kalispell, Montana 59901-5341
(406) 752-5566
RSullivan@McGarveyLaw.com

*Counsel for State Plaintiffs in*
*Case No. CV-17-42-BMM*

ROB BONTA
Attorney General of California
DAVID ZONANA
Supervising Deputy Attorney General

/s/ George Torgun
GEORGE TORGUN (*pro hac vice*)
ELIZABETH B. RUMSEY (*pro hac vice*)
Deputy Attorneys General
1515 Clay Street, 20th Floor
Oakland, CA 94612-0550
Telephone: (510) 879-1002
George.Torgun@doj.ca.gov

*Counsel for State of California*

HECTOR BALDERAS
Attorney General of New Mexico

/s/ Bill Grantham
BILL GRANTHAM (*pro hac vice*)
Assistant Attorney General
201 Third St. NW, Suite 300
Albuquerque, NM 87102
Telephone: (505) 717-3520
wgrantham@nmag.gov

*Counsel for State of New Mexico*

17

LETITIA JAMES
Attorney General of New York

/s/ Andrew G. Frank
_____

YUEH-RU CHU (*pro hac vice*)
ANDREW G. FRANK (*pro hac vice*)
Assistant Attorney General
New York Attorney General's Office
28 Liberty Street
New York, NY 10005
Telephone: 212-416-8271
Email: andrew.frank@ag.ny.gov

*Counsel for State of New York*


ROBERT W. FERGUSON
Attorney General of Washington

/s/ Aurora Janke
_____

WILLIAM R. SHERMAN (*pro hac vice*)
Assistant Attorney General
AURORA JANKE, MT Bar No.
39522610
Assistant Attorney General
800 5th Ave Suite 2000, TB-14
Seattle, WA 98104-3188
Telephone: (206) 442-4485
Email: aurora.janke@atg.wa.gov

*Counsel for State of Washington*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION**

Pursuant to Local Rule 7.1(d)(2), I certify that this brief contains fewer than 6,500 words.  I relied on my Microsoft Word word-processing tool to obtain the count.

s/ Jenny K. Harbine

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served today via the Court's

CM/ECF system on all counsel of record.

/s/Jenny K. Harbine
Jenny K. Harbine