# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| CITIZENS FOR CLEAN ENERGY, et al., | **4:17-cv-00030-BMM** |
| Plaintiffs, | |
| and | **ORDER** |
| THE NORTHERN CHEYENNE TRIBE, | |
| Plaintiff, | |
| vs. | |
| U.S. DEPARTMENT OF THE INTERIOR, et al., | |
| Defendants, | |
| and | |
| STATE OF WYOMING, et al., | |
| Defendant-Intervenors. | |
| STATE OF CALIFORNIA, et al., | **4:17-cv-00042-BMM** (consolidated case) |
| Plaintiffs, | |
| vs. | |
| U.S. DEPARTMENT OF THE INTERIOR, et al., | **ORDER** |

|  |  |
|---|---|
| Defendants, | |
| and | |
| STATE OF WYOMING, et al., | |
| Defendant-Intervenors. | |

## INTRODUCTION

The Center for Biological Diversity, Citizens for Clean Energy, Defenders of Wildlife, EcoCheyene, Montana Environmental Information Center, Sierra Club, the Northern Cheyenne Tribe, and WildEarth Guardians filed this suit in 2017 challenge then-Secretary of the Interior Ryan Zinke's Secretarial Order 3348 ("Zinke Order"). The State of California, State of Washington, State of New York and the State of New Mexico filed identical challenges to the Zinke Order. The Court consolidated these cases. The Court previously determined that the Zinke Order constituted a major federal action requiring environmental review under the National Environmental Policy Act ("NEPA"). *Citizens for Clean Energy v. U.S. Dep't of the Interior*, 384 F. Supp. 3d 1264, 1279 (D. Mont. 2019). The Court directed BLM to conduct a NEPA analysis. (*Id.*)

Plaintiffs now challenge the resulting NEPA analysis. Plaintiffs have moved for summary judgment on the grounds that the Department of the Interior, Secretary

of the Interior ("Secretary"), and Bureau of Land Management ("BLM") (collectively, "Federal Defendants") violated NEPA, the Federal Land Policy and Management Act ("FLPMA"), the Mineral Leasing Act ("MLA"), and the trust responsibility between the federal government and the Northern Cheyenne tribe. (Docs. 202 & 204.) Federal Defendants, Defendant-Intervenors the States of Montana and Wyoming ("State-Intervenors"), and Defendant-Intervenor the National Mining Association ("NMA") filed cross-motions for summary judgment. (Docs. 219, 223, & 225.) NMA also filed a motion to dismiss for lack of jurisdiction. (Doc. 210.) The Court will deny NMA's motion to dismiss for lack of jurisdiction. The Court will grant summary judgment in favor of Plaintiffs on the NEPA claim for the reasons discussed below.

## BACKGROUND

*Factual Background*

In January 2016, then-Secretary of the Interior Sally Jewell issued Secretarial Order No. 3338 ("Jewell Order") commencing preparation of a new programmatic environmental impact statement ("PEIS") and establishing a moratorium on federal coal leasing, with some exemptions. Suppl. AR 5419-5428. The PEIS sought to identify and assess potential reforms to the federal coal leasing program, which had not been reevaluated in over three decades. *Id.* at 5425. The stated goal of the PEIS was to "determine whether and how the current system for developing Federal coal

should be modernized[.]" *Id.* at 5419. The Jewell Order cited concerns about climate change, fair returns on leases, and market conditions as chief considerations. *Id.* at 5421-23. Secretary Jewell stated that the moratorium on new coal leases served to avoid locking in the future development of large quantities of coal on unfavorable financial terms. *Id.* at 5427.

Following the change in presidential administration in 2017, then-Secretary of the Interior Ryan Zinke issued the Zinke Order which had the explicit effect of reversing the Jewell Order. Suppl. AR 4416-17. The Zinke Order terminated the ongoing PEIS NEPA review and directed BLM to resume issuing coal leases "expeditiously." *Id.* The Zinke Order required that all BLM land would become subject to lease applications with terms of twenty years. *Id.*

The Court ruled in 2019 that the Zinke Order qualified as a major federal action that triggered NEPA review. *Citizens for Clean Energy*, 384 F. Supp. 3d 1264. The Court first recognized potential environmental harm that could arise from lifting the coal leasing moratorium due to the Zinke Order removing constraints that provided beneficial effects for public lands and the environment. *Id.* at 1279 (citing *Lockyer*, 575 F.3d at 1015.) The Court then determined that the Zinke Order constituted a final action under the APA pursuant to the U.S. Supreme Court's ruling in *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citations omitted). *Id.* at 1280-82.

On May 22, 2019, Federal Defendants released a 35-page Draft EA and announced a 15-day public comment period. *See* Federal Defendants' Notice of Partial Compliance with April 19, 2019 Order and of the Availability of an Environmental Assessment (May 22, 2019). BLM released its Final Environmental Assessment ("Final EA") regarding the Zinke Order on February 25, 2020. *See* BLM, Lifting the Pause on the Issuance of New Federal Coal Leases for Thermal (Steam) Coal, Final Environmental Assessment, DOI-BLM-WO-WO2100-2019-0001-EA (Feb. 25, 2020) (Suppl. AR 1). BLM issued the review "in an effort to be responsive to" the Court's ruling. *Id.* at 3.

BLM concluded that the decision to lift the coal moratorium would not "change the cumulative levels of [greenhouse gas] emissions resulting from coal leasing," *id.* at 26, would not result in any "direct," "indirect," or "cumulative effects" to "socioeconomics," *id.* at 32, and would not "result in direct or indirect effects, or cumulative effects to water resources (i.e., surface water, groundwater, and riparian areas)" beyond those already identified in NEPA analysis for four particular coal leases. *Id.* at 39. BLM then issued a Finding of No Significant Impact ("FONSI") based on that Final EA. *See* BLM, Lifting the Pause on the Issuance of New Federal Coal Leases for Thermal (Steam) Coal, Finding of No Significant Impact at 11 (Feb. 26, 2020) (Suppl. AR 76).

Plaintiffs supplemented their prior Complaint to challenge the adequacy of the BLM's Final EA and FONSI. (Doc. 176). Plaintiffs allege that the Final EA violated NEPA, FLPMA, the MLA, and the Federal Government's trust obligation to the Northern Cheyenne Tribe.

Now-Secretary of the Interior Deb Haaland issued Secretarial Order No. 3398 ("Haaland Order") on April 16, 2021. (Doc 199 at 2.) The Haaland Order revoked the Zinke Order and directed relevant agencies to submit a report with their "plan and timeline to reverse, amend or update" the policies created to implement the Zinke Order. Sec'y of the Interior, Revocation of Secretary's Orders Inconsistent with Protecting Public Health and the Environment and Restoring Science to Tackle the Climate Crisis, Secretarial Order No. 3398 § 5 (Apr. 16, 2021). Plaintiffs agreed to a stay in these proceedings given the Federal Defendants' progress toward developing a replacement for the challenged coal leasing policy. (Doc. 213 at 4). The Court granted a stay of six months. (Doc. 214). Citing a lack of progress in those six months, Plaintiffs requested that the Court resume adjudication of this dispute.

*Statutory Background*

## I. NEPA

The National Environmental Policy Act ("NEPA") requires federal agencies to "take a hard look" at the "environmental consequences" of their actions. *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989) (internal

citations omitted). The statute "does not mandate particular results." *Id.* NEPA instead "prescribes the necessary process" that agencies must follow to identify and evaluate "adverse environmental effects of the proposed action." *Id.* Such effects may be direct, "indirect," or "cumulative." 40 C.F.R. § 1502.16.

The NEPA process requires preparation of an EIS for "major Federal actions" that "significantly" affect the "quality of the human environment." 42 U.S.C. § 4332(2)(C); 40 C.F.R. § 1508.11. An EIS must provide a "full and fair discussion of significant environmental impacts." 40 C.F.R. § 1502.1. This discussion should "inform decisionmakers and the public of the reasonable alternatives which would avoid or minimize adverse impacts or enhance the quality of the human environment." Id

## II. APA

The Court reviews agency compliance with NEPA pursuant to the APA. *League of Wilderness Defs.-Blue Mountains Biodiversity Project v. U.S. Forest Serv.*, 549 F.3d 1211, 1215 (9th Cir. 2008). The APA instructs a reviewing court to "hold unlawful and set aside" agency action deemed "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

APA review requires the Court to consider whether an agency based a particular decision on "consideration of the relevant factors." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971) (citations omitted). Such

inquiry must be "thorough," "probing," and "in-depth." *Id.* at 415. The Court must defer to the judgment of the agency, and reverse a decision as arbitrary and capricious only where "a clear error of judgment" has occurred. *League of Wilderness Defs.*, 549 F.3d at 1215. This "clear error of judgment" may entail the following scenarios: 1) the agency's reliance on factors "Congress did not intend [for] it to consider;" 2) the agency's failure to "consider an important aspect of the problem;" 3) the agency's explanation "runs counter to the evidence" or "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.*

### III. Federal Coal Leasing Program

BLM manages coal resources on 570 million acres of public lands across the United States where the federal government owns the mineral estate. Suppl. AR 5419. The MLA, as amended by the Federal Coal Leasing Amendments of 1976, authorizes and governs mineral leasing on federal public lands. 30 U.S.C. § 181 *et seq.* BLM adopted the current coal leasing regulation in July 1979, thereby establishing the federal coal program. *See* 44 Fed. Reg. 425fe84, 42615 (July 19, 1979). A PEIS accompanied the federal coal leasing program regulation established in 1979. *W. Org. Res. Councils v. Zinke*, 892 F.3d 1234, 1236 (D.C. Cir. 2018). BLM amended the coal leasing regulations in 1982, and later supplemented the PEIS in 1985. *Id.*

## ANALYSIS

The cross-motions for summary judgment and NMA's motion to dismiss present the following two questions: 1) did the Haaland Order render this controversy moot; and 2), if not, was the NEPA analysis previously ordered by the Court sufficient.

### I. Plaintiffs retain a potential remedy through NEPA, because the Haaland Order does not return the status quo that existed under the Jewell Order.

NMA's motion to dismiss and BLM's motion for summary judgment argue that the Court lacks jurisdiction over this matter or else should be dismissed because the case no longer presents a live controversy. "[F]ederal courts lack power to make a decision unless the plaintiff has suffered an injury in fact, traceable to the challenged action, and likely to be redressed by a favorable decision." *Nome Eskimo Cmty. v. Babbitt*, 67 F.3d 813, 815 (9th Cir. 1995). If a case becomes moot "while the litigation is pending, then in the absence of an applicable doctrinal exception, the judicial branch loses its power to render a decision on the merits of the claim." *Id.* However, "[a] case becomes moot only when it is impossible for a court to grant 'any effectual relief whatever' to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307–08 (2012) (quoting *Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000)).

Both NMA and Federal Defendants argue that the Haaland Order's revocation of the Zinke Order eliminated any further injury to Plaintiffs from the Zinke Order.

Both also argue that the Court cannot grant Plaintiffs any relief past the revocation already put into effect by the Haaland Order. If those arguments were correct, a decision by the Court pertaining to the Zinke Order NEPA analysis would constitute an advisory opinion in violation of Article III, § 2 of the U.S. Constitution. NMA argues that, unlike an agency rule, Courts do not have the authority to reinstate a prior Secretarial Order, given their nature as temporary delegations of authority.

The Court disagrees with NMA's and Federal Defendants' assessment of the Haaland Order. The Haaland Order revokes the Zinke Order by name. The Haaland Order maintains the potential environmental harm that could result from lifting the coal leasing moratorium, however, that the Court determined required NEPA review in its earlier order. This Court determined in the prior summary judgment order that "the lifting of the moratorium meets the 'relatively low' threshold standard for a NEPA triggering event." *Citizens for Clean Energy*, 384 F. Supp. 3d at 1279. A live controversy persists because the coal leasing moratorium, and associated environmental protections, established by the Jewell Order remains revoked. The Haaland Order has not returned the status quo that existed under the Jewell Order— i.e., a moratorium on coal leasing with some exceptions.  Given that the Haaland Order has not resumed the coal leasing moratorium, the Zinke Order still remains in partial effect.

Plaintiffs' claims target Secretary Zinke's decision to rescind the moratorium on federal coal leasing and to re-open federal public lands to new coal mining. The Haaland Order did not rescind that action. BLM remains free to lease federal lands for coal development despite Plaintiffs' alleged NEPA violations. Plaintiffs allege a potential harm that this Court could redress by requiring sufficient environmental analysis under NEPA. The Court might provide relief by vacating BLM's decision to terminate the coal-leasing moratorium until BLM complies with NEPA's requirements to adequately evaluate the consequences of that decision. *See, e.g.*, *California v. Bernhardt*, 472 F. Supp. 3d 573, 630 (N.D. Cal. 2020); *see also Cal. Wilderness Coal. v. U.S. Dep't of Energy*, 631 F.3d 1072, 1095 (9th Cir. 2011). Plaintiffs correctly argue that further environmental review could alleviate potential harms done while the Zinke Order improperly remained in effect were BLM to identify potential mitigation measures during an adequate analysis. *See Cantrell v. City of Long Beach*, 241 F.3d 674, 678-79 (9th Cir. 2001). As recognized by the Ninth Circuit, "[t]he fact that the alleged violation has itself ceased is not sufficient to render a case moot. As long as effective relief may still be available to counteract the effects of the violation, the controversy remains live and present." *Nw. Env't Def. Ctr. v. Gordon*, 849 F.2d 1241, 1245 (9th Cir. 1988).

The Court will deny NMA's Motion to Dismiss (Doc. 210) and Federal Defendant's Motion for Summary Judgment (Doc. 219.)

## II. BLM's Final EA of the Zinke Order failed to comply with the requirements of NEPA and the APA.

NMA and State-Intervenors argue that BLM's Final EA provided sufficient NEPA analysis for the Zinke Order. Federal Defendants make no attempt to defend the NEPA analysis. Plaintiffs argue that BLM failed to comply with NEPA requirements by impermissibly limiting the scope of the analysis to just two alternatives and the few leases that arose in the three years that Secretary Jewell had anticipated that it would take to complete the PEIS. Plaintiffs claim that limiting the scope of the analysis to just four leases violates the hard look requirement of NEPA. Plaintiffs also claim that the Final EA arbitrarily assumed that the moratorium would terminate after three years with no additional environmental protections or mitigations related to the coal leasing program.

BLM's Draft EA limited its analysis to the four leases that BLM deemed traceable to the Zinke Order. These leases are composed of the Alton Coal Tract Lease by Application; the Pollyanna 8 Coal Lease; and two South Fork Federal Coal Lease Modifications. Suppl. AR 85-86. The Draft EA considered two alternatives: (1) Alternative 1, the "No Action Alternative," which assumed that the Jewell Order would have remained in place only until March 2019; and (2) Alternative 2, entitled "Resume Normal Leasing Procedures in March 2017." Suppl. AR 90-91. This second alternative considered BLM's processing of new lease application in the 24 months since March 2017. (Id.) The Draft EA further assumed that the only

difference between the two alternatives was that Alternative 2 would cause environmental impacts earlier than Alternative 1. The Draft EA summarized portions of already-completed NEPA reviews for the four leases and with regard to just three "issues": (1) greenhouse gas emissions; (2) socioeconomic impacts; and (3) impacts to water quality, quantity, and riparian areas. Suppl. AR 87, 93-111.

The Court determines that such a limited analysis fails to consider "all direct, indirect, and cumulative impacts" of re-starting the federal coal-leasing program. *See* 40 C.F.R. § 1508.25. The EA did not take the "hard look" NEPA requires with respect to restarting the federal coal leasing program. *See Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 623 F.3d 633, 646 (9th Cir. 2010). Under NEPA, the "no action" alternative describes baseline conditions. These conditions reflect the "status quo" against which the impacts of the proposed action and its alternatives are to be measured. *Id.* at 642. BLM improperly cabined its NEPA analysis for ending the coal leasing moratorium to the leases granted during the estimated PEIS timeline. BLM's attempt to curtail the potential environmental impacts of lifting the moratorium, by failing to consider a potential alternative that provided a baseline of an indefinite moratorium, proves arbitrary and capricious.

BLM's NEPA analysis should have considered the effect of restarting coal leasing from a forward-looking perspective, including connected actions. *See* 40 CFR 1508.25 (a)(1); *see also Delaware Riverkeeper Network v. F.E.R.C.*, 753 F.3d

1304, 1314 (D.C. Cir. 2014) (stating that "when determining the contents of an EA or an EIS, an agency must consider all 'connected actions,' 'cumulative actions,' and 'similar actions'"). The "status quo" that existed before the Zinke Order was a moratorium on coal leasing. Because the baseline alternative must consider the status quo, BLM was required to begin its analysis from that point.

NMA and State-Intervenors argue that the coal leasing moratorium imposed by the Jewell Order was limited to the three years anticipated for completion of the PEIS review. The Final EA points in support of this position only to the Jewell Order's stated goal of completing the PEIS by March 2019, three years after the PEIS process commenced. *See* Suppl. AR-16; *also* Suppl. AR-14 (describing effect of Zinke Order as "[t]erminating the pause 24 months earlier than initially planned"). The Court finds nothing in the Jewell Order to support NMA's and State-Intervenor's interpretation. The Jewell Order makes clear that the moratorium was intended to continue until the PEIS was completed, but does not state that the moratorium would end upon completion. The Jewell Order states instead that the recommendations from the PEIS would be used before the end of the moratorium, Suppl. AR 5426, which necessitates that the moratorium would have persisted after the PEIS. Analyses from the PEIS might have informed BLM's future actions regarding the moratorium. Indeed, the Jewell Order concludes that the moratorium

and all other parts of the Jewell Order were to "remain in effect until [the Jewell Order's] provisions are amended, superseded, or revoked." Suppl. AR-5428.

BLM's decision to limit its NEPA analysis to merely four leases thus proves insufficient. By limiting the scope of the moratorium and any results that may have come of it, the no-action alternative in BLM's Final EA presumed that the results of the Zinke Order would have come to pass in either alternative. To assume that the outcome of the major federal action is inevitable, rather than considering the pre-existing status quo, violates NEPA. *See Friends of Yosemite Valley v. Kempthorne*, 520 F.3d 1024, 1037-1038 (9th Cir. 2008). BLM had pending lease applications encompassing at least 1.8 billion tons of federal coal that would be mined from 28 mines across nine states at the time of the Zinke Order. Suppl. AR-4439. The Zinke Order served to re-open public land to coal leasing for the entirety of those pending lease applications. BLM now must properly consider the environmental effects of that decision. Comprehensive NEPA review is required where the decision to restart the federal coal-leasing program will have broad environmental effects. *California v. Block*, 690 F.2d 753, 762-63 (9th Cir. 1982). BLM's own analysis states that cumulative greenhouse gas emissions from the coal lease applications that were suspended under the Jewell Order would amount to more than one billion tons/year. Suppl. AR-26. And BLM states openly that it "considered, but did not analyze in detail, the effects resumption of normal leasing procedures would have on leasing

and evaluation of its potential effects because this issue does not relate to the purpose and need or inform a question of significance." Suppl. AR 14. BLM's failure to analyze the effect of restarting the federal coal-leasing program proves a "a clear error of judgment" for failure to consider "an important aspect of the problem." *See League of Wilderness Defs.*, 549 F.3d at 1215.

Even where BLM considered the effects of the four approved leases, BLM's analysis was arbitrarily curtailed and failed to consider relevant factors. For example, because the EA assumed that the leases would have been issued regardless, the Final EA stated that the leases would yield no change in greenhouse gas emissions or climate impacts, *id.*; no "appreciable market effects impacting usage or emissions over any period," *id.* at 32; no socioeconomic impacts, *id.*; and no impact on water resources, *id.* at 33.

NMA and State-Intervenors frequently return to their contention that the PEIS cannot be reinstated. Both NMA and State-Intervenors argue that what Plaintiffs actually ask of the Court is to require the PEIS that Secretary Jewell's Order initiated. The Court has stated previously that reinstating the PEIS is not a potential remedy in this litigation. (*See* Doc. 170 at 15-16); *also Ctr. for Biological Diversity v. Zinke*, 260 F. Supp. 3d 11, 24 (D.D.C. 2017). NMA and State-Intervenors fail to comprehend that the leasing moratorium represents a distinct target of this litigation.

The subject of these summary judgment motions is the sufficiency of BLM's NEPA analysis after lifting the coal-leasing moratorium.

The Court will require sufficient NEPA analysis before BLM resumes the Coal Leasing Program, without mandating the resumption of the PEIS ordered by Secretary Jewell. BLM must perform NEPA analysis that considers the full scope of the Zinke Order's effect on all then-pending lease applications, and other connected, cumulative, or similar actions. *See* 40 C.F.R. § 1508.25.

### III. Plaintiffs' remaining claims.

Plaintiffs' claims based on FLPMA, the MLA, and the Federal Government's trust obligation prove contingent upon Federal Defendants' conclusions related to the NEPA review that the Court has now once again ordered. The Court yet again remains unable to evaluate these claims until Federal Defendants have completed an appropriate NEPA analysis. The Court will deny Plaintiffs' claims as moot subject to further NEPA review.

### IV. Remedy

The APA provides that the Court must "hold unlawful and set aside agency action, findings, and conclusions found to be [. . .] arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A) & (D). "Vacatur is the standard remedy under the APA and NEPA if a court determines that an agency action is

unlawful." *California v. Bernhardt*, 472 F. Supp. 3d 573, 630 (N.D. Cal. 2020); *see also Cal. Wilderness Coal. v. U.S. Dep't of Energy*, 631 F.3d 1072, 1095 (9th Cir. 2011) ("When a court determines that an agency's action failed to follow Congress's clear mandate the appropriate remedy is to vacate that action.")

The Court need not consider the factors for injunctive relief in imposing vacatur and remanding the NEPA analysis here. Setting aside an unlawful agency decision through vacatur "prohibits, as a practical matter, the enforcement of" that decision, but is not "the practical equivalent of 'enjoining'" the agency. *Alsea Valley All. V. Dept. of Commerce*, 358 F.3d 1181, 1186 (9th Cir. 2004). Where vacatur of an agency's action is sufficient to redress the plaintiff's injury, "no recourse to the additional and extraordinary relief of an injunction [is] warranted." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165-66 (2010). The U.S. Supreme Court in *Monsanto* explained that the effect of vacating an agency's decision deregulating genetically engineered alfalfa was to prohibit planting of such alfalfa until such time as the agency made a new decision that complied with NEPA. 561 U.S. at 165-66. Similarly, upon finding that agencies violated NEPA and their fiduciary duty to Tribes when extending leases for geothermal development, the Ninth Circuit invalidated the lease extensions and the development approvals that were premised on those lease extensions. *Pit River Tribe*, 469 F.3d at 788.

The Court will follow that precedent here. The Court vacates and remands the Final EA and associated FONSI. The coal leasing program moratorium established by the Jewell Order shall be reinstated until the completion of sufficient NEPA review analyzing revocation of the moratorium.

Accordingly, **IT IS ORDERED** that:

- Plaintiffs' Motions for Summary Judgment (Docs. 202 & 204) is **GRANTED, IN PART, AND DENIED AS MOOT, IN PART**.

- Federal Defendants', State Intervenors', and NMA's Motions for Summary Judgment (Docs. 219, 223, & 225) and NMA's Motion to Dismiss (Doc. 210) are **DENIED**.

Dated this 12th day of August, 2022.

_____
Brian Morris, Chief District Judge
United States District Court